## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EZAKI GLICO KABUSHIKI KAISHA and EZAKI GLICO USA CORPORATION, | Civil Action No. 15-5477 (MCA) (LDW) |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| LOTTE INTERNATIONAL AMERICA CORP., | |
| Defendant. | |

Before the Court is defendant Lotte International America Corp.'s motion to transfer this action to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404(a). (ECF No. 43). Plaintiffs commenced this trademark infringement and unfair competition action in this District, averring that defendant is a New Jersey corporation with a principal place of business in Ridgefield Park, New Jersey. Defendant acknowledges that it is a New Jersey corporation but asserts that its principal place of business is in Los Angeles, California and that the Central District of California is a more convenient forum to litigate this action. Subsequent to the filing of this action, defendant commenced a declaratory judgment action of trademark invalidity and unenforceability against plaintiffs in the Central District of California. That court stayed the action before it, pending the outcome of the instant motion. In view of the applicable facts and law, the Court now **DENIES** defendant's motion to transfer.

### I.      BACKGROUND

Plaintiff Ezaki Glico Kabushiki Kaisha ("Glico") is incorporated and headquartered in Japan. (ECF No. 9 at ¶ 1). It has marketed and sold cookie sticks coated in chocolate, cream,

and/or almond pieces under the brand name "POCKY" in Japan since 1966 and in the United States since 1978.  Glico holds three registered trademarks with the United States Patent and Trademark Office for POCKY product configurations.  (*Id.* ¶¶ 8-15).

Glico's wholly owned subsidiary, plaintiff Ezaki Glico USA Corporation ("Glico USA"), sells and markets POCKY products in the United States.  Glico USA is a California corporation with a principal place of business in Irvine, California.  (ECF No. 9 at ¶ 2).  It also has had a New Jersey office and at least two employees in this state since January 2015, to provide sales and support services for its customers in the eastern United States.  (ECF No. 43-4 at 13-14).  These customers include specialty grocery stories, national retail stores such as Walmart, Target, and Costco, and online retailers like Amazon.com.  (ECF No 9 at ¶ 10).

Defendant Lotte International America Corporation ("Lotte") is incorporated in New Jersey and asserts that its principal place of business currently is in Los Angeles, California.[1] (Defendant's Counterclaims, ECF No. 17, at ¶ 1).  Its parent company, non-party Lotte Confectionary Co. Ltd. ("Lotte Korea"), is based in Korea.  (*Id.* ¶ 7; ECF No. 43-1 at 1).  Lotte sells cookie sticks under the name "PEPERO" through wholesale distributors located throughout the United States (including in California, New Jersey and New York).  (ECF No. 47-2 at 8).

Glico filed the instant action against Lotte in this District in July 2015.[2]  Plaintiffs allege various trademark infringement and unfair competition claims against Lotte under federal and state

---

[1]      Lotte does not address the information proffered by plaintiff that Lotte's website, as recently as June 25, 2015, listed its "US office" as 100 Challenger Rd., Suite 710, Ridgefield Park, New Jersey 07660.  (ECF No. 47-3).

[2]      The Complaint was subsequently amended to include Glico USA as a plaintiff.  (ECF No. 9).  Glico had previously, in November 2014, filed a trademark infringement complaint against Lotte's sister company, Lotte USA, Inc. in the Western District of Michigan, (Civ. A. No. 1:14-cv-01164-PLM (W.D.Mich.)), allegedly "under the mistaken belief that Lotte USA Inc. was the distributor of the infringing products."  (ECF No. 47 at 8 n.3).  That action was dismissed.

law.  Lotte asserted counterclaims for false advertising and for a declaratory judgment of non-infringement of Glico's trademarks.  By Letter Order of December 13, 2016, the Court granted Glico's motion to dismiss Lotte's false advertising counterclaims.  (ECF No. 53).

In August 2015, shortly after the filing of this action, Lotte and Lotte Korea filed a complaint in the Central District of California against Glico and Glico USA asserting claims for false advertising and a declaratory judgment that Glico's trademarks are invalid and unenforceable.  The California court stayed that action pending the outcome of the present venue transfer motion.  (*See* ECF No. 43-1 at 2 & n.1).

After this Court permitted limited jurisdictional discovery relating to this proposed transfer motion (ECF No. 36), Lotte moved to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1404(a).  (ECF No. 43).  It argues, generally, that both venue and jurisdiction are proper in the Central District of California and that California would be a more convenient forum because both parties are headquartered in California and market their products from their California offices, most of the third-party witnesses are in California, and the relevant documents are in California.  Lotte further argues that California has a stronger interest in resolving this dispute than New Jersey because a greater quantity of the parties' products is sold annually in California than in New Jersey and that California has a compelling interest in regulating the conduct of businesses headquartered there.

Plaintiffs oppose Lotte's motion, arguing that Lotte has failed to meet its burden to demonstrate that the case should be transferred under the relevant factors, emphasizing that the factors Lotte identifies do not overcome the weight that should be given to plaintiffs' choice of this forum for the lawsuit.  (ECF No. 47).  They also argue that the case has sufficient connection to New Jersey to remain here, in that Lotte is incorporated in New Jersey, both parties maintain

offices and sell their products to retailers and/or distributors located here, and the alleged infringement has occurred in every place Lotte's products are sold, including New Jersey. Furthermore, it argues, both parties are sophisticated multinational corporations and do not lack means to travel to New Jersey from California, Korea, and Japan, to the extent necessary.

## II.  DISCUSSION

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted).

Federal courts must engage in a two-part analysis in evaluating a motion to transfer venue under § 1404(a).  As a threshold matter, the Court must determine "whether the transferee district has proper jurisdiction and venue, such that the case could have been brought in the transferee district in the first instance."  *Telebrands Corp. v. Mopnado*, Civ. A. No. 14-7969 (JAD), 2016 WL 368166, at *10 (D.N.J. Jan. 12, 2016).  Next, the court must engage in an "'individualized, case-by-case consideration of convenience and fairness' regarding which forum is most appropriate to consider the case."  *Id.* (quoting *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450 (D.N.J. 1999)); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988).

With respect to the various transfer factors to be considered, the Third Circuit has instructed that "[w]hile there is no definitive formula or list of factors to consider . . . courts have considered many variants of the private and public interests protected by the language of § 1404(a)."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995).  The *Jumara* Court established a list of private and public interests that district courts in this Circuit typically consider in deciding whether

4

to grant a § 1404(a) motion (the "*Jumara* factors"). The private interests include the following:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted). The public interests include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted). This list of factors, however, "is merely a guide." *LG Electronics, Inc. v. First Intern. Computer, Inc.*, 138 F. Supp. 2d 574, 587 (D.N.J. 2001). The analysis is "flexible and must be made on the unique facts of each case." *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993).

The moving party bears the burden "to establish that a balancing of proper interests weighs in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970). Indeed, "[t]he burden is not on the plaintiff to show that the proposed alternative forum is inadequate. On the contrary, the burden is on the moving party to show the proposed alternat[ive] forum is not only adequate but also more convenient than the present forum." *Ricoh Co., Ltd.*, 817 F. Supp. at 480 (citation omitted).

The parties do not dispute that venue and jurisdiction would be proper in the Central District of California. Accordingly, the Court turns to the *Jumara* factors.

A. Private Interest Factors

The Court finds that the majority of the *Jumara* private interest factors are either neutral or weigh against Lotte's transfer motion.

### 1. The Parties' Preferences on Forum

The Court first considers the parties' preferences as to forum – namely, that plaintiffs chose this forum and that defendant Lotte, conversely, prefers to litigate the action in the Central District of California. Ordinarily, a plaintiff's choice of forum is a "paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly disturbed." *Shutte*, 431 F.3d at 25. Lotte correctly points out, however, that the weight courts give to a plaintiff's choice of forum is diminished when the plaintiff does not reside in that forum or when the key facts of the lawsuit occurred elsewhere. *One World Botanicals v. Gulf Coast Nutritionals, Inc.*, 987 F. Supp. 317, 326 (D.N.J. 1997).

Here, neither plaintiff is incorporated or headquartered in New Jersey. Nevertheless, that does not mean that their choice of forum is entitled to no weight at all. *See LG Electronics, Inc.*, 138 F. Supp. 2d at 589-90 (noting that "[a]lthough plaintiff's choice militates against transfer, the weight of that choice is significantly lessened by the fact that LGE does not reside in New Jersey" but still according plaintiff's choice some weight); *Ricoh Co., Ltd.*, 814 F. Supp. at 480-81 (citing *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir. 1991) ("[R]educed deference is not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since dismissal for forum non conveniens is the exception rather than the rule." (citations and internal quotation marks omitted))). Moreover, as set forth below, the facts underlying this lawsuit are not unrelated to New Jersey. Therefore, plaintiffs' choice of forum is accorded some (albeit, diminished) weight and must be considered in light of the other *Jumara* factors.

6

2.  *Whether the Claim Arose Elsewhere*

Lotte argues that the location of the operative facts underlying the litigation is California because it is headquartered there and because more of the products at issue in this action are sold in California than in other states.  The Court finds that the locale of the operative facts is actually more complex than argued by Lotte, and that the operative facts occurred in New Jersey as well as California.

Since Lotte's false advertising counterclaims have been dismissed, this action is primarily one for trademark infringement.  Trademark infringement claims are deemed to arise where the "passing off" occurs, or where the allegedly infringing products are sold to consumers who may become confused.  *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).  There is no dispute that Lotte's product is sold in many states, including New Jersey. While Lotte's president certifies that Lotte "sells hundreds of thousands more cookie stick products in California than in New Jersey," (ECF No. 19-2 at ¶ 4), he provides no overall sales figures that might put his statement into context.  He certainly does not state that Lotte's sales in New Jersey are *de minimis*—just that more product is sold in California.  Because sales of Lotte's allegedly infringing product are admittedly made in New Jersey, the trademark claims, in part, arose here as well as in California.  *See Telebrands Corp.*, 2016 WL 368166, at *11 (rejecting defendant's argument that its products were warehoused and shipped outside of New Jersey because it "ignore[d] the fact that, while the products at issue may have originated elsewhere, each was sold and shipped to consumers within New Jersey"); *Master Cutlery, Inc. v. Panther Trading Co.*, Civ A. No. 12-4493 (JLL), 2012 WL 6597056, at *3-4 (D.N.J. Dec. 17, 2012) (noting that intellectual property infringement occurs where the products are sold and that Defendant sold its products in New Jersey, where Plaintiff was located); *see also One World Botanicals*, 987 F. Supp. at 326-27

(finding venue in New Jersey proper even though Defendant was located in Florida and the action was first filed there because, *inter alia*, Plaintiff was located in and chose New Jersey and "[m]any of the operative facts of th[e] lawsuit occurred within New Jersey"; specifically, Defendant sold its products to a New Jersey distributor).

The Court recognizes that the parties must conduct much of their business activities in California, where their headquarters are located. But both parties also have significant connections to this forum. Lotte is incorporated in New Jersey and has at least one employee that works in New Jersey, and Glico maintains an office and employees in New Jersey. This case thus does not present a situation in which the forum state has no meaningful connection to the litigation other than being one of many states in which the alleged infringement occurs. *Cf. Kelly-Brown v. Winfrey*, Civ. A. No. 11-4360 (SRC), 2011 WL 5325596 (D.N.J. Nov. 3, 2011) (transferring trademark infringement action to New York where Plaintiff alleged that Defendants used Plaintiff's mark specifically in connection with an invitation-only event in New York and in magazines that were distributed throughout the country, Defendants' core offices were in New York, and the action had no significant connection to New Jersey); *ESP Shibuya Enterprises, Inc. v. Fortune Fashions Indus.*, Civ. A. No. 08-3992 (PGS), 2009 WL 1392594, at *4 (D.N.J. May 15, 2009) (noting that the fact that infringing products were sold in New Jersey "does not entitle [plaintiff] to foist upon the forum a litigation with no other meaningful relationship to it"). In view of the foregoing, the Court finds this factor neutral as to transfer.

### 3. *Convenience of the Parties*

Regarding the "convenience of the parties as indicated by their relative physical and financial condition," both Glico USA and Lotte are headquartered in California and most of their employees are located in California. Nevertheless, Lotte has not convinced the Court that it would

be significantly inconvenient to litigate in New Jersey, given that both parties are large multinational corporations and Lotte is incorporated in New Jersey. The Court cannot lightly conclude that a party effectively may claim that its state of incorporation is an inconvenient forum for it to litigate, especially where, as here, the lawsuit has a relationship to the forum in addition to the party's incorporation there. *See Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 756 (D. Del. 2012) (noting, in concluding that the balance of factors weighed against transfer, that the fact that all parties were incorporated in Delaware was an important factor, explaining that "one aspect of a company's decision to incorporate in Delaware is that under our jurisdictional and venue statutes it is agreeing to submit itself to the jurisdiction of the courts in this state for the purposes of resolving this type of commercial dispute" (internal quotation marks omitted)); *Mallinckrodt, Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 357 (D. Del. 2009) (applying *Jumara* factors and noting that "when a corporation chooses to incorporate in Delaware and accept the benefits of incorporating in Delaware, it cannot complain once another corporation brings suit against it in Delaware").[3]

Moreover, the reality of federal litigation today is that the parties' witnesses will be required to appear in New Jersey for little other than the trial of the case, should it proceed that far. Depositions of the parties' California employees may be taken locally in California. Participation of the parties' employees in Japan and Korea in discovery and trial will be equally inconvenient for those witnesses whether those activities take place in California or New Jersey. For all of these reasons, the Court finds that the convenience of the parties only slightly favors

---

[3] Lotte relies on *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011) to argue that place of incorporation is not a significant factor. The court in that case, however, merely clarified that a defendant's place of incorporation is "is certainly not a dispositive factor in the venue transfer analysis" and that district courts should still make sure to balance all of the *Jumara* factors. *Id.*, 662 F.3d at 1224.

California.

### 4. The Convenience of Witnesses

Regarding the availability of witnesses, *Jumara* instructs that that courts should consider witness convenience "only to the extent that witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Accordingly, the fact that most of the parties' employees are located in California does not significantly affect this portion of the transfer analysis; the most relevant consideration is the location of non-party witnesses. *See Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 534 n.19 (D.N.J. 2000) ("Party witnesses are presumed to be willing to testify in either forum despite any inconvenience, and therefore, the relative convenience of such witnesses carries little weight."). Furthermore, courts must consider "the substance of the dispute and what bearing the testimony of such unavailable witnesses will have on the prosecution or defense of the claims." *Kelly-Brown*, 2011 WL 5325596, at *4 (citing *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988)). Specifically, the court must "evaluate what proof is required, and determine whether the pieces of the evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Id.* (internal quotation marks omitted).

Here, to establish a cause of action for trademark infringement under the Lanham Act, plaintiffs will have to prove (1) that they own the mark, (2) that the mark is "valid and legally protectable," and (3) that Lotte's use of the mark "to identify goods or services is likely to create confusion." *Checkpoint Sys., Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 279 (3d Cir. 2001).[4] Further, for Lotte to establish its laches defense under Third Circuit law, it must

---

[4] In evaluating the third factor, courts consider the ten additional factors identified in *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 2001), which include the degree of similarity

10

show "(1) inexcusable delay in bringing suit, and (2) prejudice to [Lotte] as a result of the delay." *Kaufhold v. Caiafa*, 872 F. Supp. 2d 374, 379 (D.N.J. 2012) (internal quotation marks omitted).

In support of its motion, Lotte purports to identify non-party witnesses that are in California and thus outside the Court's subpoena power. It points to distribution agreements between plaintiffs and a few California distributors, the dates of which range from 2010 to 2015. (ECF No. 44-2). Lotte also relies on plaintiffs' interrogatory responses that identify contracts between Glico and California non-parties, including distribution agreements, lease agreements for office space, employment contracts, and contracts for consulting and advertising services. (ECF No. 44 at 7-11). Lotte argues that the wholesaler and distributor witnesses could provide information about the sales of Glico's products, advertising, and instances of actual confusion, as well as whether Glico knew or should have known that Lotte had been selling its products in the United States for several years. (ECF Nos. 43-1 at 10, 48 at 8-9).

Lotte's arguments are insufficient to tip the scale in favor of transfer to California. Conceivably, the California distributors could provide information relating to likelihood of confusion and inexcusable delay. But Lotte has failed further to explain the specific testimony these identified distributors would provide and, more importantly, the significance of that testimony to the litigation. It did not provide affidavits or other materials showing that these distributors would be key—or even relevant—witnesses. Rather, Lotte recites broad categories of information that the witnesses might be able to provide, such as evidence of actual confusion and plaintiffs' knowledge of the fact that Lotte had been selling its products in the United States for "over 20 years." (ECF No. 43-1 at 10). Further, Lotte does not explain why the California

---

between the marks, the price of the goods and sophistication of consumers, evidence of actual confusion, and whether the goods are marketed through the same channels of trade, among others.

distributors' knowledge in this regard, assuming they have such knowledge, is unique; it would seem plainitffs' own employees could testify readily to their awareness (or lack thereof) of the sale of Lotte's products. And there are myriad other witnesses and sources of proof that will be relevant on the subject of actual confusion. *See ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008) ("In an infringement action, the most critical witnesses may be those officers and employees who were involved in the design, production, and sale of the allegedly infringing products." (internal quotation marks and alterations omitted)); *see also supra* n.4.

In any event, while it is possible that the California distributors could provide relevant information, the Court is not required to speculate in that regard. *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973) (ordering district court to vacate its transfer order because the movants failed to supply evidence in the form of "affidavits, depositions, stipulations, or other documents" to support a § 1404(a) transfer); *Popkin v. E. Air Lines, Inc.*, 253 F. Supp. 244, 248 (E.D. Pa. 1966) ("[D]efendants must show more than their assertion that a certain number of witnesses will be inconvenienced . . . . They must show the materiality of the matter to which these witnesses will testify and some justification that they will probably be called to the stand."); *cf. Telebrands Corp. v. martFIVE, LLC*, Civ. A. No. 13-3374 (JLL), 2013 WL 4675558, at *8 (D.N.J. Aug. 30, 2013) (granting transfer because defendants "provided the names, locations, and expected testimony of specific individuals" while plaintiff identified only three northeastern non-party entities who might have discoverable information). Since the Court has already allowed limited jurisdictional discovery, Lotte's inability specifically to demonstrate the relevance of the California non-party witnesses fails to carry its burden on this important factor of the transfer

analysis.[5]

### 5. *The Location of Books and Records*

Similarly, regarding availability of documents, although Lotte asserts that the documents necessary to litigate this case are located in its California headquarters, it has not set forth why the documents could not readily be produced in this District for trial. It would be indeed the unusual case in this day and age of electronically stored information if the parties' relevant communications were neither created and stored electronically at their inception nor put into electronic form shortly after the lawsuit's commencement for the parties' and their counsel's own use and convenience. Lotte has not shown that this is the unusual case where paper discovery and hence physical transfer of voluminous records will be necessary.

*** 

While the Court recognizes that Lotte would prefer that the action be litigated in California because that forum would be more convenient for certain of its party witnesses there, Lotte has failed to meet its burden to show that the private interest factors as a whole favor transfer. Plaintiffs chose New Jersey as the forum, both parties have offices and/or employees in New Jersey, defendant is incorporated in New Jersey, and the alleged infringement would have occurred in part in New Jersey, where both parties' products are sold.

### B. Public Interest Factors

As Lotte concedes, most of the public interest factors in this case are neutral. Lotte argues,

---

[5]      Lotte also claims that plaintiffs have certain former employees who may possess relevant information and "likely" reside in California. (ECF No. 43-1 at 10). Lotte refers to 4 of 25 employees identified in interrogatory responses, whose current business addresses are listed as "unknown." These include an intern, two sales representatives and a marketing assistant. (ECF No. 44 at 25). Despite the Court's having permitted Lotte jurisdictional discovery, Lotte neither identifies any relevant personal knowledge of these four individuals nor demonstrates they are outside of this Court's subpoena power. Therefore, the Court does not consider this speculative argument in performing its transfer analysis.

however, that practical considerations favor transfer to California and that California has a stronger interest in this dispute than New Jersey.  In support of the former argument, Lotte raises mainly the parties' physical presence there, which this Court already has addressed in the preceding section.  Lotte also notes that the second-filed action it commenced in the Central District of California is another factor favoring that District.  The Court finds it inappropriate to place weight on defendant's filing after the commencement of this lawsuit of a nearly identical action in California, which action was stayed by that court at its inception.

With respect to the respective interests of New Jersey and California in this action, the Court cannot conclude that California necessarily has the stronger interest in this dispute because the parties have their main offices there.  Lotte is a New Jersey corporation, in whose conduct this state has an interest.  Glico has an office and employees here.  And both parties' products are sold in New Jersey.  Therefore, the Court does not find that this factor favors transfer.

In summary, application of the *Jumara* factors causes the Court to conclude that Lotte does not meet its burden of demonstrating that transfer to the Central District of California is appropriate.

### III.    CONCLUSION

For the reasons stated above, the motion to transfer is **DENIED**.  The Clerk is accordingly directed to terminate ECF No. 43.

The Court shall hold an initial scheduling conference on **February 22, 2017 at 11:30 a.m.**, in Courtroom 4A of the Martin Luther King Building and U.S. Courthouse.  The parties are directed to electronically file a Joint Discovery Plan on or before **February 16, 2017**.

Dated:  January 30, 2017

**Hon. Leda Dunn Wettre**
**United States Magistrate Judge**

Original:      Clerk of the Court
     cc:       Hon. Madeline Cox Arleo, U.S.D.J.
               All Parties

15