

Hogan Lovells US LLP
4085 Campbell Avenue
Suite 100
Menlo Park, CA  94025
T  +1 650 463 4000
F  +1 650 463 4199
www.hoganlovells.com

July 16, 2018

*VIA ECF*
Honorable Leda Dunn Wettre, U.S.M.J.
Martin Luther King, Jr. Building
& U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

Re:   Ezaki Glico Kabushiki Kaisha *et al.* v. Lotte International America Corp. *et al.*
        Civil Action No. 2:15-cv-5477-MCA-LDW

Dear Judge Wettre:

On behalf of Plaintiffs Ezaki Glico Kabushiki Kaisha and Ezaki Glico USA, Corp. ("Glico") and pursuant to your Pre-Trial Scheduling Order and Local Rule 37.1, we write to notify Your Honor of a discovery dispute with Defendants Lotte International America Corp. and Lotte Confectionary Co. Ltd. (collectively, "Lotte").

Just minutes before the deposition of Lotte's economics expert, Ambreen Salters, was to begin on the morning of July 12, 2018, and ***without any advance notice***, counsel for Lotte Rebecca Harker Duttry handed Glico's counsel what she characterized as a "supplement" to Ms. Salters's expert report.  A quick analysis of the so-called "supplement" (consisting of 9 pages of complex charts and workpapers) revealed that Ms. Salters had not merely supplemented her opinion, but rather, substantially altered the central opinion she offers in this case, including its underlying methodology.  The "supplement" is untimely, unjustified, and extremely prejudicial, and it should be stricken.  Further, the manner in which it was concealed and sprung upon Glico is an outrageous and bad faith litigation tactic, which warrants sanctions.  The timing leaves but one reasonable inference.  Lotte's counsel held these new opinions until the very last moment before deposition as a deliberate and calculated tactic to deprive Glico of any fair opportunity to challenge their propriety and/or properly analyze Ms. Salters's new opinions and intelligently depose her about them.  This Court (namely then-Magistrate Judge Arleo) has imposed sanctions in similar circumstances.  *Hioutakos v. SimplexGrinnell LP*, No. CIV.A. 2:10-4505 KM, 2014 WL 1255197, at *2 (D.N.J. Mar. 26, 2014) (discussed *infra*).

Glico respectfully requests leave to move for an order, or an order, (1) striking Ms. Salters's new opinions in the so-called "supplement," (2) requiring Ms. Salters to sit for

deposition based only on her original rebuttal report of May 14, 2018, and (3) precluding Lotte and Ms. Salters from relying on the new opinions at deposition, at trial, or in any other way. Glico also seeks leave to move to sanction Lotte pursuant to Federal Rule of Civil Procedure 37 for fees and costs imposed by its deceitful discovery tactics, or an order granting such sanctions.

Counsel for Glico conferred in person with counsel for Lotte in an attempt to resolve this dispute before raising it with the Court. Since the close of expert discovery is approaching quickly on August 2, Glico respectfully asks this Court to expedite briefing and consideration of this dispute by ordering Lotte to respond within two days, by Wednesday, July 17, and scheduling a telephonic hearing at the Court's earliest convenience.

## FACTUAL BACKGROUND

This is not the first time that Lotte has wasted Glico's time and money with discovery misconduct,[1] but this one beats all. Not only did Lotte attempt to fundamentally alter Ms. Salters's opinions moments prior to her deposition, but the substance of the change is particularly unjustified and egregious considering the history of her first report.

Pursuant to the Court's Order, Opening expert reports in this case were due on April 13, 2018, and rebuttal expert reports were due on May 14, 2018. Dkt. 153 at 3. In a trade dress infringement case such as this, the plaintiff is entitled to recover defendant's profits. 15 U.S.C. § 1117(a). "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.* Thus, on April 13, Glico served an expert report authored by its economics expert, John Hansen, detailing Lotte's accused sales, and on May 14, Lotte served an expert report authored by its economics expert, Ambreen Salters, regarding deductible costs and resulting profits. But with no warning to Glico, Lotte itself simultaneously produced nine spreadsheets, totaling over 700 pages when printed, ***long after the close of fact discovery***, as purported evidence of costs allegedly associated with sales of the accused products. *See* Dkts. 187 & 188. Lotte had not produced these financial documents (or anything like them) during fact discovery, which had ended approximately three months prior in February. Dkt. 114 at 2. The May 14 report from Ms. Salters significantly relied on these new factual financial documents to support deductible costs, which the entire point of her report

---

[1] For example, Lotte forced Glico to move to compel productions in response to its Request for Production Nos. 5–7 and 13 (Dkt. 126), yet when the Court ruled in Glico's favor (Dkt. 147 at 1), Lotte finally disclosed that it was not, in fact, withholding any documents responsive to those Requests. Further, Lotte repeatedly missed deadlines to substantially complete its document production, first set at December 15, 2017 (Dkt. 114) and then extended to January 5, 2018 (Dkt. 133 at 6:20–7:3). In fact, Lotte produced approximately **60%** of its total production after the January 5th deadline ordered by the Court. Lotte continued to make voluminous productions of foreign language documents (requiring translations) into February 2018, including thousands of pages on February 2, which was only eleven days before the scheduled 30(b)(6) deposition of Lotte Confectionery. In fact, Lotte continued to produce such documents until the last day of fact discovery. These late Lotte productions required Glico to undertake extensive translations (on an expedited basis, due to the fact discovery cut-off, thereby unnecessarily incurring increased costs) and analysis of foreign language documents, and necessitated a delay in the 30(b)(6) depositions of Lotte Confectionery despite Glico's best efforts to expedite its review.

(pursuant to 15 U.S.C. § 1117). Decl. of John L. Hansen in Support of Plaintiff's Motion to Strike ("Hansen Decl.") ¶ 5; *see also* Decl. of Aaron S. Oakley in Support of Plaintiff's Motion to Strike ("Oakley Decl."), Exhibit 4A & Workpaper 4A.

In her May 14 report, Ms. Salters opined that Lotte America and Lotte Confectionery were entitled to deduct two categories of costs to arrive at the correct profit for the accused sales: costs of goods sold and operating expenses. Hansen Decl. ¶ 8; *see also* Oakley Decl., Workpaper 4A. Lotte had produced documentary evidence, for some of the years at issue, of the first category of costs—costs of goods sold—during fact discovery. However, the operating expenses for Lotte America that Ms. Salters deducted in her May 14 report were entirely supported by the newly produced spreadsheets and citations to interviews with two Lotte America employees. Hansen Decl. ¶ 9; Oakley Decl. Exhibit 4A.

Glico was initially inclined to move to strike the portions of Ms. Salters's report that relied upon these new documents. In addition to the unfair surprise, Glico was unduly prejudiced by receiving new fact documents three months after the close of fact discovery. Glico's attorneys had no opportunity to review the new information and depose Lotte's fact witnesses about it. Nor was Glico's damages expert, John Hansen, able to consider and analyze the newly produced documents. During a meet and confer to discuss Ms. Salters's reliance on the late-produced documents, counsel for Lotte conceded that the failure to make the production during fact discovery was an error and offered to cure Glico's prejudice in part. See Dkt. 188. Putting aside the fact that Lotte's counsel had given absolutely no advance notice of the forthcoming production, for which there has never been any explanation, and in the spirit of good faith and cooperation, Glico agreed to the remedial measures described in the stipulation filed by the parties on June 7, 2018 and granted by the Court on June 12, 2018. Dkt. 188.

One such measure was the opportunity for Glico to depose a Lotte fact witness about the newly produced documents. Counsel for Glico traveled to Los Angeles where Lotte America is based and, for the second time in the case, deposed its accounting manager, Ms. Joanne Joo Hee Lee, on June 15, 2018, regarding the newly produced financial documents. *Id.* Glico's attorneys spent hours reviewing the newly produced documents, analyzing Ms. Salters's report, and preparing for Ms. Lee's deposition. Although Lotte agreed to pay for the court reporter, videographer, and translator for Ms. Lee's deposition, it did not agree to pay for Glico's attorney fees or travel costs. See *id.* Another remedial measure was the opportunity for Glico's economics expert Mr. Hansen, to file a supplemental expert report. Mr. Hansen and his staff devoted considerable time and effort to reviewing the newly produced documents, analyzing Ms. Salters's report and the Lee deposition testimony, and drafting a supplemental report in response. Glico served Mr. Hansen's supplemental report on July 2, 2018, as agreed by the parties, and memorialized in the stipulation approved by the Court. Dkt. 188. Glico's attempt to remedy the prejudice of Lotte's surprise document production and expert opinions based thereon consumed considerable attorney and expert resources and cost Glico a significant sum. Moreover, the deposition of Ms. Salters, and the entire expert discovery period, had been delayed, to allow time for the additional discovery. *See* Dkt. 188. Believing the episode closed, Glico's attorneys turned their attention to preparing for the deposition of Ms. Salters based on her report of May 14.

But as a reward for Glico's cooperation, Lotte surreptitiously decided to pull the rug out from under Glico's feet once again. Shortly after 9:00 a.m. on July 12, and just before the record

3

was opened, Lotte's counsel, Ms. Rebecca Harker Duttry, casually handed Glico's deposing attorney a set of documents that she characterized as a "supplement" to Ms. Salters's rebuttal report. Ms. Duttry represented that upon review of the June 15 Lee deposition and Mr. Hansen's supplemental report, Ms. Salters had arrived at new opinions and had a duty under Federal Rule 26(e) to disclose them. Glico was given absolutely no advance notice of the so-called "supplement" prior to the instant Ms. Duttry handed it over minutes before the deposition was to begin. When asked whether Lotte had prepared a redline showing changes between the original and "supplement" reports, Ms. Duttry replied that it had not.

      Glico's counsel quickly reviewed the "supplement" in an attempt to determine the extent and significance of the changes. The full import was not clear, but counsel concluded that the "supplement" contained substantial and wide-ranging changes to the analysis contained in Ms. Salters's original rebuttal report. Counsel then met and conferred about the "supplement" and the substance of Ms. Salters's deposition. *See* Oakley Decl., Ex. 5. Counsel for Lotte insisted that the deposition proceed and that Ms. Salters be allowed to refer to her "supplement" to answer questions, notwithstanding that the deposing attorney had not been able to digest, much less verify, what appeared to be substantial changes. Lotte's counsel refused to confine Ms. Salters's testimony to the original rebuttal report, insisting that Ms. Salters could simply explain the "supplement" during the deposition. *Id.* at 5:7–6:5, 7:1–7:15. Ms. Duttry further asserted that "this is perfectly appropriate and normal course with experts," that she "disagree[s] that this is . . . prejudicial," and that there was "no reason to force us to move this deposition, change the time, refuse to ask her questions about this document." *Id.* at 6:1–4. With no good options available, Glico's counsel decided to adjourn the deposition and seek relief from the Court, rather than be forced by Lotte to take the deposition of an expert on an expert report he had never seen before and had no reason to anticipate. Even though Ms. Duttry refused to limit Ms. Salters's testimony to the original rebuttal report, she called Glico's decision to not question Ms. Salters about the surprise supplement "totally nonsensical." *Id.* at 6:5. The parties went off the record, but Glico kept Ms. Salters's deposition open for later examination. *See id.*

      Later, upon more thorough analysis, Glico's counsel confirmed that the so-called "supplement" made important, substantive changes to Ms. Salters's original report. Ms. Salters's report of May 14 comprised nine pages of text, her CV, a list of documents reviewed, Exhibits numbered 1–4, and "Workpapers" totaling 191 pages. Oakley Decl. ¶ 2. The text of the original May 14 report contained background information and the final profit amounts she calculated, while the substance of Ms. Salters's analysis regarding costs and profits appeared in Exhibits 1–4 and Workpapers 4, 5, 6, and 11. Hansen Decl. ¶¶ 4, 8–11; *see also* Oakley Decl., Exhibits 1A, 2A, 3A, 4A & Workpapers 4A, 5A, 6A, 11A. The rest of the Workpapers simply summarized evidence of record upon which Ms. Salters's opinion was based or addressed subsidiary issues. Hansen Decl. ¶ 10. The "supplement" Lotte produced on the morning of July 12 comprised Exhibits 1–3 and Workpapers 4–6, and 11, and omitted all references to Exhibit 4. Hansen Decl. ¶ 12; *see also* Oakley Decl. ¶ 7. Ms. Duttry represented that these new exhibits and workpapers were intended to replace the corresponding exhibits and workpapers in the original report and provided a re-printed version of all exhibits and workpapers. Oakley Decl. ¶ 3. Therefore, by strategically swapping these particular exhibits and workpapers, Ms. Salters rewrote the central analysis of the May 14 report. Hansen Decl. ¶¶ 12, 14; *see also* Oakley Decl., Exhibits 1B, 2B, 3B & Workpapers 4B, 5B, 6B, 11B. Lotte may argue that the changes were mere re-calculations. To the contrary, the "supplement" was calculated to rewrite Ms. Salters's opinions

4

almost entirely, and drastically change their underlying methodology, while retaining the appearance of mathematical corrections. *See* Hansen Decl. ¶ 14.

In this regard, Ms. Salters has abandoned any and all reliance on the Lotte financial spreadsheets produced (on an untimely basis) with her report on May 14. Hansen Decl. ¶¶ 5, 13, 14. Instead of two categories of cost deduction, as in her opening report, Ms. Salters now relies upon only one. Hansen Decl. ¶ 14. Ms. Salters no longer refers to any of Lotte America's operating expenses, which were the entire point of the bargain documented in the June 7 stipulation, and now analyzes only the costs of goods sold as deductible expense. Hansen Decl. ¶¶ 13, 14. That point bears repeating. ***The "supplement" relies on no information or documents that were not in the record during fact discovery.*** In other words, the "supplement" is wholly unjustified because any and all of its contents should have been in the May 14 opening report, if anywhere, and the "supplement" nullifies the entire exercise of extending the expert discovery schedule, analyzing over 700 pages of new cost information produced on May 14, preparing for and deposing Lotte America's accounting manager, and drafting the supplemental report of Mr. Hansen. *See* Dkt. 188. Despite deducting fewer categories of costs, however, Ms. Salters has arrived at amounts of profits that are very similar to her first report. Hansen Decl. ¶ 15. Ms. Salters accomplished this (in response to Mr. Hansen's criticism in his supplemental report) by belatedly deciding to change her approach and methodology to analyzing the costs of goods sold. Hansen Decl. ¶¶ 14, 15; *compare* Oakley Decl., Workpapers 11A *with* 11B.

Lotte cannot explain why it waited until minutes before Ms. Salters's deposition to ***ambush*** Glico with a "supplement" to her rebuttal report that effected a sea-change in her opinions. Even if the "supplement" was appropriate, which it is not, failing to provide any notice to Glico is simply inexcusable. Lotte had a rough transcript of Ms. Lee's deposition on June 15, 2018 and had Mr. Hansen's supplemental report ten days before Ms. Salters's deposition. Ms. Salters was clearly drafting the "supplement" well before the day of her deposition, yet Lotte breathed not a word about it. Lotte presumably concealed the new opinions because notice would have provided an opportunity for Glico to postpone the deposition, and reasonably so. The only conclusion under these circumstances is that Lotte's actions were a tactical decision to revise Ms. Salters's opinion long past the expert report deadline and prevent Glico's ability to examine her fully. In short, Lotte's actions were designed and intended to prejudice Glico. They warrant sanctions.

## ARGUMENT

This Court should sanction Lotte for its noncompliance with its discovery obligations and its bad-faith conduct pursuant to Federal Rule of Civil Procedure 37. Glico requests that this Court strike Ms. Salters's new opinions, order Ms. Salters to return to Denver for a deposition and confine her testimony to her original rebuttal report, and preclude her and Lotte from relying on the so-called "supplement" in any way. Glico further requests the Court to sanction Lotte for its prejudicial actions by awarding Glico the attorney fees and costs of the aborted deposition on July 12 and the present application.

In the alternative, if Ms. Salters's new opinions are not stricken, Glico asks that this Court compel Ms. Salters to return to Denver for deposition before the close of expert discovery on August 2. Because the "supplement" entirely nullifies all of the remedial actions taken since May 14, if the Court chooses not to strike the supplement, Glico also asks the Court to award

Glico the full fees and costs of its wasted efforts, to include (1) attorney fees and travel costs for the preparation and conduct of Ms. Lee's deposition, (2) attorney fees, expert fees, and any other costs related to Mr. Hansen's supplemental report, (3) attorney fees and costs incurred in the attempted deposition of Ms. Salters on July 12, and (4) attorney fees and costs incurred in making this application.

### A. Legal Standards

Under Rule 26, a party must make its expert disclosures within the timeframe set by the court. "A party must make [expert] disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). The opposing party may depose a party's expert "only after the report is provided." Fed. R. Civ. P. 26(b)(4)(A). It is true that Rule 26(e) requires a party whose disclosure is in some material respect incomplete or incorrect to supplement and correct it in a timely manner. Fed. R. Civ. P. 26(e)(1)(A). Rule 26(e) does not, however, authorize experts to correct inadequate or incomplete preparation, add new opinions, or deepen or strengthen existing opinions. *In re Asbestos Prod. Liab. Litig. (No. VI)*, 289 F.R.D. 424, 425–26 (E.D. Pa. 2013).

When a party fails to make disclosures as required by Rule 26(a), Rule 37 provides that, "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In addition to this sanction, Rule 37 authorizes payment of reasonable expenses and attorney fees caused by the failure, informing the jury of the party's failure, and other appropriate means of enforcement. Fed. R. Civ. P. 37(c)(1)(A–C). "Rule 37 is written in mandatory terms and is designed to provide a strong inducement for disclosure of Rule 26(a) material." *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995).

The party who failed to disclose information bears the burden to show that its nondisclosure was substantially justified or harmless. *E.M. Sergeant Pulp & Chem. Co. v. Travelers Indem. Co. Inc.*, No. 12-1741 (KM) (JBC), 2015 WL 9413094, at *3 (D.N.J. Dec. 22, 2015). "'Substantial justification' requires 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there exists a genuine dispute concerning compliance.'" *Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 591 (D.N.J. 1997) (citing *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan.1995)). A failure to disclose is considered harmless when there is no prejudice to the other party. *E.M. Sergeant*, 2015 WL 9413094, at *3. The Third Circuit has identified four factors to consider when determining whether nondisclosure warrants exclusion: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure the prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000).

### B. Analysis

Lotte's failure to conduct discovery in compliance with this Court's orders is neither harmless nor substantially justified. Rule 26 required Lotte to make its expert disclosures at the times that this Court ordered. Lotte cannot dispute that it attempted to modify Ms. Salters's

6

report without leave of court nearly two months after rebuttal expert disclosures were due on May 14, and literally minutes before Glico was to depose Ms. Salters. Lotte's failure to comply with its discovery obligations harmed and prejudiced Glico and warrants preclusion under Rule 37(c)(1).

### 1. Federal Rule 26(e) does not permit an expert to attempt to repair her opinion simply because flaws in her original methodology are exposed.

During discussions on July 12, counsel for Lotte asserted that Ms. Salters was not only permitted, but obligated under Rule 26(e), to submit a "supplement" because her opinions had changed in response to the deposition of Ms. Lee and Mr. Hansen's supplemental report, which criticized her methodology. Rule 26(e) does not permit an expert to fundamentally change opinions after the deadline for disclosure.

Rule 26(e)(1)(A) provides that parties must supplement disclosures "*in a timely manner* if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Rule 26(e), however, "is not an avenue to correct failures of omission because the expert did an inadequate or incomplete preparation, [] add new opinions [], or deepen or strengthen existing opinions." *In re Asbestos Prod. Liab. Litig. (No. VI)*, 289 F.R.D. 424, 425–26 (E.D. Pa. 2013) (internal citations and quotations marks omitted). Rule 26(e) "does not give license to sandbag one's opponent with claims and issues that should have been included in the expert witness' report." *Robocast, Inc. v. Apple Inc.*, No. CV 11-235-RGA, 2014 WL 334199, at *1 (D. Del. Jan. 28, 2014) (quoting *Gallagher v. S. Source Packaging, LLC*, 568 F.Supp.2d 624, 630–31 (E.D.N.C. 2008)). Lotte's attempt to rewrite the Salters's report the moment her deposition was to begin is precisely the type of substantive repair and *sandbag* that Rule 26(e) does *not* authorize.

Ms. Salters's "supplement" replaces the central issue addressed in her original rebuttal report with an essentially new opinion. *See* Hansen Decl. ¶¶ 11, 12, 14. In her original report, Ms. Salters formed an opinion regarding Lotte's deductible costs based on the May 14 untimely produced financial documents and purported interviews with Lotte employees. Hansen Decl. ¶¶ 5, 9. Glico investigated Ms. Salters's opinions by analyzing the Lotte documents and deposing Ms. Lee, and then submitted Mr. Hansen's supplemental report, as stipulated, in which Mr. Hansen criticized Ms. Salters's methodology. New testimony from Lotte witness Ms. Lee, and Mr. Hansen's analysis *did not provide Lotte with any information not previously available or known to it*. Rule 26(e) does not permit Lotte to submit an essentially new damages report, fundamentally changing its expert's methodology, simply because the original methodology was criticized.

*Hioutakos v. SimplexGrinnell LP*, No. CIV.A. 2:10-4505 KM, 2014 WL 1255197 (D.N.J. Mar. 26, 2014), in which the district court affirmed sanctions imposed by then-Magistrate Judge Arleo, is directly on point. In *Hioutakos*, a party submitted a new and untimely expert report without leave of court. *Id.* at *1. The party's damages expert had undergone a deposition that exposed flaws in his methodology. *Id.* Thereafter, without seeking leave and after the expert disclosure deadline, the party served a new expert report which sought to minimize those flaws. *Id.* The party argued that its revised report was appropriate and required by Rule 26(e), but Judge Arleo ruled that the revisions to the report exceeded the bounds of supplementation and

7

correction contemplated by Rule 26(e) and instead "substantially changed and reworked the methodology and analysis of the original report in response to the weakness pointed out at the deposition." *Id.* at *2. As sanctions, Judge Arleo gave the offending party the option to withdraw the untimely report or pay the opposing party's costs and fees associated with curing prejudice caused by the late report. *Id.* at *1.

Lotte's actions here are exactly like those Judge Arleo found sanctionable in *Hioutakos*, in which a party attempted to advance wholesale changes in methodology and analysis under the cover of Rule 26(e). As in *Hioutakos*, Lotte is not permitted by Rule 26(e) to supplement its expert disclosures two months after the deadline without court leave. Under Lotte's misguided logic, parties would be able to submit round after round of competing supplemental disclosures all the way through trial. This would render the deadlines set by the Court meaningless. Other cases within the Third Circuit have similarly stricken or imposed other sanctions on parties that sought to submit untimely expert disclosures under the guise of Rule 26(e). *See, e.g.*, *Robocast*, 2014 WL 334199, at *1 (striking supplemental damages report submitted as a tactical decision to include new theories, not correct inadvertent error or omission); *Apotex, Inc. v. Cephalon, Inc.*, No. 2:06-CV-2768, 2014 WL 4933009, at *1–*2 (E.D. Pa. Oct. 1, 2014) (striking supplemental report submitted after expert disclosure deadline and without leave of court, where party argued that supplemental report was necessary to respond to report of opposing expert).

### 2. Ms. Salters's new opinions should be excluded because Lotte's incorrigible noncompliance with its discovery obligations is neither harmless nor substantially justified.

Rule 26 required Lotte to make its expert disclosures in accordance with this Court's Scheduling Order. Lotte cannot dispute that it served the "supplement" without court leave nearly two months after its rebuttal expert disclosures were due on May 14, and literally minutes before Glico was to depose Ms. Salters. Crucially, the new opinion is based entirely on facts that were produced or disclosed prior to the February fact cutoff deadline. *See* Hansen Decl. ¶ 13. Lotte's failure to comply with its discovery obligations harmed and prejudiced Glico and warrants preclusion under Rule 37(c)(1). All factors weigh in favor of exclusion.

#### a. Lotte's disclosure of Ms. Salters's new opinion the very moment her deposition was to begin smacks of bad faith and epitomizes unfair surprise and prejudice.

Glico has been unfairly surprised and prejudiced by Lotte's scheme to conceal and switch Ms. Salters's opinion at the last possible moment for at least two primary reasons. First, the "supplement" dramatically alters the economic analysis supporting Ms. Salters's damages opinion, effectively creating a second version of the opinion long past Lotte's disclosure deadline and without time for Glico to fully analyze it. Second, because the new opinion does not rely on the untimely financial documents produced on May 14, it renders all the time, money and effort Glico spent in a good-faith, cooperative, effort to cure its earlier prejudice (itself caused by Lotte's earlier misconduct involving the same expert witness) worthless.

The wholesale changes between Ms. Salters's original report and her new opinion fundamentally alter the analysis underlying Ms. Salters's calculation of profits, granting Lotte a second bite at the apple long after its disclosure deadline had passed. Ms. Salters's new analysis reaches different conclusions using different figures. For example, new Exhibit 1 summarizing

8

Lotte's Pepero profits reaches similar values as Ms. Salters calculated in the original Exhibit 1 notwithstanding the fact that she now deducts *fewer* categories of costs. *See* Hansen Decl. ¶ 15; *compare* Oakley Decl., Exhibit 1A *with* Exhibit 1B.

Lotte's tactics were designed to limit Glico's ability to fully examine Ms. Salters. Even though Lotte knowingly provided the "supplement" minutes before her deposition was to begin, Lotte's counsel insisted that the deposition should go forward and that Glico could simply question Ms. Salters about the supplement on the fly without any time to analyze the new material. If Glico had agreed to Lotte's suggestion, it would have been unable to examine Ms. Salters with any degree of depth and care as to the so-called "supplement," which quite obviously was Lotte's goal.

While it is bad enough that Ms. Salters attempted to change opinions the moment before deposition, but even worse, her new opinion does not even rely on the untimely and unauthorized May 14 financial document production. Lotte knew that Glico was prejudiced by its untimely production of new financial documents with Ms. Salters original report. Instead of immediately moving the Court for relief, Glico worked with Lotte to negotiate a multistep course of action to cure that prejudice, which required Glico to expend hours of attorney and expert time analyzing the documents, deposing Ms. Lee, and preparing Mr. Hansen's supplemental report. Lotte brazenly exploited Glico's good-faith efforts to cooperate in discovery when it abandoned the untimely financial documents in Ms. Salters's supplemental report, and rendered all of Glico's efforts to cure its prejudice moot.

Lotte's tactics wasted Glico's time and money on the day of the deposition too. Since Glico had no notice of the "supplement" until the day of the deposition, it spent attorney time preparing to depose Ms. Salters based only on the report served on May 14 and Ms. Lee's testimony from June. It also incurred the costs of hiring a court reporter and videographer, and wasted attorney time during the deposition itself. Had Glico known of Lotte's intent to supplement, it would have called off the deposition at least until it had time to digest the supplement in full, and decide whether to seek to strike it or prepare to examine Ms. Salters thoroughly about the new material. Lotte's counsel had to have known this, but instead they chose to let Glico incur costs and fees preparing for the July 12 deposition.

> **b. The prejudice from Ms. Salters's new opinion is incurable; Glico has already attempted to cure the prejudice caused by Lotte's late production of documents for the Salters report and allowing a do-over will only give cover to continued gamesmanship.**

Permitting Lotte to rely on the Salters "supplement" causes incurable prejudice to Glico because Lotte will be getting a second chance to proffer a revised damages report in violation of Rule 26 and this Court's Scheduling Order. This would be unfair and incurably prejudicial to Glico, since it has fully and consistently abided by the Court's deadlines. *See N.J. Physicians United Reciprocal Exch. v. Med. Protective Co., Inc.*, No. CV 13-2286 (PGS), 2017 WL 3623801, at *11 (D.N.J. Aug. 23, 2017) ("The Court's scheduling orders mean something. Indeed, they are at the heart of case management and integral to the Court's control of its docket.").

Nor can Glico undo the considerable time, money, and work it spent in good faith to take discovery on the May 14 financial document production. Lotte paid for some of the costs of

redeposing Ms. Lee, but it did not pay for any attorney or expert time or any travel expenses. Since the "supplement" does not rely on these documents, Glico's efforts and expenditures were squandered and Glico is back at square one with Ms. Salters after all of its efforts.

Lotte's actions further show a lack of respect to the Court. The schedule of this case has already been extended three times due to Lotte's obstruction and failure to abide by its discovery obligations (*see* Dkts. 114, 153, and 188), most recently, when Glico agreed to allow Ms. Salters to rely on Lotte's new financial documents produced two months after the fact discovery cutoff. Each extension has driven up costs and fees for Glico. If this case is to proceed in an orderly manner, Lotte must take its obligations seriously. At present, there is no evidence that it does so. Allowing Lotte to rely on the revised Salters opinion would only encourage Lotte's obstinance and further bait-and-switch and sandbagging tactics in the future.

### c. Allowing Lotte to switch expert theories at this stage would once again disrupt a schedule that has been repeatedly extended due to Lotte's malfeasance.

The schedule in this action has been disrupted time and again due to Lotte's unjustified positions. First, Lotte Confectionery denied that it was a proper defendant in this case. Lotte's position was without merit, and this Court agreed that Lotte Confectionery was subject to suit, Dkt. 114, but Lotte's stalling tactics set the case back by three months. Then, in February, Lotte repeatedly produced voluminous batches of documents long after the date that it represented its productions would be substantially complete. The vast majority of those productions were foreign language documents that required translation before counsel could even begin to analyze them. Those late productions made it impossible to complete all fact depositions within the new fact discovery period. Finally, Lotte threw another wrench in the works by producing yet another batch of fact documents on May 14 with Ms. Salters's original rebuttal report.

Attempting to cure the prejudice Lotte has caused with the new Salters opinion would disrupt the proceedings even further because of the late stage of the case. Fact discovery is long closed. Expert discovery is scheduled to close on August 2, and the parties' first deadline related to dispositive motions is August 6. The case schedule cannot be made slave to Lotte's refusal to take its discovery obligations seriously.

### d. Lotte exhibited appalling bad faith in its willful and calculated tactic to deprive Glico of any fair chance to understand and examine Ms. Salters's opinion.

The timing of the disclosure of the "supplement" and the lack of advance notice to Glico demonstrates a bad-faith, calculated decision by counsel designed to maximize Glico's prejudice. Glico served Mr. Hansen's supplemental report on July 2, ten days before Ms. Salters's deposition. During those ten days, Ms. Salters must have been preparing the supplement. Yet Lotte never gave Glico any notice, nor any opportunity to postpone Ms. Salters's deposition. Glico had no idea that Lotte intended to supplement Ms. Salters's report, since Lotte had not asked for that opportunity during the negotiation of the stipulation and Lotte never sought leave of Court to do so. Even if Lotte genuinely believed Ms. Salters's supplement was appropriate, there is no innocent explanation for its failure to notify Glico. Knowing that Ms. Salters was preparing the supplement, and knowing that Glico was preparing to depose Ms. Salters on her expert opinions, Lotte and its counsel *chose* to say nothing and instead surprise Glico with an

essentially new report moments before Ms. Salters's deposition. This decision not only prejudiced Glico, it violated the spirit of Rule 26(b)(4)(A), under which an expert may be deposed "only after the report is provided."

## CONCLUSION

For the foregoing reasons, Glico respectfully requests leave to move for a Court order, or an order, (1) striking Ms. Salters's new opinion, (2) requiring Ms. Salters to sit for a deposition on her original damages rebuttal report only, (3) precluding Lotte and Ms. Salters from relying on the so-called "supplement" for any purpose, and (4) awarding Glico the fees and costs of the aborted deposition scheduled for July 12.

In the alternative, if the "supplement" is not stricken, Glico asks that this Court compel Ms. Salters to return to Denver for deposition before the close of expert discovery on August 2 and order Lotte to pay all of Glico's fees, costs, and expenses associated with the May 14 production of documents upon which Ms. Salters no longer relies. Those fees, costs, and expenses include (1) attorney fees related to preparing for and taking Ms. Lee's deposition, (2) expert fees and attorney fees related to Mr. Hansen's supplemental report, (3) attorney fees preparing to depose Ms. Salters on her original rebuttal report, and (4) fees and costs incurred in the July 12 deposition.

If and when Your Honor rules that Glico is entitled to recover specific financial sanctions, Glico proposes to make an appropriate submission at that time and with the content set forth in L. Civ. R. 54.2.

In view of the case schedule and its upcoming deadlines, Glico would very much appreciate the Court's expedited consideration of this matter.

Respectfully submitted,

/s/   Steven M. Levitan
Steven M. Levitan (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
4085 Campbell Avenue
Suite 100
Menlo Park, CA 94025
Tel: 650.463.4000
Fax: 650.463.4199

Anna Kurian Shaw (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
Telephone: 202.637.5600
Facsimile: 202.637.5910

5529582_1.docx

        Aaron S. Oakley (admitted *pro hac vice*)
        Katherine A. nelson (admitted *pro hac vice*)
        Hogan Lovells US LLP
        1601 Wewatta Street, Suite 900
        Denver, CO 80202
        Telephone: 303.899.7300
        Facsimile: 303.899.7333

        /s/   *Roy H. Wepner*
        Roy H. Wepner
        Charles P. Kennedy
        Natalie S. Richer
        LERNER, DAVID, LITTENBERG,
        KRUMHOLZ & MENTLIK, LLP
        600 South Avenue West
        Westfield, NJ 07090-1497
        Tel: 908.654.5000
        Fax: 908.654.7866

        *Attorneys for Plaintiffs Ezaki Glico*

cc:   Counsel of Record (via ECF)