Roy H. Wepner
Charles P. Kennedy
Natalie S. Richer
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090-1497
Tel: 908.654.5000
Fax: 908.654.7866

**OF COUNSEL**
Steven M. Levitan (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
4085 Campbell Avenue
Suite 100
Menlo Park, CA 94025
Tel: 650.463.4000
Fax: 650.463.4199

*Attorneys for Plaintiffs Ezaki Glico Kabushiki Kaisha, d/b/a Ezaki Glico and Ezaki Glico USA Corp.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EZAKI GLICO KABUSHIKI KAISHA, d/b/a EZAKI GLICO CO., LTD., and EZAKI GLICO USA CORPORATION, | : : : Civil Action No. 2:15cv5477 : District Judge Madeline Cox Arleo : Magistrate Judge Leda Dunn Wettre |
| Plaintiffs, | : : |
| v. | : : |
| LOTTE INTERNATIONAL AMERICA CORP., | : : |
| Defendant. | : |

**DECLARATION OF JOHN L. HANSEN**
**IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE**

I, John L. Hansen, declare as follows:

1. I am a Vice President and founding member of TM Financial Forensics, LLC ("TMF") in the San Francisco office. TMF is a business, economic, financial and damages consulting company that provides services to business entities, individuals and counsel.

2. TMF was retained by counsel for Plaintiffs Ezaki Glico Kabushiki Kaisha, d/b/a Ezaki Glico Co., Ltd., and Ezaki Glico USA Corporation (together, "Ezaki" or "Plaintiffs") to address damages and other financial and economic issues related to the alleged trademark infringement of Lotte International America Corp. ("Lotte America") and Lotte Confectionery Co. Ltd. ("Lotte Confectionery") (collectively "Lotte" or "Defendants") in the above-captioned case.

3. I submitted an opening expert report in this matter on April 13, 2018, addressing the amount of sales of the accused products, as authorized under 15 U.S.C. § 1117(a).

4. I reviewed the rebuttal expert report of Ambreen Salters, which was submitted on May 14, 2018, regarding deductible costs and resulting profits. The text of the report contained background information and the final profit amounts she calculated.

5. I also reviewed the documents upon which Ms. Salters based her opinion. I noted that the operating costs for Lotte America, which Ms. Salters claimed were deductible, were based on Excel spreadsheets produced in native file format by Lotte America designated at Bates LOTTE00006257–65. I understand that Lotte produced LOTTE00006257–65 concurrently with Ms. Salters rebuttal report on May 14, 2018. I was not able to review these spreadsheets for the purpose of my opening expert report because they had not been provided. The first time I saw these documents was shortly after May 14, 2018 when counsel for Plaintiffs sent them to me.

6.     On July 2, 2018, I submitted a supplemental report to address the newly-produced evidence and the deposition testimony of Lotte America's accounting manager regarding that evidence.

7.     On July 12, 2018, counsel for Glico sent me the revised Exhibits and Workpapers which I understand Lotte is characterizing as a "supplement" to the May 14, 2018 rebuttal expert report of Ms. Salters. I reviewed these revisions and compared them to Ms. Salters' original rebuttal expert report of May 14, 2018.

8.     The central issue in Ms. Salters' rebuttal expert report was deductible costs, which in turn determine Defendants' profits and the measure of damages in this matter. In Ms. Salters' original report, she opined that Lotte America and Lotte Confectionery were entitled to deduct two categories of costs: cost of goods sold and operating expenses.

9.     In the original report, Exhibit 1 was a summary of profits Ms. Salters calculated for Defendants, Exhibits 2 and 3 showed the amounts of "direct expenses" that Ms. Salters deducted to arrive at Defendants' profits, and Exhibit 4 showed Ms. Salters' calculation of direct expenses for cost of goods sold and certain operating expenses to derive her "direct expenses" percentages. According to the footnotes in Exhibit 4, the various operating expenses were, in Ms. Salters' view, properly deductible because they are "directly related" to sales of Pepero based on interviews with two Lotte America employees.

10.    Some of the Workpapers attached to Ms. Salters' original report contained the analyses underlying her opinions, while others simply summarized evidence upon which she relied. Workpapers 1 and 2 summarized Ms. Salters' opinion on the revenue attributable to the accused products, which was the subject of my opening expert report dated April 13, 2018. Ms. Salters agreed with some of my opinions, and disagreed with others. Workpaper 3 purported to

illustrate the way in which Ms. Salters disagreed with my opinion about Lotte Confectionery's revenues. The vast majority of Pepero sales at issue, however, were made by Lotte America. Workpaper 4 summarized the data contained in LOTTE00006257–65, which are the new Lotte America operating expense spreadsheets Lotte produced for the first time with Ms. Salters' original report. Workpaper 5 contained similar information for Lotte Confectionery. Workpaper 6 was a summary of Lotte America Pepero product gross margin. Workpapers 9 and 10 simply summarize Pepero sales by Lotte America and Lotte Confectionery, respectively. Workpaper 11 was entitled "Lotte America Pepero Sales Data Used to Calculate Gross Margin," and simply summarized the data contained in a cost of goods sold spreadsheet. Workpapers 7, 8, 12, 13, and 14 do not affect the overall amount of profits, but instead relate to Ms. Salters' unexplained effort to break Pepero sales into "Asian" and "Non-Asian" Market Sales.

11. Therefore, Ms. Salters' central opinion on deductible costs and resulting profits appeared in Exhibits 1–4 and Workpapers 4–6 and 11. The other Workpapers addressed the issue of revenue or a breakdown of Pepero sales between "Asian" and "Non-Asian" Market Sales.

12. When I reviewed the July 12 "supplement" to Ms. Salters' expert report, I noted that she had replaced Exhibits 1–3, omitted any reliance on Exhibit 4, and replaced Workpapers 4–6 and 11. The replaced Exhibits and Workpapers contained Ms. Salters' analysis and opinions addressing the central issue of deductible costs and resulting profits.

13. In the new version of her report, Ms. Salters no long relies on any information from the operating expense spreadsheets (LOTTE00006257–65) for Lotte America.

14. The changes that Ms. Salters made to her opinion in these new Exhibits and Workpapers are substantial, and reflect a significant change in approach and methodology. Ms. Salters no longer claims any deduction for Lotte America operating expenses and has therefore

dispensed with Exhibit 4, which was directed to that calculation. Ms. Salters also no longer claims any deduction for Lotte Confectionery operating expenses and therefore no longer relies on the majority of original Workpaper 5 (and submitted a new Workpaper 5). Instead, the revised report claims only cost of goods sold as a deductible expense. Ms. Salters also changed her calculation of cost of goods sold. Instead of relying on her calculation in original Workpaper 6 and the raw data from Lotte America's cost of goods sold spreadsheet (shown in original Workpaper 11), she now has included different products to calculate a revised cost of goods sold in her new Workpaper 6 and new Workpaper 11.

15. I note that despite deducting fewer categories of costs, Ms. Salters has arrived at profit amounts that are very similar to her first report.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July 16, 2018.    By: _____