*PUBLIC VERSION*

Roy H. Wepner
Charles P. Kennedy
Natalie S. Richer
LERNER, DAVID, LITTENBERG,
  KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090-1497
Tel: 908.654.5000
Fax: 908.654.7866

**OF COUNSEL**
Steven M. Levitan (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
4085 Campbell Avenue
Suite 100
Menlo Park, CA 94025
Tel: 650.463.4000
Fax: 650.463.4199

*Attorneys for Plaintiffs Ezaki Glico Kabushiki Kaisha,*
*d/b/a Ezaki Glico and Ezaki Glico USA Corp.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EZAKI GLICO KABUSHIKI KAISHA, d/b/a EZAKI GLICO CO., LTD., and EZAKI GLICO USA CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> LOTTE INTERNATIONAL AMERICA CORP. and LOTTE CONFECTIONERY CO. LTD., <br><br> Defendants. | Civil Action No. 15-5477-MCA-LDW <br><br> District Judge Madeline Cox Arleo <br> Magistrate Judge Leda Dunn Wettre <br><br> Return Date: November 5, 2018 <br> Time: 10:00 a.m. <br><br> **ORAL ARGUMENT REQUESTED** |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*PUBLIC VERSION*

## TABLE OF CONTENTS

I.    Disputed issues of material fact preclude summary judgment that the Pocky product configuration trademarks are functional. ...........................................................................1

    A.    Legal standard for functionality...........................................................................2

    B.    Glico has produced evidence that is more than sufficient to show that the Pocky product configuration is not functional under both steps of *TrafFix*. .....................3

    C.    Lotte's evidence is irrelevant and insufficient to carry its burden to prove an affirmative defense of functionality for the Pocky product configuration.............5

        1.    The U.S. patents and Japanese utility model that Lotte cites as evidence of functionality are irrelevant to that issue....................................................8

            a.    Glico's U.S. '428 patent is not relevant to functionality................8

            b.    The Japanese utility model is not relevant to functionality............11

            c.    The two third-party patents are not relevant to functionality. ........12

        2.    The purported "utilitarian advantages" that Lotte cites from Glico's advertising are disputed, not relevant to the proper inquiry, and address at most only one, discrete element of the configuration................................13

    D.    Lotte's position on functionality in this case directly contradicts its own attempts to register identical trade dress in the U.S. and around the world. ........................14

II.   Disputed issues of material fact preclude summary judgment that the Pocky product configuration trademarks have been abandoned. ..........................................................15

    A.    Lotte must prove abandonment by clear and convincing evidence. ......................15

    B.    Lotte has not met its stringent burden; There is no evidence that Glico's Pocky product configuration trademark has lost its trademark significance. ..................16

    C.    ███████████████████████████████████████████████████████████████...................19

        1.    ███████████████████████████████████████████████...............20

        2.    ████████████████████████████..............................25

    D.    Lotte cannot prove any abandonment of the Pocky Almond Crush product configuration trademark. .....................................................................................29

III.  Disputed issues of material fact preclude any ruling on laches. ......................................29

    A.    Laches is not available to Lotte as a willful infringer...........................................30

    B.    Glico has ample evidence to rebut both unreasonable delay and prejudice. .........31

        1.    Evidence that the timing of this suit was reasonable creates a triable issue on the first element of laches. ................................................................31

        2.    Evidence that Lotte suffered no legally cognizable prejudice creates a triable issue on the second element of laches. .........................................34

*PUBLIC VERSION*

C.    Laches cannot bar injunctive relief in this case. ...................................................36

D.    Laches cannot bar Glico's state law claims. .......................................................37

*PUBLIC VERSION*

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Diabetes Assoc. v. Friskney Family Trust, LLC*,
   177 F. Supp. 3d 855 (E.D. Pa. 2016)....................................................................38

*Am. Greetings Corp. v. Dan–Dee Imps., Inc.*,
   807 F.2d 1136 (3d Cir. 1986).........................................................................2, 12

*Amscan Inc. v. Shutter Shades, Inc.*,
   2015 U.S. Dist. LEXIS 180647 (S.D.N.Y. Apr. 30, 2015) ..................................24

*Anheuser-Busch v. Du Bois Brewing Co.*,
   175 F.2d 370 (3d Cir. 1949) .........................................................................36, 37

*Astrazeneca AB v. Mut. Pharm. Co.*,
   278 F. Supp. 2d 491 (E.D. Pa. 2003).................................................................17

*Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*,
   289 F.3d 589 (9th Cir. 2002) ......................................................................25, 29

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ............................................................................................8

*Birthright v. Birthright Inc.*,
   827 F. Supp. 1114 (D.N.J. 1993) .......................................................................18

*Can't Stop Prods., Inc. v. Sixuvus, Ltd.*,
   295 F. Supp. 3d 381 (S.D.N.Y. 2018)..............................................20, 23, 26, 27

*Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*,
   293 F. Supp. 892 (S.D.N.Y. 1968)......................................................................28

*Country Floors, Inc. v. P'ship Composed of Gepner & Ford*,
   930 F.2d 1056 (3d Cir. 1991).............................................................................30

*Dawn Donut Co. v. Hart's Food Stores, Inc.*,
   267 F.2d 358 (2d Cir. 1959) ..............................................................................25

*DC Comics v. Towle*,
   802 F.3d 1012 (9th Cir. 2015) ...........................................................................30

*Deutschland GmbH v. Glenmark Pharms. Inc.*,
   No. 07-CV-5855, 2010 WL 2652412 (D.N.J. July 1, 2010) ................................35

*PUBLIC VERSION*

*In re Dippin' Dots Patent Litig.*,
   249 F. Supp. 2d 1346 (N.D. Ga. 2003)................................................................10

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,
   158 F.3d 1002 (9th Cir. 1998) .............................................................................10

*Doeblers' Pa. Hybrids, Inc. v. Doebler*,
   442 F.3d 812 (3d Cir. 2006) ........................................................................ 16, 19

*Door Sys., Inc. v. Pro–Line Door Sys., Inc.*,
   83 F.3d 169 (7th Cir. 1996) ...................................................................................1

*Elvis Presley Enters., Inc. v. Capece*,
   141 F.3d 188 (5th Cir. 1998) ...............................................................................34

*Engineered Mech. Servs., Inc. v. Applied Mech. Tech., Inc.*,
   584 F. Supp. 1149 (M.D. La. 1984) .....................................................................21

*Eva's Bridal Ltd. v. Halanick Enters., Inc.*,
   639 F.3d 788 (7th Cir. 2011) ........................................................................ 24, 29

*Exxon Corp. v. Oxxford Clothes, Inc.*,
   109 F.3d 1070 (5th Cir. 1997) ...................................................................... 17, 18

*F.D.I.C. v. Homestead Mortg. Co.*,
   No. 04-74842, 2010 WL 5420279 (E.D. Mich. Dec. 27, 2010) ..........................17

*FirstHealth of Carolinas, Inc. v. CareFirst of Md., Inc.*,
   479 F.3d 825 (Fed. Cir. 2007).............................................................................19

*Fox. Joint Stock Society v. UDV N. Am.*,
   53 F. Supp. 2d 692 (D. Del. 1999) ......................................................................38

*Fox v. Millman*,
   45 A.3d 332 (D.N.J. 2012) ..................................................................................37

*FreecycleSunnyvale v. Freecycle Network*,
   626 F.3d 509 (9th Cir. 2010) ...............................................................................20

*Ga. Pac. Consumer Prods. LP v. Kimberly-Clark Corp.*,
   647 F.3d 723 (7th Cir. 2011) .................................................................................1

*Halo Mgmt., LLC v. Interland, Inc.*,
   No. C-03-1106 MHP, 2004 U.S. Dist. LEXIS 15563 (N.D. Cal. Aug. 9, 2004).............21, 22

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*,
   219 F.3d 104 (2d Cir. 2000) ................................................................................30

*PUBLIC VERSION*

*Jay Franco & Sons, Inc. v. Franek*,
    615 F. 3d 855 (7th Cir. 2010) ................................................................................. 10

*John M. Middleton, Inc. v. Swisher Int'l, Inc.*,
    No. 03–3908, 2006 WL 2129209 (E.D. Pa. July 26, 2006) ............................... 6, 13

*Kellogg Co. v. Nat'l Biscuit Co.*,
    305 U.S. 111 (1938) ................................................................................................ 10

*Kohler Co. v. Honda Giken Kogyo K.K.*,
    125 U.S.P.Q.2d 1468 (T.T.A.B. 2017) ..................................................................... 11

*Land O'Lakes Creameries v. Oconomowoc Canning*,
    330 F.2d 667 (7th Cir. 1964) .................................................................................. 27

*Las Vegas Sands Corp. v. Ace Gaming, LLC*,
    713 F. Supp. 2d 427 (D.N.J. 2010) ........................................................................ 22

*Liquid Glass Enters., Inc. v. Dr. Ing. h.c.F. Porsche AG*,
    8 F. Supp. 2d 398 (D.N.J. 1998) ......................................................................... 8, 32

*Malaco Leaf AB v. Promotion in Motion, Inc.*,
    287 F. Supp. 2d 355 (S.D.N.Y. 2003) ...................................................................... 7

*March Madness Athletic Ass'n, L.L.C. v. Netfire, Inc.*,
    310 F. Supp. 2d 786 (N.D. Tex. 2003) .................................................................. 19

*McAirlaids, Inc. v. Kimberly-Clark Corp.*,
    756 F.3d 307 (4th Cir. 2014) ................................................................................... 9

*Nartron Corp. v. STMicroelectronics, Inc.*,
    305 F.3d 397 (6th Cir. 2002) ................................................................................. 36

*Oracle Am., Inc. v. Terix Comput. Co., Inc.*,
    No. 5:13-cv-03385-PSG, 2015 WL 1886968 (N.D. Cal. Apr. 24, 2015)............................... 37

*Pet Gifts USA, LLC v. Imagine This Co., LLC*,
    No. CV143884FLWDEA, 2015 WL 5822584 (D.N.J. Oct. 2, 2015)................................... 38

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    134 S. Ct. 1962 (2014) ....................................................................................... 37, 38

*Presley's Estate v. Russen*,
    513 F. Supp. 1339 (D.N.J. 1951) ........................................................................... 36

*Roederer v. J. Garcia Carrion, S.A.*,
    569 F.3d 855 (8th Cir. 2009) ................................................................................. 34

*PUBLIC VERSION*

*Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*,
   401 F.3d 123 (3d Cir. 2005) ...........................................................................36

*Sara Lee Corp. v. Kayser-Roth Corp.*,
   81 F.3d 455 (4th Cir. 1996) ................................................................ 32, 33, 34

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*,
   137 S. Ct. 954 (2017) ................................................................................37, 38

*Stanfield v. Osborne Indus., Inc.*,
   52 F.3d 867 (10th Cir. 1995) ...........................................................................24

*Sweet Street Desserts, Inc. v. Chudleigh's Ltd.*,
   69 F. Supp. 3d 530 (E.D. Pa. 2014) ...............................................................1, 2

*Syntex Labs., Inc. v. Norwich Pharmacal Co.*,
   315 F. Supp. 45 (S.D.N.Y. 1970)......................................................................27

*Tandy Corp. v. Malone & Hyde, Inc.*,
   769 F.2d 362 (6th Cir. 1985) ............................................................................32

*Tisch Hotels, Inc. v. Americana Inn, Inc.*,
   350 F.2d 609 (7th Cir. 1969) ............................................................................37

*TrafFix Devices, Inc. v. Marketing Displays*,
   532 U.S. 23 (2001) ...................................................................................*passim*

*U. S. Jaycees v. Philadelphia Jaycees*,
   639 F.2d 134 (3d Cir. 1981) ....................................................................... 15, 27

*Unicasa Mktg. Grp., LLC v. Spinelli*,
   No. CIVA 04-CV-4173 PGS, 2007 WL 757909 (D.N.J. Mar. 8, 2007)............. 16, 20, 21, 25

*Univ. of Pittsburgh v. Champion Prods., Inc.*,
   686 F.2d 1040 (3d Cir. 1982)......................................................... 29, 33, 34, 36

*Urban Outfitters, Inc. v. BCBG Max Azria Grp., Inc.*,
   511 F. Supp. 2d 482 (E.D. Pa. 2007).................................................................33

*Valu Eng'g, Inc. v. Rexnord Corp.*,
   278 F.3d 1268 (Fed. Cir. 2002).....................................................................2, 12

*Wal-Mart Stores v. Samara Bros.*,
   529 U.S. 205 (2000) ...........................................................................................3

*Warner-Lambert Co. v. Schick U.S.A., Inc.*,
   935 F. Supp. 130 (D. Conn. 1996) ....................................................................35

*PUBLIC VERSION*

*Young Travelers Day Camps, Inc. v. Felsen*,
    287 A.2d 231 (Dist. Ct., Essex Co. 1972) ...........................................................22

*Zinn v. Seruga*,
    Civ. No. 05–3572, 2009 WL 3128353 (D.N.J. Sept. 28, 2009) .....................................16, 38

*Zinn v. Seruga*,
    Civ. No. 05-3572, 2008 WL 482324 (D.N.J. Feb. 19, 2008) ..........................................16, 18

**Statutes**

15 U.S.C. § 1065 ...............................................................................................19

15 U.S.C § 1115(a) ..............................................................................................19

15 U.S.C. § 1115(b) ..............................................................................................1

15 U.S.C. § 1127 ..............................................................................................15, 16

**Other Authorities**

1 McCarthy on Trademarks and Unfair Competition § 7:75 ..............................................2

1 McCarthy on Trademarks and Unfair Competition § 7:76 .............................................14

2 McCarthy on Trademarks and Unfair Competition § 12:14 ............................................19

6 McCarthy on Trademarks and Unfair Competition § 31:10 ............................................37

6 McCarthy on Trademarks and Unfair Competition § 31:20 ............................................33

Catherine Sun, ed., *Intellectual Property Protection in Asia* § 5:16 ..................................11

*PUBLIC VERSION*

## <u>TABLE OF ABBREVIATIONS</u>

Defendant Lotte Confectionery Co., Ltd. .................................................................... Lotte Korea

Defendant Lotte International America Corp. ....................................................... Lotte America

Defendants Lotte Korea and Lotte America ....................................................................... Lotte

███████████████████████████████

Memorandum of Law in Support of Defendants'
Motion for Summary Judgment ......................................................................................... Mot.

Plaintiff Ezaki Glico Kabushiki Kaisha
(d/b/a Ezaki Glico Co. Ltd.) ..................................................................... Glico Japan

Plaintiff Ezaki Glico USA Corp. .............................................................. Glico USA

Plaintiffs Glico Japan and Glico USA .............................................................. Glico

Statement of Undisputed Material Facts in
Support of Defendants' Motion for Summary Judgment ........................................................ DSF

Supplemental and Responsive Statement of Undisputed Material Facts in
Opposition to Defendants' Motion for Summary Judgment ..................................................... PSF

U.S. Patent & Trademark Office .......................................................................... PTO

*PUBLIC VERSION*

Glico makes and sells Pocky, a well-known snack food with a distinct appearance. The PTO has recognized Pocky's unique appearance by affording it the benefits and protections of federal trademark registrations, as set forth in Registration Nos. 1,527,208, 2,615,119 and 1,986,404 (the "Pocky product configuration trademarks"). PSF ¶¶ 18-44. Glico's registered trademarks are presumptively valid.

Lotte is a copier of Glico's Pocky products and a willful infringer of Glico's trademarks, trying desperately to avoid a trial and verdict that will hold it responsible for its unlawful conduct. Lotte's infringing Pepero products are a knock-off of Pocky – the two products look virtually identical. Not only has Lotte intentionally copied Pocky's design, but it has done so with full knowledge of Glico's trademark rights and the consequences of infringing those rights. Discovery has revealed smoking-gun evidence displaying Lotte's willful infringement.

Each of the functionality, abandonment, and laches defenses devised by Lotte in an effort to avoid its day of reckoning at trial involves a host of heavily disputed facts, which cannot be resolved on summary judgment. Indeed, the weight of the evidence indicates that each of these defenses will ultimately fail. This case should proceed to trial.

## I.   Disputed issues of material fact preclude summary judgment that the Pocky product configuration trademarks are functional.

Functionality is a question of fact on which ***Lotte bears the burden of proof***, because the '208 and '119 registrations for the Pocky product configuration have become ***incontestable*** and are deemed non-functional. PSF ¶¶ 27, 42; 15 U.S.C. § 1115(b).[1] The relevant facts are keenly

---

[1] Lotte's suggestion that it can shift the burden to Glico (Mot. at 6) is wrong. The passage Lotte cites from *Georgia Pacific Consumer Products LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011) addresses ***contestable*** registration under subsection (a) of 15 U.S.C. § 1115 rather than ***incontestable*** registration under subsection (b). *Georgia Pacific's* citation to *Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 83 F.3d 169, 172 (7th Cir. 1996) clarifies this; *Door Systems* discussed the evidentiary value of contestable registrations. *See also Sweet Street Desserts, Inc. v. Chudleigh's Ltd.*, 69 F. Supp. 3d 530, 544 (E.D. Pa. 2014).

*PUBLIC VERSION*

disputed, and the evidence is more than sufficient to enable a reasonable jury to find that Lotte

has not carried its burden and instead confirm the PTO's conclusion that Glico's Pocky product

configuration trademarks are ***not*** functional.

### A.    Legal standard for functionality.

In *TrafFix Devices, Inc. v. Marketing Displays*, 532 U.S. 23, 33 (2001), the Supreme

Court set out a two-step framework for assessing functionality of product configuration

trademarks (or "trade dress"). Under the first step, a product configuration is functional "if it is

essential to the use or purpose of the article or if it affects the cost or quality of the article." *Id.* If

a product configuration is functional at this step, the inquiry ends. If, however, functionality is

not determined under the first step, a product configuration may still be held functional if

"exclusive use of [the features] would put competitors at a significant non-reputation-related

disadvantage." *Id.* The availability of alternative designs can be an important source of evidence.

*Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1276 (Fed. Cir. 2002) ("Nothing in TrafFix

suggests that consideration of alternative designs is not properly part of the overall mix, and we

do not read the Court's observations in TrafFix as rendering the availability of alternative

designs irrelevant."). "The existence of actual or potential alternative designs that work equally

well strongly suggests that the particular design used by plaintiff is not needed by competitors to

effectively compete on the merits." 1 McCarthy § 7:75.

The inclusion of one or more functional features in a product configuration does not

disqualify the overall design from trade dress protection. *Sweet Street Desserts*, 68 F. Supp. 3d at

543. When the trade dress consists of a combination of features, "it is the functionality of the

overall combination that controls." *Id.* "Indeed, virtually every product is a combination of

functional and non-functional features and a rule denying protection to any combination of

features including a functional one would emasculate the law of trade dress infringement." *Am.*

*PUBLIC VERSION*

*Greetings Corp. v. Dan-Dee Imps., Inc.*, 807 F.2d 1136, 1143 (3d Cir. 1986).

Lotte's statement that "courts have repeatedly ... entered summary judgment" on functionality, with only two case citations (Mot. at 7), is an overstatement and irrelevant. Lotte must demonstrate an absence of disputed material facts, which it cannot, as explained below.[2]

**B.    Glico has produced evidence that is more than sufficient to show that the Pocky product configuration is not functional under both steps of *TrafFix*.**

The product configuration for Pocky products is comprised of an elongated, thin, straight, cylindrical rod-shaped biscuit with more than half, but not all, of the biscuit coated with chocolate and/or a cream or cream-like coating that fully covers and extends from one end of the biscuit over halfway to the other end, but terminates short of the other end, and with the coated portion of the biscuit having a rounded end and the uncoated portion of the biscuit having a generally flat end (the "Pocky product configuration"). PSF ¶ 16. For Pocky Almond Crush, the product configuration adds crushed almonds to the coated portion of the biscuit, but is otherwise the same ("the Pocky Almond Crush product configuration"). PSF ¶ 17.

At the first step of the *TrafFix* inquiry, Glico's evidence shows that the Pocky product configuration is not essential for the use or purpose of a snack product and does not affect the cost or quality of the product. Glico's expert on food engineering, Dr. Levine, has testified that the Pocky product configuration is not essential to the use or purpose of Pocky as a snack product.[3] PSF ¶¶ 92-93, 102-05. The fundamental use and purpose of a snack product, such as Pocky, is to be consumed. PSF ¶ 102. Pleasant taste and texture are the fundamental considerations for that purpose. *Id.* But, as Dr. Levine states, Pocky's taste and texture are not

---

[2] Lotte's discussion of *Wal-Mart Stores v. Samara Brothers*, 529 U.S. 205, 213 (2000) is similarly irrelevant (Mot. at 8) – the excerpts Lotte cites relate to whether a product configuration mark can ever be inherently distinctive, an issue which has no bearing here.
[3] Although Lotte hired a food expert, who was deposed, Lotte did not submit any testimony from him in its motion. Lotte disavowed its expert because he admitted ███████████████ ████████████████████████████████████████████████. PSF ¶¶ 94, 235-39.

*PUBLIC VERSION*

determined by, and are in fact independent of, the Pocky product configuration. PSF ¶¶ 103-05. The taste and texture of a baked confectionery, such as Pocky, are determined by its ingredients and processing, not by the shape, length, cross-sectional width, or design of the product. *Id.*

Certainly, there are aspects of a snack product that could not constitute protectable trade dress. The choice to make a snack product by baking a sweetened, flour-based dough and then combining it with chocolate (or other flavoring) could be considered functional, PSF ¶¶ 103-04, and Glico does not claim those aspects of its products. That combination clearly affects the taste and texture of the resulting product, PSF ¶¶ 103-05, and protection of those aspects would inhibit competition. However, choosing to produce that biscuit in an elongated, thin, straight, cylindrical rod shape and then to apply the chocolate (or other flavoring) as a partial coating over more than half but less than all of the biscuit, such as the Pocky product configuration, results in a unique, ornamental design that is unrelated to the usefulness of the confectionery as a snack product. PSF ¶¶ 102-05. Therefore, there is at least a dispute as to whether the Pocky product configuration is essential to the use or purpose of the Pocky product.

Glico's evidence further shows that the Pocky product configuration does not affect the cost of the product. There are many other configurations of chocolate or cream-coated confectioneries that cost the same or less to manufacture than Pocky. PSF ¶¶ 106-11. ███████

████████████████████████████████████████████████████

████████████████████████████████████████ PSF ¶ 111.

Moreover, the Pocky product configuration does not affect the quality of the product, which is not determined by its design, but rather by ingredients and processing. PSF ¶¶ 103-05.

At the second step of the *TrafFix* inquiry, Glico's evidence shows that exclusive use of the Pocky product configuration would not put competitors at a significant non-reputation-

*PUBLIC VERSION*

related disadvantage. PSF ¶¶ 112-27. In the two pages that Lotte spends arguing this point, Lotte cites a single fact. According to Lotte, "the Pocky product configuration is a thin biscuit stick partially coated in chocolate, which Glico itself recognized in its utility patent as being 'conventionally known,'" Mot. at 27 (citing DSF ¶ 48), implying that the Pocky product configuration is a basic, rudimentary, or general design element. Glico vigorously disputes this.

The Pocky product configuration is unique. PSF ¶¶ 95-101, 293. Most snack products do not look anything like Pocky. The only other products sold in the U.S. that resemble Pocky are either ▮▮▮▮▮▮ products, the accused Pepero products in this case, or unauthorized gray market goods. PSF ¶ 101, 293. The appearance of Pocky is markedly different than all other conventional snack shapes, PSF ¶¶ 97-101, and a multitude of alternative configurations are equally suited to the snack product market and sell quite successfully in the U.S. PSF ¶¶ 112-27.

The comment in Glico's U.S. Patent No. 8,778,428 (the "'428 patent") to which Lotte alludes – about stick-shaped snacks with a coating being conventionally known – was published in Japan in 2006 where Pocky has long been a familiar product. PSF ¶ 146. Thus, the patent refers to Pocky itself as "conventionally known." Lotte's citation to a statement about knowledge of Pocky in 2006 is insufficient to carry its burden under the second step of *TrafFix*.

### C.  Lotte's evidence is irrelevant and insufficient to carry its burden to prove an affirmative defense of functionality for the Pocky product configuration.

Most of the evidence that Lotte attempts to marshal in support of its functionality argument is irrelevant to the *TrafFix* framework. Many of the so-called "utilitarian advantages" to which Lotte points are simply the characteristic of *any* snack product design. All snack products – almost without exception – are convenient, easy to hold, easy to eat or consume, easy to package, and easy to share. PSF ¶¶ 132-40, 143, 225-32. The Pocky product configuration is not essential for any of those characteristics, or any better suited for them than any number of

*PUBLIC VERSION*

other shapes and configurations. *Id.* Put another way, virtually every snack product in the U.S. is

an available alternative. PSF ¶¶ 112-27. A characteristic that virtually all snack products have in

common cannot prove the functionality of the Pocky product configuration. *See John M.*

*Middleton, Inc. v. Swisher Int'l, Inc.*, No. 03–3908, 2006 WL 2129209, at *5 (E.D. Pa. July 26,

2006) (denying summary judgment of functionality because, among other reasons, the mark

owner "offered proof that numerous alternatives exist"). Adopting Lotte's analysis would

automatically disqualify *any and all* snack products from trade dress protection. PSF ¶¶ 114,

122-26. Lotte's analysis is undoubtedly wrong, because many snack products have been deemed

worthy of trade dress protection, and have been granted federal registrations. *Id.*

     The following table responds to Lotte's summary of the purported functionality of each

feature of the Pocky product configuration (Mot. at 11–12), stating the disputed or irrelevant

aspects of Lotte's evidence and argument. Furthermore, it warrants repeating that it is the ***overall***

***combination*** of features that must be assessed, not any of the features in isolation.

| Lotte's Alleged Utilitarian Advantage | Disputed Facts and Materiality |
| --- | --- |
| **Feature:** An elongated, thin, straight, cylindrical rod-shaped biscuit | |
| Convenient. DSF ¶¶ 5, 29, 31-33, 45. | Disputed. Not due to the Pocky product configuration; virtually all snacks of many shapes and designs are convenient and easy to consume. PSF ¶¶ 133-35, 226-32. |
| Easy to consume. DSF ¶¶ 5, 7, 20-22. | |
| Enables a quantity of Pocky sticks suitable for sharing to be placed in package. DSF ¶¶ 5, 7, 34. | Disputed. Not due to the Pocky product configuration; virtually all snacks of many shapes and designs enable packaging to contain a quantity suitable for sharing (e.g., greater than two). PSF ¶¶ 136-40, 228-31. |
| Reduces packaging costs. See, e.g., DSF ¶¶ 20, 22, 34. | Disputed. Packaging costs are less for other snacks that do not need to be aligned and can be dumped into a package (e.g. goldfish). PSF ¶¶ 141-43, 231. |
| Creates "unique texture" and "snap" that | Disputed. The texture and "snap" are determined by |

| | |
|---|---|
| is pleasing to consumers. See, e.g., DSF ¶ 50. | formulation and processing, not the shape of the product. PSF ¶¶ 103, 144. |
| Enables efficient coating of the sticks via automated process, reducing waste. See, e.g., DSF ¶¶ 49, 52-60. | Disputed. The configuration is not necessary for efficient coating. PSF ¶¶ 107-10, 170. There are easier and less expensive coating processes that efficiently coat snack configurations regardless of their configuration. *Id.* |

**Feature:** With more than half, but not all, of the biscuit coated with chocolate and/or a cream or cream-like coating, that fully covers and extends from one end of the biscuit over halfway to the other end but terminates short of the other end

| | |
|---|---|
| Uncoated portion is a "handle" to facilitate end user consumption because user does not get chocolate on his hands. See, e.g., DSF ¶¶ 10, 27-28. | Disputed. Users do not get chocolate on their hands when holding chocolate Pocky under the vast majority of conditions. PSF ¶¶ 129, 219-20. Also, users do not always grasp Pocky by the uncoated portion. PSF ¶¶ 117, 221-22. |
| Uncoated portion allows consumers to see the composition of the underlying biscuit stick, which makes the product more saleable. See, e.g., DSF ¶ 11. | Disputed. There is no evidence that consumers seeing the underlying biscuit makes Pocky more saleable. PSF ¶ 218. Also, not essential to the use or purpose of the product and does not affect cost or quality. |
| Uncoated portion result of sticks being held at one end during coating (either by hand or machinery) See, e.g., DSF ¶¶ 12-17. | Disputed. Pocky could be entirely coated by the same method. PSF ¶¶ 161-64. Pocky also could be coated by less expensive methods that do not require holding one end. PSF ¶¶ 107, 182. |
| Coating strengthens biscuit stick which makes breakage more difficult. DSF ¶¶ 18, 68. | Disputed. Partial coating weakens the product compared to an entirely coated product. PSF ¶ 188.<br><br>Not relevant. Many other product configurations, such as a different shape or a thicker stick, accomplish the same or greater strengthening. PSF ¶¶ 184-89. |

**Feature:** With the coated portion of the biscuit having a rounded end

| | |
|---|---|
| ██████████████████████████<br>██████████████████ DSF ¶ 23. | Not relevant to functionality.[4]<br><br>Alternatives are available (e.g. cutting). PSF ¶¶ 113-16, 120, 122-27. |

---

[4] *Malaco Leaf AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355 (S.D.N.Y. 2003) does not stand for the proposition Lotte asserts in footnotes 3–4 of its brief. *Malaco* held that a product design was functional based on its overall appearance, not any isolated feature. *Id.* at 366–67.

PUBLIC VERSION

| ████████████████████ DSF ¶ 23. | Not relevant to functionality. Lotte does not even try to explain the significance of this. |
|---|---|
| **Feature:** And the uncoated portion having a generally flat end. | |
| ████████████████████ DSF ¶ 5. | Not relevant to functionality.[5] Alternatives are available (e.g. angled cuts). PSF ¶¶ 113-16, 120, 122-27. |

### 1. The U.S. patents and Japanese utility model that Lotte cites as evidence of functionality are irrelevant to that issue.

None of the U.S. patents that Lotte cites are evidence that the Pocky product configuration is functional. Importantly for the *TrafFix* analysis, none of the U.S. patents claim the Pocky product configuration. *C.f.*, *TrafFix*, ("[A] utility patent is strong evidence that ***the features therein claimed*** are functional." (emphasis added)). To the extent a foreign utility model can even bear on functionality, which Glico disputes, Glico's Japanese utility model is directed to a feature that is not even present in the Pocky product configuration. There are fundamental differences between the Pocky product configuration and the subject matter of all three U.S. patents and the Japanese utility model.

### a. Glico's U.S. '428 patent is not relevant to functionality.

Glico's '428 patent is not relevant to functionality. As a threshold issue, it is ***legally impossible*** for the '428 patent to claim the Pocky product configuration because Pocky had been publicly available for decades prior to the effective filing date of the '428 patent. Novelty is a fundamental requirement of patent protection. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (citing 35 U.S.C. § 102). The '428 patent claims priority to 2006, PSF ¶ 145, yet Glico has sold Pocky in the U.S. since 1978, decades before the '428 patent was filed. PSF ¶ 50. If the '428 patent truly covered Pocky, as Lotte wrongly argues, it would never have issued.

---

[5] See note 4, above.

8

*PUBLIC VERSION*

Contrary to Lotte's mischaracterization, as is crystal clear from even a cursory review, the '428 patent (which has not expired) covers specific new ***manufacturing methods*** by which a biscuit stick can be made. PSF ¶¶ 149-50, 155-56, 234-35; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 312 (4th Cir. 2014) (holding that patents covering a production process and a material but not necessarily resulting in the trade dress was not strong evidence of functionality). ██████████████████████ practicing the methods of the '428 patent does ***not*** necessarily result in the Pocky product configuration, PSF ¶¶ 157-64, 236-37, and the Pocky product configuration can be made by other methods (including prior art methods) that are ***not*** disclosed or claimed in the '428 patent. PSF ¶¶ 165-70, 238. ████████████████

████████████████████████████████

████████ PSF ¶¶ 236-37. All claims of the '428 patent are manufacturing method claims, not product claims, with the sole exception of claim 14, which (as a product-by-process claim) claims only those particular biscuit sticks that are manufactured by the specific method of claim 1. PSF ¶¶ 155-56. Many of the claims (including claim 1 – and thus claim 14 – and all the independent claims) have no coating step and therefore cannot result in the Pocky product configuration. PSF ¶ 159. Of those dependent claims that recite a coating step, none of them specify that the coating is to cover more than half but less than all of the biscuit stick, allowing for 1% or 100% coating, clearly resulting in products that do not bear the Pocky product configuration. PSF ¶¶ 161-64. Finally, the width of the biscuit stick that would result from practicing any manufacturing method claimed in the '428 patent is applicable only to a single Ultra Slim Pocky product and excludes all other Pocky products.[6] PSF ¶¶ 192-97. For at least these reasons, this case is distinguishable from every case that Lotte cites regarding patents as

---

[6] Ultra Slim is only one of many Pocky products ████████████████████. PSF ¶ 58-63.

evidence of functionality. *TrafFix*, 532 U.S. at 25, 30 (2001) (patent claimed the actual device at issue); *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 117–18 (1938) (Multiple patents "for the product and for the process of making it, and … for special machinery to be used in making the article" had expired and passed into the public domain.); *Jay Franco & Sons, Inc. v. Franek*, 615 F. 3d 855, 858 (7th Cir. 2010) (patent claimed the item at issue); *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002 (9th Cir. 1998) (patent claimed the device at issue); *In re Dippin' Dots Patent Litig.*, 249 F. Supp. 2d 1346, 1373 (N.D. Ga. 2003) (patented method necessarily resulted in the claimed trade dress).

The three purported "utilitarian advantages" that Lotte discerns from the '428 patent are disputed, and do not prove functionality. Lotte's first purported advantage – that an elongated, thin, cylindrical rod-shaped biscuit makes consumption easier – is irrelevant and disputed. PSF ¶¶ 133-35, 225-26. Virtually all snack products are easy to consume and many are easier to consume than Pocky. *Id.* Moreover, the '428 patent only describes this purported advantage as applicable to very thin biscuit sticks, and it expressly distinguishes biscuit sticks with the dimensions of most varieties of Pocky as less easy to eat. PSF ¶¶ 172-73, 192-97. Lotte's second purported advantage – that straightness of Pocky results in manufacturing efficiencies – does not apply to the Pocky product configuration, but only to particular manufacturing approaches. PSF ¶¶ 174-83. There are also cheaper methods of manufacture that do not depend on the absolute straightness of the biscuit stick, and would still result in the Pocky product configuration (e.g., the prior art methods which produced the Pocky trade dress shown in the 1989 '208 registration). PSF ¶¶ 107, 181-82. Lotte's third purported advantage – that coating increases the strength of the Pocky stick – is disputed because the partial coating of the Pocky trade dress is weaker than full coating. Additionally, the '428 patent only describes this purported advantage as applicable to

*PUBLIC VERSION*

very thin biscuit sticks, and there is no evidence that such strengthening is needed for sticks of the dimensions of most varieties of Pocky. PSF ¶ 190. This third purported advantage is also irrelevant. Any number of changes to the product would strengthen it, and there are better and less costly ways to attain that result. PSF ¶¶ 184-89. Even if chocolate coating were added to increase the strength of Pocky (which is absurd, given the cost of chocolate), the choice to partially coat is an ornamental flourish. PSF ¶ 187.

Finally, the '428 patent only discusses manufacturing methods for making exceedingly thin biscuit sticks with widths (2.0–3.0 mm unbaked and 2.5–3.5 mm baked) which do not pertain to the vast majority of embodiments of the Pocky product configuration. PSF ¶¶ 192-97. Evidence related to one embodiment of a product configuration, but that distinguishes all other embodiments of the same product configuration, cannot possibly show functionality of the product configuration as a whole.

### b. **The Japanese utility model is not relevant to functionality.**

Glico disputes the relevance and import of the Japanese utility model to the functionality inquiry. First, Japanese utility models are not utility patents, but rather a type of intellectual property right for which there is no analog under U.S. law. *See* Catherine Sun, ed., *Intellectual Property Protection in Asia* § 5:16 (Matthew Bender) (table showing "the primary differences between the utility model system and the patent system"); PSF ¶ 203.[7] Second, even if a Japanese utility model could bear on functionality, the innovation of Glico's Japanese utility model consists of certain grooves formed along the side of the biscuit stick. PSF ¶¶ 200-02. The

---

[7] The only authority that Lotte cites for the proposition that Japanese utility models are relevant to functionality is a decision of the Trademark Trial & Appeal Board, in which the Board acknowledged that consideration of Japanese utility models was an issue of first impression. *Kohler Co. v. Honda Giken Kogyo K.K.*, 125 U.S.P.Q.2d 1468, 1478 (T.T.A.B. 2017). The Board did not consider Japanese utility models as equivalent to a U.S. utility patent, but rather elected to consider the applicant's statements for whatever probative value they may have.

advantage of those grooves, according to the utility model, is that the chocolate adheres more fully to the biscuit stick without sacrificing the biscuit stick's strength to lateral pressure. PSF ¶¶ 200-01. But those grooves are ***not*** part of the Pocky product configuration, either as depicted in the federal registrations or in the appearance of commercially available Pocky products. PSF ¶ 202. Third, the other purported "advantages" Lotte cites as disclosed in the utility model, such as "more easily consumable" and convenience, are not relevant to this inquiry for the reasons stated above – virtually all snack products share those characteristics and the Pocky product configuration is no more suited to them than any other snack design. *See Valu Eng'g*, 278 F.3d at 1276 (Fed. Cir. 2002) (quoting 1 McCarthy § 7:75). Fourth, the utility model comment about "a so-called handle" addresses only a single, discrete feature of the overall Pocky product configuration and cannot, by itself, disqualify the overall design from protection.[8] *See Am. Greetings*, 807 F.2d 1136, 1143 (holding that analysis must focus on the overall combination of features rather than features in isolation).

> c. **The two third-party patents are not relevant to functionality.**

U.S. Patent Nos. 6,242,021 ("Rooney") and 4,889,729 ("Aujourd'hui") cannot show that the Pocky product configuration is functional because neither patent claims anything remotely resembling Pocky. To the contrary, Rooney and Aujourd'hui claim products that look radically different. PSF ¶¶ 207-15. In fact, the Rooney and Aujourd'hui patents weigh ***against*** functionality because they illustrate two alternative snack product configurations with the same purported benefits that Lotte alleges are created by the Pocky product configuration. Moreover, to the extent Lotte relies on them for the uncoated portion, or "handle", that is only a single, discrete feature of the Pocky product configuration, PSF ¶ 216, which is not probative of the functionality of the overall combination of features. *See Am. Greetings*, 807 F.2d 1136, 1143.

---

[8] The PTO issued the '208 registration despite being aware of this utility model. PSF ¶ 198-99.

*PUBLIC VERSION*

2.      **The purported "utilitarian advantages" that Lotte cites from Glico's advertising are disputed, not relevant to the proper inquiry, and address at most only one, discrete element of the configuration.**

The Glico advertising that Lotte cites (Mot. at 9–15) is facially insufficient to show functionality. None of the advertising shows how the Pocky product configuration is ***essential*** to the use or purpose of the product or ***affects*** the product's cost or quality.

As explained above, Lotte's argument that "ease of consumption" proves functionality is nonsensical. Virtually every snack product is easy to eat and share. *John M. Middleton*, 2006 WL 2129209, at *5 (evidence of alternatives weighed against functionality). Taken to its logical conclusion, Lotte's argument would disqualify any snack food from trade dress protection and require removal of countless federal trademark registrations *en masse*. PSF ¶¶ 114, 122-25. Lotte's claims that "easy to handle," "portable," and "easy to carry packaging" prove functionality are likewise spurious. Those characteristics are common to all snacks and not caused by or related to the Pocky product configuration more than any other snack configuration. PSF ¶¶ 132-40, 225-32.

By the same rationale, the purported packaging efficiencies Lotte cites, Mot. at 15 ("allows the biscuit sticks to be 'packed closely together in a compact box'" and "allows Glico to place a quantity of sticks that is suitable for sharing in a single package and lowers its packaging costs") have no bearing on the Pocky product configuration. The same could be said of virtually all snack products, including many that appear on the PTO's Principal Register. PSF ¶¶ 136-43, 229-32. If anything, the Pocky configuration is more difficult to package than smaller shapes that can simply be dumped into a package (e.g., Goldfish). PSF ¶¶ 142, 231. The Pocky product configuration is not more uniquely suited to packaging than any number of other product configurations. PSF ¶¶ 142, 230.

Lotte makes much – far too much – of the uncoated portion of the biscuit stick (or the so-

13

*PUBLIC VERSION*

called "handle"). Material facts regarding the utility, or lack thereof, of the uncoated portion are disputed. Glico's evidence shows that the uncoated portion is not essential to the use or purpose of the product and does not affect its cost or quality. The uncoated portion does not function as Lotte suggests under most normal conditions, because a coated confectionery will not typically soil a consumer's hands or bother the consumer, PSF ¶¶ 129, 219-20; many snack products are entirely coated with chocolate and very successful (e.g. KitKat, Twix), thereby demonstrating that an uncoated portion is not essential to a snack product, PSF ¶¶ 116-18, 128, 130, 218; and, according to Dr. Levine, coating the entire biscuit stick may be a cheaper method of manufacture. PSF ¶ 107. In any event, the uncoated portion of the biscuit stick is only a single element of the Pocky product configuration. PSF ¶¶ 119, 131, 224. Even if the uncoated portion had some measure of utility, that conclusion alone would not show functionality of the overall combination of features. 1 McCarthy § 7:76.

> **D.    Lotte's position on functionality in this case directly contradicts its own attempts to register identical trade dress in the U.S. and around the world.**

Last, but not least, Lotte's newfound position on functionality is entirely hypocritical because it flatly contradicts Lotte's earlier position before the PTO as well as other trademark offices around the world, in countries which – like the U.S. – have nonfunctionality requirements. PSF ¶ 250. ████████████████████████████████████████

████████████████████████ PSF ¶¶ 240-55. Lotte even tried to register, in the U.S., a trade dress for its Almond Pepero product which was virtually indistinguishable from Glico's Reg. Nos. 1,986,404 or 2,615,119. PSF ¶¶ 240-47. Lotte clearly believed that the mark was non-functional. PSF ¶¶ 244-45. Yet Lotte now asserts that Glico's identical product configurations are functional. Lotte's self-serving litigation position is belied by its own admissions.

In sum, numerous genuine disputes of material fact preclude summary judgment on

*PUBLIC VERSION*

functionality. Lotte's evidence is insufficient as a matter of law to take this issue from the jury.

**II.    Disputed issues of material fact preclude summary judgment that the Pocky product configuration trademarks have been abandoned.**



██████████████████ without any evidence to show loss of the trademark significance of the Pocky

product configuration trademarks, █████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████ Lotte argues that Glico has abandoned its decades-old,

incontestable trademark rights to the Pocky product configuration by engaging in uncontrolled or

"naked" licensing. However, Lotte's failure to identify any evidence supporting a key

requirement of the naked licensing defense – namely that the Pocky product configuration

trademarks have lost their source-identifying capacity for consumers – is fatal to the defense.

Further, Glico has produced documents and testimony ██████████████████████

████████████████████████████████████████████ which raise

significant issues of disputed material fact. Lotte cannot meet its burden to prove abandonment.

**A.    Lotte must prove abandonment by clear and convincing evidence.**

The Lanham Act provides that a mark shall be deemed "abandoned" when (a) it has been

discontinued with intent not to resume or (b) when any course of conduct of the registrant,

including acts of omission as well as commission, causes the mark to lose its significance as an

indication of origin. 15 U.S.C. § 1127 (1976); *U. S. Jaycees v. Philadelphia Jaycees*, 639 F.2d

134, 138 (3d Cir. 1981). Naked licensing falls within subsection (b). *Id.* at 139–140. As Glico

has continuously used the Pocky product configuration in the U.S. since 1978, Lotte's

abandonment defense hinges on proving that Glico has engaged in naked licensing, causing the

Pocky product configuration trademark to lose its significance as an indication of origin.

*PUBLIC VERSION*

Because the naked licensing defense essentially works an involuntary forfeiture of a trademark owner's rights, the Third Circuit has held that a party arguing in favor of summary judgment on a theory of abandonment bears a "stringent" burden of proof. *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 824 (3d Cir. 2006), *as amended* (May 5, 2006); *Unicasa Mktg. Grp., LLC v. Spinelli*, No. CIVA 04-CV-4173 PGS, 2007 WL 757909, at *3 (D.N.J. Mar. 8, 2007)("To the extent that plaintiff may rely on a naked licensing theory, its burden is high, and its application is fact sensitive."). Courts therefore apply a "clear and convincing standard" for abandonment claims based on a naked licensing theory. *See Zinn v. Seruga*, Civ. No. 05–3572, 2009 WL 3128353, at *21 (D.N.J. Sept. 28, 2009) (finding no clear and convincing evidence to support abandonment). This is a burden that Lotte cannot meet.

**B.      Lotte has not met its stringent burden; There is no evidence that Glico's Pocky product configuration trademark has lost its trademark significance.**

As trademark rights are designed to serve a source-identifying function, the defense of abandonment is designed to weed out those marks that, due to non-use or naked licensing, no longer serve this function. *See* 15 U.S.C. § 1127 (1976); *Unicasa Mktg. Grp., LLC,* 2007 WL 757909, at *4 (Naked licensing occurs "[w]hen a trademark owner fails to exercise reasonable control over the use of a mark by a licensee," such that "the presence of the mark on the licensee's goods or services misrepresents their connection with the trademark owner since the mark no longer identifies goods or services that are under the control of the owner of the mark" and the mark can no longer provide "a meaningful assurance of quality."). Thus, the proponent of a naked licensing theory bears the burden of showing that the mark in question has lost its trademark significance. *See, e.g.*, *Zinn v. Seruga,* Civ. No. 05-3572, 2008 WL 482324, at *4 (D.N.J. Feb. 19, 2008) (denying summary judgment on abandonment because genuine issues of material fact remained as to, *inter alia*, any perception by the public that the mark has been

16

*PUBLIC VERSION*

abandoned where the accused infringer did not offer any survey evidence of either customer perception or abandonment); *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1079 (5th Cir. 1997) ("The language of subsection 1127(2) reflects that to prove 'abandonment' the alleged infringer must show that, due to acts or omissions of the trademark owner, the incontestable mark has lost 'its significance as a mark.' Conversely, if a trademark has not ceased to function as an indicator of origin there is no reason to believe that the public will be misled; under these circumstances, neither the express declaration of Congress's intent in subsection 1127(2) nor the corollary policy considerations which underlie the doctrine of naked licensing warrant a finding that the trademark owner has forfeited his rights ..."); *F.D.I.C. v. Homestead Mortg. Co*., No. 04-74842, 2010 WL 5420279, at *11 (E.D. Mich. Dec. 27, 2010*), amended on reconsideration in part*, 2011 WL 717456 (E.D. Mich. Feb. 22, 2011) ("A challenger asserting … uncontrolled licensing faces a stringent burden, and must establish that 'the trademark ... has lost its significance as an indicator of origin.'").

Lotte has neither pled nor contended in its contention interrogatory responses that Glico's Pocky product configuration trademarks have lost their trademark significance through naked licensing. *See* Dkt. 117, Fourteenth Affirmative Defense; PSF ¶ 49. Indeed, ***Lotte did not even raise this argument in its summary judgment brief.*** Thus, Lotte should be precluded from doing so now. *See Astrazeneca AB v. Mut. Pharm. Co*., 278 F. Supp. 2d 491, 506 (E.D. Pa. 2003), *aff'd*, 384 F.3d 1333 (Fed. Cir. 2004)(excluding evidence and theories not presented prior to summary judgment brief). Instead, Lotte seems to assume that if a trademark owner has licensed its mark without quality control provisions, courts will simply presume a loss of trademark significance. The case law is directly to the contrary. In *Exxon Corp. v. Oxxford Clothes, Inc*., the Fifth Circuit stated:

PUBLIC VERSION

> Oxxford, pointing to recent precedent in this Circuit indicating that naked licensing results in an 'involuntary trademark abandonment,' posits that when a defendant proves that the trademark owner has licensed its mark without any quality control provisions the courts should presume a loss of significance...We disagree ... absent an ultimate showing of loss of trade significance, subsection 1127(2) (and the incorporated doctrine of naked licensing) is not available as a defense against an infringement suit brought by that trademark owner .... We, like the district court, would find it wholly anomalous to presume a loss of trademark significance merely because Exxon, in the course of diligently protecting its mark, entered into agreements designed to preserve the distinctiveness and strength of that mark. We decline Oxxford's invitation to judicially manufacture a presumption of loss of trademark significance under the facts of this case ....

109 F.3d at 1080; *see also Birthright v. Birthright Inc*., 827 F. Supp. 1114 (D.N.J. 1993)

(evidence did not establish any act of commission or omission causing mark or logo to lose their

significance as indications of origin, thus foreclosing abandonment defense).

    Not only has Lotte failed to argue that Glico's Pocky product configuration has lost its

trademark significance, but it has failed to present a shred of evidence that would support this

contention. PSF ¶ 48. Lotte has not presented any evidence whatsoever of how consumers

perceive the Pocky product configuration, nor has it conducted any consumer surveys to test the

trademark significance of Glico's Pocky product configuration trademarks or adduced any expert

opinions on this topic. PSF ¶ 47. *See Zinn*, 2008 WL 482324, at *4 (denying summary judgment

where plaintiffs did not offer survey evidence of either customer perception or abandonment).

    In fact, the evidence of record explicitly refutes any contention that the Pocky product

configuration has lost its trademark significance. PSF ¶¶ 45-46, 256-259. Glico has continuously

used the Pocky product configuration trademark in the U.S. since 1978 and Glico's '208

trademark registration for the Pocky product configuration is registered on the Principal Register

and has become incontestable.[9] PSF ¶¶ 27, 257, 259. Registration on the Principal Register is

prima facie evidence of the mark's validity, that the mark is not generic, and that the mark has

---

[9] The '119 Registration for the Pocky Almond Crush configuration also is incontestable. PSF ¶ 42.

*PUBLIC VERSION*

acquired secondary meaning. *See* 15 U.S.C. § 1065; 15 U.S.C § 1115(a).

In addition, Glico's survey expert, Dr. Bruce Isaacson, conducted a Teflon-style survey which found that consumers perceive the Pocky product configuration and Pocky Almond Crush product configuration as ***branded*** designs, not generic designs. PSF ¶ 46. These results bolster the conclusion that the Pocky product configuration and Pocky Almond Crush product configuration trademarks have secondary meaning. *See* 2 McCarthy on Trademarks and Unfair Competition § 12:14 (5th ed.)("if a Teflon-type survey shows that a significant percentage of respondents identify a designation as a "brand name," that is not only evidence that it is not a generic name, it is also evidence that the designation has acquired a secondary meaning"); *March Madness Athletic Ass'n, L.L.C. v. Netfire, Inc.*, 310 F. Supp. 2d 786, 803-804 (N.D. Tex. 2003), *judgment entered*, 2003 WL 22173299 (N.D. Tex. 2003) and *aff'd*, 120 Fed. Appx. 540, (5th Cir. 2005) (Because a majority of respondents answered in a "Teflon format" survey that they thought that MARCH MADNESS was a mark and not a generic name, then that also proved the existence of secondary meaning). As Lotte has failed to present evidence that the Pocky product configuration trademarks have lost their source-indicating significance and the evidence of record demonstrates exactly the opposite, Lotte's motion on abandonment must fail.

C.   ██████████████████████████████████████████████

Whether a trademark owner has abandoned its trademark rights is a question of fact. *FirstHealth of Carolinas, Inc. v. CareFirst of Md., Inc.*, 479 F.3d 825, 830 (Fed. Cir. 2007). ██ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ███████████████████████████████████ These factual issues must be left to the trier of fact to determine. *See Doeblers' Pa. Hybrids,* 442 F.3d at 824 (reversing summary

*PUBLIC VERSION*

judgment on abandonment claim because the court could not conclude "that the facts establish naked licensing as a matter of law"); *Unicasa Mktg. Grp.*, 2007 WL 757909, at *5 ("It is for the trier of fact to determine whether the controls put in place were sufficient to provide a meaningful assurance of quality").

      1.   ████████████████████████████████████████████

The level of control that a licensor must exercise over its licensee is governed by a reasonableness standard and depends on the particular circumstances of each situation. *See Can't Stop Prods., Inc. v. Sixuvus, Ltd.*, 295 F. Supp. 3d 381, 395 (S.D.N.Y. 2018): ("'it is difficult, if not impossible to define in the abstract exactly how much control and inspection is needed ... Indeed, the standard of quality control and the degree of necessary inspection and policing by the licensor will vary with the wide range of licensing situations in use in the modern marketplace"). Naked licensing occurs only when a trademark owner fails to exercise reasonable control over the use of a mark by a licensee, such that the mark can no longer provide a meaningful assurance of quality. *See Unicasa Mktg. Grp.*, LLC, 2007 WL 757909, at *4.

When deciding whether summary judgment is appropriate on claims of naked licensing, courts must bear this reasonableness standard in mind. Where a written license agreement exists, courts begin the analysis by determining whether the license contains an express contractual right to inspect and supervise the licensee's operations. *See FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 516 (9th Cir. 2010). █████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████ █████████████However, there is no precise formula for the quality control provisions that a license must contain, ███████

████████████████████████

██ ██████████████████████████████████████████████

PUBLIC VERSION

█████████████████████████████████████████████████████████████ *See*

*Unicasa Mktg. Grp., LLC*, 2007 WL 757909, at *4 (the law requires only that a licensor exercise

"control sufficient to meet the reasonable expectations of customers.").

███████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████

███████   ████████████████████████████████

█████████████████████████████████████████████

██████████████████ *See, e.g.*, *Engineered Mech. Servs., Inc. v. Applied Mech. Tech., Inc.*, 584 F.

Supp. 1149, 1159 (M.D. La. 1984) (finding that trademark was not abandoned and that license

did contain quality control provisions, where the agreement provided that all work performed

"shall be of reasonable quality and shall be performed by experienced personnel"). ████████

██████████████████████████████████████████████

In *Halo*, the court granted summary judgment on naked licensing, because, *inter alia,* under the

_____

█   ████████████████████████████████████████████████████████
█████████████████████████████████████

*PUBLIC VERSION*

terms of the agreement, the plaintiff retained no express contractual right to inspect or supervise the licensee's conduct. No. C-03-1106 MHP, 2004 U.S. Dist. LEXIS 15563, at *13–14 (N.D. Cal. Aug. 9, 2004). ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

█████████████████████

██████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████ These arguments are incorrect as a matter of law. Contract law provides that a material breach of a contract, ████████████████████ excuses the non-breaching party from further performance and provides the non-breaching party with grounds for termination of the contract. *See Young Travelers Day Camps, Inc. v. Felsen,* 287 A.2d 231, 235 (Dist. Ct., Essex Co. 1972) ("A material breach of contract on the part of one party entitles the other party to terminate it ...."); *Las Vegas Sands Corp. v. Ace Gaming, LLC,* 713 F. Supp. 2d 427, 437 (D.N.J. 2010) (finding that license was breached such that the non-breaching party was excused from further performance and had grounds for terminating the

*PUBLIC VERSION*

license). ████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

　████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████ *See Can't Stop Prods., Inc.*, 295 F. Supp. 3d at 395 ("... courts

have emphasized the need to construe the control requirement in light of its purpose: 'to avoid

the danger that the public may be deceived as to the quality of a product sold under a recognized

name'"). ████████████████████████████

████████████████████████████████

██████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████████████████

██████████████████████████████████████

████████████████████ *See Can't Stop Prods., Inc.*, 295 F. Supp. 3d at 395

*PUBLIC VERSION*

("... [w]here the particular circumstances of the licensing arrangement persuade [the Court] that the public will not be deceived, [the Court] need not elevate form over substance").

██████████████████████████████████████████████████████████

██████████████████████████████████████ In *Stanfield v. Osborne Industries, Inc.*, the license at issue gave the licensee sole discretion to design the mark, it gave the licensee the right to use the mark on any products it manufactured, and it did not give the licensor any contractual right to supervise or inspect the licensee's operations in any way. 52 F.3d 867, 871 (10th Cir. 1995), *abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118. Additionally, in *Amscan Inc. v. Shutter Shades, Inc*., the defendant licensed its trademark to seven different licensees. 2015 U.S. Dist. LEXIS 180647 (S.D.N.Y. Apr. 30, 2015). Yet these seven agreements did not permit the licensor-defendant to dictate product specifications or inspect product samples or otherwise control any aspect of the quality of the goods. *Id*. Finally, in *Eva's Bridal Ltd. v. Halanick Enterprises, Inc*., the licensor had licensed the mark in question to numerous relatives to use in connection with multiple dress shops. 639 F.3d 788, 789–90 (7th Cir. 2011). The license in question did not give the licensor any power of supervision over how the business was conducted or how the mark was used, and the licensor admitted as much. *Id*.

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

*PUBLIC VERSION*

██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

**2.**   ████████████████████████████████████

██████████████████████████████████████████████

████████████████████   *See Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*, 289 F.3d 589, 596

(9th Cir. 2002) (lack of an express contract right to inspect and supervise a licensee's operations

is not conclusive evidence of lack of control). In the absence of contract provisions, courts

examine whether the licensor exercised actual control of the mark through inspection and

supervision. *See Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358 (2d Cir. 1959)("The

absence ... of an express contract right to inspect and supervise a licensee's operations does not

mean that the ... method of licensing failed to comply with ... the Lanham Act. Plaintiff may in

fact have exercised control in spite of the absence of any express grant by licensees of the right

to inspect and supervise"). Again, the licensor's actual quality control efforts must be evaluated

under the reasonableness standard. *See Unicasa Mktg. Grp., LLC*, 2007 WL 757909, at *4.

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

*PUBLIC VERSION*



*PUBLIC VERSION*

("[w]here the particular circumstances of the licensing arrangement persuade [the Court] that the public will not be deceived, [the Court] need not elevate form over substance and require the same policing rigor appropriate to more formal licensing and franchising transactions.'"). ████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████ *See Land O'Lakes Creameries v. Oconomowoc Canning*, 330 F.2d 667, 670 (7th Cir. 1964) (rejecting abandonment defense and noting that license agreement had been in place for forty years and there had been no complaints about quality of goods); *Can't Stop Prods., Inc.*, 295 F. Supp. 3d at 395 (noting that "courts have rejected naked licensing arguments where the licensee was experienced in the manufacture of the product and there was a history of trouble-free manufacture or an absence of complaints about the quality of the product"); *Syntex Labs., Inc. v. Norwich Pharmacal Co.*, 315 F. Supp. 45, 56 (S.D.N.Y. 1970) ("[R]eliance upon the integrity of a licensee is sufficient to fulfill the control requirement where a history of trouble-free manufacture provides a basis for such reliance.").

████████████████████████████████████████████████

█████████████████████████████████████████ *See U. S. Jaycees*, 639 F.2d at 140 (finding that abandonment did not exist where the licensee admittedly

*PUBLIC VERSION*

had not offered a lower quality of service and there was no evidence that licensees deviated

substantially from standards of conduct); *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 293 F.

Supp. 892, 918 (S.D.N.Y. 1968), *aff'd as modified*, 433 F.2d 686 (2d Cir. 1970)("If in fact the

licensor has made a reasonable inspection of the merchandise bearing the trademark (even

though not every item has been inspected) and there is no showing that any of the goods were

below the essential quality standards, the defense must fail."). Indeed, Lotte should be precluded

from even raising this argument, as Lotte did not contend ████████████████████████

███████████████████████████████████████ including in its contention

interrogatory responses, thereby depriving Glico of any opportunity to take discovery on this

issue or have its experts opine on it. PSF ¶ 285.

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

*PUBLIC VERSION*

███████████████████████████████████████████████████████

     It also is important to note there is no rule that licensors must ensure "high quality" goods from their licensees. *Barcamerica Int'l USA Tr.*, 289 F.3d at 589 ("'quality control' does not necessarily mean that the licensed goods or services must be of 'high' quality, but merely of equal quality, whether that quality is high, low or middle. The point is that customers are entitled to assume that the nature and quality of goods and services sold under the mark ... will be consistent and predictable."). Thus, the supervision required is the sort that produces consistent quality. *Eva's Bridal Ltd.*, 639 F.3d at 790. ███████████████████████

██████████████████████████████████████████

### D.    Lotte cannot prove any abandonment of the Pocky Almond Crush product configuration trademark.

███████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████[13]█████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

## III.    Disputed issues of material fact preclude any ruling on laches.

     Laches may potentially bar certain relief when a plaintiff brings suit after an inexcusable delay and the defendant is prejudiced as a result. *Univ. of Pittsburgh v. Champion Prods., Inc.*, 686 F.2d 1040, 1044 (3d Cir. 1982). But laches is rarely amenable to disposition before trial.

---

[13] █████████████████████████████████████████████████████████

██████████████████████████████████████████████████

> [B]ecause the correct disposition of the equitable defense of laches can only be made "by a close scrutiny of the particular facts and a balancing of the respective interests and equities of the parties, as well as of the general public," it usually requires the kind of record only created by full trial on the merits.

*Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1066 (3d Cir. 1991). Here, a number of disputed facts and equitable factors prevent summary judgment of laches. The evidence is more than sufficient to conclude that (1) Lotte was a willful infringer for whom a defense of laches is not available, (2) any delay by Glico was reasonable and excusable, (3) prejudice to Lotte was non-existent or minimal, and Lotte assumed the risk by proceeding in the face of Glico's notice and objections. Moreover, laches should not bar an injunction to protect consumers from confusion, and cannot, as a matter of law, bar Glico's state law claims.

## A.   Laches is not available to Lotte as a willful infringer.

At the outset, Lotte should not have the right to assert laches due to its own culpable conduct. Courts will not apply laches on behalf of willful infringers. *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015) ("The doctrine [of laches] does not apply, however, in cases of willful infringement."); *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir. 2000) ("It is well established that 'laches is not a defense against injunctive relief when the defendant intended the infringement.'"). Lotte has produced smoking-gun evidence sufficient to show that it was such a willful infringer. PSF ¶¶ 318-31. Specifically, the evidence shows that



Then, after Glico sent cease and desist letters in 1993 and 1994,

PSF ¶¶ 301-05, 327.

*PUBLIC VERSION*

PSF ¶ 328. Lotte continued its infringement with full knowledge of Glico's rights and the

consequences. PSF ¶¶ 329-31. Indeed, Lotte produced evidence that is as close to smoking-gun

evidence of willfulness as a litigant might ever find. PSF ¶ 330 █████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████. Willful infringement is

unmistakable from the evidence, and that state of culpability bars Lotte's resort to equity.

> **B.    Glico has ample evidence to rebut both unreasonable delay and prejudice.**

Glico has more than sufficient evidence to show that the timing of the suit was reasonable

and that Lotte has suffered no legally cognizable prejudice.

> **1.    Evidence that the timing of this suit was reasonable creates a triable issue on the first element of laches.**

Disputed issues of material fact create a triable issue regarding whether the timing of this

suit was reasonable. Although Lotte measures Glico's diligence from July 2015, Glico actually

tried to sue in 2014, less than one year after discovering Pepero's expansion into new channels of

trade. PSF ¶¶ 11-14, 80-40. The evidence shows Glico's diligence for at least two reasons.

First, Glico diligently put Lotte on notice that Glico objected to the sale of Pepero and

███████████████████████████████████████████████████████ In 1993 and

1994, Glico's outside counsel sent Lotte letters objecting to the sale of Lotte's infringing

products in the U.S., asserting that those sales were likely to cause confusion, and "demand[ing]

that [Lotte] immediately cease all manufacturing and sales of the Pepero and Choco Pretch snack

foods in their current configuration and use of their existing packaging." PSF ¶ 301. ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ PSF ¶ 302. After a further letter

*PUBLIC VERSION*

from Glico's counsel in March 1994, ███████████████████████████████

███████████████████████████ PSF ¶ 303. ███████████████████████████

████████████████████████████████████



PSF ¶ 304. ████████████████████████████ PSF ¶ 305. Glico never heard from

Lotte regarding the outcome of Lotte's investigation. DSF ¶ 142. A factfinder could thus

conclude that Glico was justified in delaying legal proceedings after having put Lotte on notice

and receiving this information and assurance. *See, e.g., Liquid Glass Enters., Inc. v. Dr. Ing.*

*h.c.F. Porsche AG*, 8 F. Supp. 2d 398, 405–06 (D.N.J. 1998) (finding a delay of many years

excusable when mark holder sent the accused infringer cease and desist letters and the accused

infringer gave false assurances that it had stopped, or would stop, the infringing acts).

Second, Glico brought suit within one year of discovering that ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ PSF ¶¶ 11-14, 80-

84. Mark owners are not required to sue to stop low level infringement. *See Tandy Corp. v.*

*Malone & Hyde, Inc.*, 769 F.2d 362 (6th Cir. 1985) (a mark owner should be afforded latitude "to

assess both the impact of another's use of an allegedly infringing trademark as well as the

wisdom of pursuing litigation"). A suit is timely if brought within a reasonable time after the

infringement creates a significant danger for the mark by expanding in volume or scope. *Sara*

*Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 462 (4th Cir. 1996) ("[T]he [mark] owner has no

obligation to sue until the likelihood of confusion looms large"). Laches generally does not bar a

suit precipitated by a material change in the infringing acts, such as expansion into new

*PUBLIC VERSION*

territories or channels of trade.[14] *See* 6 McCarthy on Trademarks § 31:20 ("A relatively low level infringement or use ... in a different territory does not necessarily trigger an obligation to immediately file suit."); *see also Sara Lee Corp.*, 81 F.3d at 462 (reversing finding of laches because mark owner sued shortly after competitor expanded into new distribution channel).

Glico diligently pursued this suit shortly after it found Lotte's infringing products in mainstream American (i.e, non-ethnic specialty) retailers. ███████████████████████
████████████████████████████████████████████████████████████████████
███████ PSF ¶¶ 75-79. This is what Glico's sales personnel observed, and it is confirmed by Lotte's own evidence. *Id.* ████████████████████████████████████████
███████████████████████████████████████████████████████████
PSF ¶¶ 75-79. Then, in 2013, Glico found Pepero sold in the mainstream American grocery store Ralphs. PSF ¶¶ 80-81. ██████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████ PSF ¶ 82. Glico instituted legal proceedings about a year later. PSF ¶ 83.

The Third Circuit allowed a trademark suit to proceed under similar circumstances in *University of Pittsburgh v. Champion Products Inc.* In *University of Pittsburgh*, the University was aware of local and *de minimis* infringing sales for almost two decades, but only brought suit when it discovered infringing sales in another state. 686 F.2d at 1045-46. The Third Circuit held

---

[14] This doctrine is known as "progressive encroachment" in other circuits. The Third Circuit has not used that name, but applies the same reasoning to the same effect. *See Urban Outfitters, Inc. v. BCBG Max Azria Grp., Inc.*, 511 F. Supp. 2d 482, 509 (E.D. Pa. 2007).

*PUBLIC VERSION*

that whatever tolerance the University showed to the earlier, *de minimis* sales, was justified and could not bar relief for the later expansion. *Id.* at 1046. The same result holds when the infringing competitor expands into new channels of trade. *Sara Lee Corp.*, 81 F.3d at 462.

The evidence is sufficient to conclude that Glico's tolerance of low-level and isolated infringement was reasonable and that Glico diligently pursued legal action as soon as it realized

█████████████████████████████████████████████████████████

### 2. Evidence that Lotte suffered no legally cognizable prejudice creates a triable issue on the second element of laches.

There is more than sufficient evidence to find that Lotte did not suffer any legally cognizable prejudice, either evidentiary or economic, from the timing of this suit. As a threshold matter, Lotte proceeded to sell Pepero with full knowledge that Glico objected to its infringing use, and consequently Lotte assumed the risk of enforcement. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998) ("Any acts after receiving a cease and desist letter are at the defendant's own risk ...."); *see also Roederer v. J. Garcia Carrion, S.A.*, 569 F.3d 855, 859 (8th Cir. 2009) ("[C]ourts tend to reject a defendant's assertion of the laches defense when the defendant knew that the plaintiff objected to the use of the mark.").

Here, undisputed facts show that Glico's attorneys wrote to Lotte notifying it of Glico's trade dress rights in 1993 and 1994 and unequivocally demanding that Lotte cease sales of the infringing products. PSF ¶ 301. Lotte clearly understood Glico's objection to the infringing use from that point forward. PSF ¶¶ 304-08, 329-31. In addition, Lotte affirmatively claims that ***it anticipated litigation*** from 2003 through 2014. According to its privilege logs, Lotte asserted the work product doctrine (and therefore anticipated litigation) "regarding distribution of Pepero products in the United States" in 2003, 2012, and 2014. PSF ¶¶ 306-08. After examining some of those documents *in camera*, Magistrate Judge Wettre concluded that Lotte was, in fact,

*PUBLIC VERSION*

anticipating litigation in 2003. *See* Dkt. 191. Lotte cannot credibly claim to have anticipated

litigation all this time, yet then claim prejudice when that litigation finally materialized.

Furthermore, Lotte had a duty to preserve evidence at the time that it anticipated

litigation. *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc.*, No. 07-CV-5855, 2010

WL 2652412, at *3 (D.N.J. July 1, 2010). Lotte cannot simultaneously shield itself from

discovery because it anticipated this very suit and claim that it suffered evidentiary prejudice by

failing in its duty to preserve relevant evidence.

The evidence related to Lotte's purported economic prejudice creates disputed issues of

material fact. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████ Nor is Glico seeking the full ██████████████ of Pepero revenue in damages, as

Lotte claims. *See* Mot. at 47. Glico seeks the ***profits*** Lotte made from Pepero, starting six years

prior to this suit. PSF ¶ 332. ████████████████████████

████████████████████████████████████████████

The purported economic injury on which Lotte relies instead shows that ██████████

████████████████████████████████████

which is not sufficient for a finding of laches. *Warner-Lambert Co. v. Schick U.S.A., Inc.*, 935 F.

35

*PUBLIC VERSION*

Supp. 130, 142 (D. Conn. 1996) (the mere continuation of spending money advertising the infringing mark over an eight-year period does not constitute "prejudice" sufficient to prove an estoppel by laches defense). ████████████████████████████████████

████████████████████████████████████████████████████████████████

PSF ¶¶ 309-11.

Finally, Lotte cannot rely on new arguments and evidence, not articulated in its response to Glico's contention interrogatory on laches. PSF ¶¶ 312-17. Lotte disclosed its new theories of economic prejudice – relating to how Pepero helps Lotte sell other products and how an injunction against Pepero would render the rest of Lotte's business uneconomical – for the first time in its Motion. Mot. at 45–46. Lotte tardily filed a declaration reflecting the basis for those theories six days later on September 27, 2018. Dkt. 239. Because Lotte did not timely disclose these positions during discovery, it should not be permitted to rely on them now.

At bottom, there are genuine disputes as to whether Lotte suffered cognizable prejudice.[15]

### C.     Laches cannot bar injunctive relief in this case.

Moreover, even if laches were found, it would not bar all relief. Laches rarely bars prospective relief. *E.g.*, *Presley's Estate v. Russen*, 513 F. Supp. 1339, 1351 (D.N.J. 1951) ("[L]aches generally is not a bar to injunctive relief against unfair competition."). In *University of Pittsburgh*, the Third Circuit explained that laches may bar injunctive relief only "where the plaintiff's delay has been so outrageous, unreasonable and inexcusable as to constitute a virtual abandonment of its right." 686 F.2d at 1044. As an example, the court cited *Anheuser-Busch v. Du Bois Brewing Co.*, 175 F.2d 370 (3d Cir. 1949), which involved a delay much longer than the

---

[15] Although it has done so, Glico should not be required to disprove both inexcusable delay *and* prejudice in order to rebut a presumption of laches. *See Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 409 (6th Cir. 2002) (stating that plaintiff must disprove only one element of laches to overcome presumption). To the extent *Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*, 401 F.3d 123, 138–40 (3d Cir. 2005) holds otherwise, it is wrongly decided.

PUBLIC VERSION

time period here. *Id.* The "more common situation," according to the Third Circuit, is one "in which the plaintiff's less egregious delay will bar its claim for past infringement but not for prospective injunctive relief." *Id.* at 1044–45. One of the major considerations when assessing delay and prejudice in cases of unfair competition is the "right of the public not to be confused and deceived." 6 McCarthy on Trademarks § 31:10; *see also Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 614–15 (7th Cir. 1965) ("only in the most exceptional circumstances will injunctive relief be denied in a case of deliberate infringement."). Again, these determinations are better left for trial "[b]ecause laches ... is inextricably bound up with the nature and quality of the plaintiff's claim on the merits relevant to a prospective injunction." *Id.* at 1044.

### D.   Laches cannot bar Glico's state law claims.

Laches cannot bar Glico's claims brought under New Jersey unfair competition law because those claims are subject to a statute of limitations. *See* Dkt. 102, Third, Fourth, and Fifth Claims. The U.S. Supreme Court has twice held that laches is a gap-filling doctrine with no application to claims for which there is a statute of limitations. *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 961 (2017); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1973 (2014). The same principle controls under New Jersey law. *Fox v. Millman*, 45 A.3d 332, 341 (D.N.J. 2012) (Laches is "an equitable defense that may be interposed in the absence of the statute of limitations.") (finding reversible error in the application of laches against claims governed by a statute of limitations). Federal district courts also follow *Petrella* and *SCA Hygiene* with respect to state law claims. *E.g.*, *Oracle Am., Inc. v. Terix Comput. Co., Inc.*, No. 5:13-cv-03385-PSG, 2015 WL 1886968, at *4 (N.D. Cal. Apr. 24, 2015) (finding that *Petrella*'s reasoning "logically extends the basic premise to all statutory

*PUBLIC VERSION*

frameworks that include a statute of limitations").[16] Lotte agrees that New Jersey has set a six

year limitations period for Glico's state law claims. Mot. at 38; *see also Pet Gifts USA, LLC v.*

*Imagine This Co., LLC*, No. CV143884FLWDEA, 2015 WL 5822584, at *4 n.6, *9 (D.N.J. Oct.

2, 2015) (citing N.J.S.A. 2A:14–1). Accordingly, there is no gap for laches to fill, and Lotte

cannot raise it as a defense to Glico's state law claims for acts within the last six years.[17]

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Glico respectfully requests that Lotte's motion be denied and this action proceed to trial.

---

[16] Neither of the cases Lotte cites (Mot. at 38) overcomes the principle articulated in *Petrella*, *SCA Hygiene*, and *Fox. Joint Stock Society v. UDV N. Am.*, 53 F. Supp. 2d 692, 701 (D. Del. 1999), preceded *Petrella*, and *Am. Diabetes Assoc. v. Friskney Family Trust, LLC*, 177 F. Supp. 3d 855, 878–83 (E.D. Pa. 2016) applied Pennsylvania law and did not address *Petrella*.
[17] Trademark infringement is a continuing wrong for which each act is a separate injury, which means Glico can recover for violations over the past six years. *Zinn*, 2009 WL 3128353, at *24.

*PUBLIC VERSION*

Dated: October 22, 2018                     Respectfully submitted,

                                            /s/  *Roy H. Wepner*

                                            Roy H. Wepner
                                            Charles P. Kennedy
                                            Natalie S. Richer
                                            LERNER, DAVID, LITTENBERG,
                                             KRUMHOLZ & MENTLIK, LLP
                                            600 South Avenue West
                                            Westfield, NJ 07090-1497
                                            Tel: 908.654.5000
                                            Fax: 908.654.7866

                                            /s/  *Steven M. Levitan*

                                            Steven M. Levitan (admitted *pro hac vice*)
                                            HOGAN LOVELLS US LLP
                                            4085 Campbell Avenue
                                            Suite 100
                                            Menlo Park, CA 94025
                                            Tel: 650.463.4000
                                            Fax: 650.463.4199

                                            Anna Kurian Shaw
                                            (admitted *pro hac vice*)
                                            Katherine Bastian
                                            (admitted *pro hac vice*)
                                            Lauren Cury
                                            (admitted *pro hac vice*)
                                            HOGAN LOVELLS US LLP
                                            555 Thirteenth Street, NW
                                            Washington, DC 20004
                                            Tel: 202.637.5600

                                            Aaron S. Oakley
                                            (admitted *pro hac vice*)
                                            Katherine Armstrong Nelson
                                            (admitted *pro hac vice*)
                                            HOGAN LOVELLS US LLP
                                            1601 Wewatta St #900
                                            Denver, CO 80202
                                            Tel: (303) 899-7300

                                            *Attorneys for Plaintiffs Ezaki Glico*
                                            *Kabushiki Kaisha, d/b/a Ezaki Glico Co., Ltd. and*
                                            *Ezaki Glico USA Corporation*

*PUBLIC VERSION*

<u>**Certificate of Service**</u>

I hereby certify that a true and correct copy of the foregoing was served upon the

following counsel of record via email on this 22nd day of October 2018:

Riley Thomas Orloff
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10173
212-547-5400
rorloff@mwe.com

John J. Dabney
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8343
jdabney@mwe.com

Mary Hallerman
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8738
mhallerman@mwe.com

Katie Bukrinsky
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8194
kbukrinsky@mwe.com

Rebecca Harker Duttry
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8248
rduttry@mwe.com

/s/  *Roy H. Wepner*