*Confidential – Subject to Motion to Seal*

Roy H. Wepner
Charles P. Kennedy
Natalie S. Richer
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090-1497
Tel: 908.654.5000
Fax: 908.654.7866

**OF COUNSEL**
Steven M. Levitan (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
4085 Campbell Avenue
Suite 100
Menlo Park, CA 94025
Tel: 650.463.4000
Fax: 650.463.4199

*Attorneys for Plaintiffs Ezaki Glico Kabushiki Kaisha,
d/b/a Ezaki Glico and Ezaki Glico USA Corp.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EZAKI GLICO KABUSHIKI KAISHA, d/b/a EZAKI GLICO CO., LTD., and EZAKI GLICO USA CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>LOTTE INTERNATIONAL AMERICA CORP. and LOTTE CONFECTIONERY CO. LTD.,<br><br>Defendants. | Civil Action No. 15-5477-MCA-LDW<br><br>District Judge Madeline Cox Arleo<br>Magistrate Judge Leda Dunn Wettre<br><br>Return Date: November 5, 2018<br>Time: 10:00 a.m.<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**SUPPLEMENTAL STATEMENT OF UNDISPUTED MATERIAL FACTS**

*Confidential – Subject to Motion to Seal*

In accordance with Local Rule 56.1(a), Plaintiffs Ezaki Glico Kabushiki Kaisha *d/b/a* Ezaki Glico Co., Ltd. ("**Glico Japan**") and Ezaki Glico USA Corporation ("**Glico USA**"; collectively "**Glico**") hereby set forth this response in opposition to Defendants Lotte Confectionery Co. Ltd.'s ("**Lotte Korea's**") and Lotte International America Corp.'s ("**Lotte America's**"; collectively "**Lotte's**") Supplemental Statement of Undisputed Material Facts, Dkt. 257-1.

## RESPONSE TO DEFENDANTS' SUPPLEMENTAL STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Pepero was created in Korea in or about 1983. No one at Lotte Confectionery has personal knowledge about how Pepero was created, and many documents relating to the creation of Pepero were destroyed in the ordinary course of business long before Glico filed this lawsuit in 2015. *See* Ex. 91 (Hwang Dep.) at 159:17–161:3.

**Response:** Undisputed that Pepero was created in Korea in or about 1983. Disputed that all documents relating to the creation of Pepero were destroyed. *See* Dkt. 247-1 at ¶¶ 318–25. ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████ Additional evidence is unnecessary and would be cumulative. Personal knowledge of Lotte Korea employees regarding how Pepero was created is not material because Lotte's documents are of such volume and clarity that they speak for themselves. *Id.* ██████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████There is, in fact, no evidence that documents relating to the creation of Pepero were destroyed, and, in view of the documents that Lotte produced, the evidence is to the contrary.

2. Regarding the documents that still exist (*i.e.* Exhibits 10–18 to the Phillips Declaration) concerning the creation of Pepero, no person at Lotte has knowledge about these documents, no person at Lotte is able to identify the authors of these documents or their role in

1

*Confidential – Subject to Motion to Seal*

the Pepero development process; and no person at Lotte is able to explain the purpose or meaning of these documents. █

███████████████████████████████
███████████████████████████████
███████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████
███████████████████████████████
███████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████
███████████████████████

**Response:**  Disputed that no person at Lotte is able to explain the purpose or meaning of Exhibits 10–18 to the Phillips Declaration.  The documents are clear and unambiguous, ███

███████████████████████████████

███████████ Personal knowledge of Lotte Korea employees regarding how Pepero was created and/or the referenced documents is not material because Lotte's documents are of such volume and clarity that they speak for themselves.  *Id.* ███████████

███████████████████

█████████████████████████

███████████████████████████

█████████████████████

███████████████████████

2

*Confidential – Subject to Motion to Seal*

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

3.      More information is available regarding Lotte's more recent Pepero variations, and Lotte Confectionary's corporate designee testified ████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████

**Response:** Disputed that there is "more information" available regarding Lotte's more recent Pepero variations, ████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

3

*Confidential – Subject to Motion to Seal*

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

  4.   ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████ Lotte Confectionary's corporate designee, Ms. Choi, testified that the "choco" category included Pepero—indeed, another page in this document refers to the category as "Pepero Choco"—and that, based on her understanding of these documents, she was "assured that [Lotte] had export of Pepero as part of a chocolate line to USA based on this document."  *See* Phillips Decl. Exhibit 36 (LCON00020048); Philips Decl. Exhibit 37 (Choi Dep.) 206:10–12; 207:13–15.  Further, ████████████████████
████████████████████████████████████████
███████████████████████████████

**Response**:  Disputed.  There is no evidence that Lotte first sold Pepero in the United State in 1987, or at any time prior to 1990.  Neither of the documents upon which Lotte relies shows that Pepero was sold in the United States in 1987, or at any time prior to 1990.  ████████

████████████████████████████████████████

███████████████████████████████

██████████████████████████████ Disputed that Ms. Choi testified that "based on her understanding of these documents, she was 'assured that [Lotte] had export of Pepero as part of a chocolate line to USA based on this document.'"  ████████████████

████████████████████████████████████████

██████████████████████████████

4

*Confidential – Subject to Motion to Seal*

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████

Further, this document is hearsay and because there is no indication that the author had personal knowledge of the document's contents, ████████████████████████████████ ████████████████████████████████████████████████ even if the document itself were admissible as an ancient document. Dkt. 227-1, ¶ 70; Dkt. 227-36; *see* Glico's Evidentiary Objections in Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment (filed herewith).

5

*Confidential – Subject to Motion to Seal*

     5.    Ms. Choi, who was designated as Lotte's representative on the topic of sales in the U.S., testified that Lotte **did not know** that Pocky products were being sold in the United States at the time Lotte began selling Pepero products here in 1987. Ex. 92 (Choi Dep.) 99:19–25, 100:12–17.  None of the evidence cited by Glico contradicts this sworn testimony, or indeed makes any reference to sales of Pocky in the United States. *See, e.g.* Phillips Decl. Exs. 10–18.

     **Response**:  Disputed.  Ms. Choi did <u>not</u> testify that "Lotte did not know that Pocky products were being sold in the United States at the time Lotte began selling Pepero products here in 1987." ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇The statements in Paragraph 5 are immaterial because Ms. Choi was testifying about her personal knowledge, not in her capacity as a corporate designee.  The evidence shows that Pocky was being sold in the United States starting in 1978.  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dkt. 227-4 at EZAKI0000001 (registration on the Principal Register showing use in commerce as of August 1978).  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

     6.    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

     **Response**:  Disputed.  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

*Confidential – Subject to Motion to Seal*



Further, this document is hearsay and because there is no indication that the author had personal knowledge of the document's contents, ▌

even if the document itself were admissible as an ancient document.  Dkt. 227-1, ¶ 70; Dkt. 227-36; *see* Glico's Evidentiary Objections in Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment (filed herewith). Additionally, the statement in Paragraph 6 is immaterial because Glico demonstrated continuous and substantially exclusive use of the Pocky product configuration in commerce in the United States for the five years preceding its application for the Pocky product configuration trademark, and this evidence was accepted by the PTO.  Dkt. 227-4 at EZAKI0000027, 31–38.

*Confidential – Subject to Motion to Seal*

7. ███████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████████████

**Response:** Disputed. ████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████ Further, this document is hearsay and because there is no indication that the author had personal knowledge of the document's contents, ████████████████████████████████

████████████████████ even if the document itself were admissible as an ancient document. Dkt. 227-1, ¶ 70; Dkt. 227-36; *see* Glico's Evidentiary Objections in Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment (filed herewith). ████████████████████████

████████████████████████████████████

8

*Confidential – Subject to Motion to Seal*



Also disputed because Mr. Ezaki testified that he has no recollection of being aware of sales of Pepero products in the United States in or before 1987 or 1988. Dkt. 227-40 ¶¶ 4–5.

Additionally the statements in Paragraph 7 are immaterial because Glico demonstrated continuous and substantially exclusive use of the Pocky product configuration in commerce for the five years preceding its application for the Pocky product configuration trademark, and this evidence was accepted by the PTO. Dkt. 227-4 at EZAKI0000027, 31–38. Further, the existence of isolated sales (if any) by other manufacturers would not detract from that substantially exclusive use. Dkt. 227-41.

8. Lotte has subpoenaed numerous third party distributors for records related to sales of not just Lotte's Pepero but also third-party biscuit sticks such as Meiji from the 1980s and 1990s, but these documents were not produced. 10-22 Hallerman Decl. ¶ 8.

**Response:** Disputed. Paragraph 9 of the 10-22 Hallerman Declaration states that Lotte subpoenaed five distributors—Hanmi is listed twice. Dkt. 258. The statement in Paragraph 8 is immaterial because there is no support or foundation for why the documents were not produced. There is no evidence as to what Lotte required of the subpoena recipients after it served the subpoenas, what negotiations and/or agreements as to scope of production may have been reached, or how thorough or extensive a search by the third parties was performed. There are no declarations or testimony from any of the referenced subpoena recipients that would bear on these facts.

9

*Confidential – Subject to Motion to Seal*

    9.    Between 1997 and 2000, Lotte Confectionery had an office in Chicago, Illinois. Ex. 92 (Choi Dep.) 54:1–55:20.

    **Response:** Undisputed but immaterial, ███████████████████████

███████████████████████████████████

    10.    Glico has not established that its Pocky configuration was continuously sold or advertised—much less that it had secondary meaning—in any geographic region prior to the time that its registration issued. *See generally* Glico SUMF. On the contrary, Glico stated in its application the PTO that it did no advertising of the Pocky brand. Phillips Decl. Exhibit 2 at EZAKI0000034–EZAKI0000035, EZAKI0000118.

    **Response:** Disputed. Glico's incontestable federal registration for the Pocky product configuration is *prima facie* evidence that the Pocky product configuration has secondary meaning and had acquired secondary meaning prior to the time that Glico's '208 registration issued. Dkt. 227-4 at EZAKI00000027 (acceptance for publication). Glico presented evidence that the Pocky product configuration had acquired distinctiveness as of the date of its application in 1987 and that Glico had substantially exclusive and continuous use of the Pocky product configuration in commerce in the United States for five years preceding the date of its application for registration, which was filed on December 16, 1987. Dkt. 227-4 at EZAKI0000031–38. Glico's declaration of acquired distinctiveness submitted evidence of, *inter alia*, continuous sales of Pocky in the United States dating back to 1978. Dkt. 227-4 at EZAKI0000118-119. Based on the evidence submitted by Glico in its Section 2(f) declaration, the PTO found that Glico had established secondary meaning in the Pocky product configuration and that Glico's '323 application was entitled to federal registration. Dkt. 227-4 at EZAKI0000027, 31–38. Disputed that Glico has not established that its Pocky Product Configuration was not continuously sold prior to the issuance of its trademark registration because Glico's declaration of acquired distinctiveness submitted evidence of, *inter alia*, continuous sales of Pocky in the United States dating back to 1978. Dkt. 227-4 at

10

*Confidential – Subject to Motion to Seal*

EZAKI0000118-119. Disputed that Glico stated in its application that it did no advertising of the Pocky brand. Glico expressly declared to the PTO that it advertised in print media in the major marketing areas of California, held sample sales events, held bargain sales coupon programs, and distributed coupons. Dkt. 227-4 at EZAKI0000034. Glico also expressly declared to the PTO that its advertisements in Japanese print media were extensively displayed in the United States. Dkt. 227-4 at EZAKI0000035.

11. Lotte clearly labelled its Pepero packaging with the Pepero mark, as well as its company name Lotte. *See* Dkt. 229-73.

**Response:** Glico objects to Exhibit 73 to the Hallerman Declaration as unauthenticated and not probative of the labelling of all Pepero packages. *See* Glico's Evidentiary Objections In Reply To Defendants' Opposition To Plaintiffs' Motion For Summary Judgment (filed herewith). Disputed that Lotte clearly labelled its Pepero packaging. Pepero packages are sometimes sold in the United States with Korean labels. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Lotte's Pepero packaging is confusing because it resembles Glico's Pocky chocolate packaging and the image of the Pepero product on the packaging is confusingly similar to Glico's Pocky product configuration. Dkt. 251, Ex. A at EZAKI0031375, EZAKI0032497.

12. Glico served discovery on Lotte seeking all documents relating to Lotte's prior user defense. *See* Ex. 93 (Lotte Confectionery's Responses to Glico's First Set of Requests for Production) at No. 2 (seeking documents that show on a "quarterly basis," among other things, "(i) the time periods during which and the locations where, on a quarterly basis, each different type of biscuit or cookie stick [bearing the Pepero configuration] was imported into and offered for sale in the United States, [and] (iii) the number of Pepero Units and biscuit or cookie sticks sold, by type and U.S. location, on a quarterly basis"); No. 5 (documents "relating to the decision to adopt the Pepero product configuration, including but not limited to the reasons for adoption, Lotte Korea's awareness of Pocky before, during and after adoption, and any consideration, discussion, communication or efforts to copy, emulate, imitate, replicate, come close to, or otherwise create any sort of association in consumers' minds with Pocky"); No. 10 (documents "sufficient to identify in detail the supply chain in the United States for Pepero and changes in

11

*Confidential – Subject to Motion to Seal*

that supply chain from the first sale through the present"); No. 13 (documents "relating to Pocky, including but not limited to documents regarding Lotte Korea's awareness of the Ezaki Glico Marks (including Lotte Korea's first awareness of the Ezaki Glico Marks), and documents regarding any Pocky product configuration or packaging."); No. 19 (documents related to any trademark searches concerning the Pepero configuration); and No. 25 (documents concerning sales in the United States "separate and apart from [Lotte Confectionery's] sales of Pepero to Lotte America"). *See also* Ex. 94 (Lotte America's Responses to Glico's Requests for Production Nos. 7–68) at No. 7 (documents relating to Lotte America's "first sale in the United States"); No. 8 (documents evidencing all sales by Lotte America or any predecessor-in-interest); Nos. 17–18 (documents relating to "Lotte USA's first awareness of the existence of Pocky, Ezaki USA, and Ezaki Japan" and first awareness of "the existence of the Ezaki Glico Marks)"; No. 19 (first awareness of any trademark searches concerning the Pepero design); No. 38 (documents that "evidence any person, other than Lotte USA, using the design(s) embodied by Pepero;"); No. 36 (documents related to Lotte America's affirmative defenses); No. 58 (documents related to Lotte America's prior user defenses). Lotte Confectionary and Lotte America responded to these requests by producing all non-privileged documents within their possession, custody, or control. *See id.*

**Response:** Undisputed that Glico served requests for production targeted at its then-understanding of Lotte's prior use affirmative defense. Disputed that Request No. 19 requested "first awareness of any trademark searches concerning the Pepero design." Dkt. 258-4 at No. 19. Request No. 19 sought "All documents and things that reflect, refer to, relate to or evidence any trademark searches or other investigation conducted by or on behalf of [Lotte America] concerning the design of Pepero and any opinions requested or received regarding the right of any person to use and/or register the configuration of Pepero . . . ." Dkt. 258-4 at No. 19. Disputed that Request No. 36 sought "documents related to Lotte America's affirmative defenses." Dkt. 258-4 at No. 36. Request No. 36 sought "All documents and things that reflect, refer to, relate to or evidence any research performed by [Lotte America], at [Lotte America's] request, or on [Lotte America's] behalf, including but not limited to any market or consumer research, with respect to Pepero." Dkt. 258-4 at No. 36. Request No. 48 sought documents related to Lotte America's affirmative defenses. Dkt. 258-4 at No. 46. The statements in Paragraph 12 are immaterial because Glico would have fashioned its other discovery—interrogatories and questions at deposition, for example—differently had the basis for Lotte's

*Confidential – Subject to Motion to Seal*

prior use defense been articulated in Lotte's pleadings and/or responses to contention

interrogatories.

      13.     In its letter seeking leave to file its motion for summary judgment, Glico took the position that the "Pocky and Pocky Almond Crush product configurations are substantially the same . . . [t]hus, Glico claims acquired distinctiveness of the POCKY Almond Crush Configuration dating back to the first use of the POCKY product configuration shown in the '208 registration. Indeed, Glico made representations to this effect in connection with the prosecution of its '119 registration." Dkt. 205 at n.4.

      **Response:** Undisputed that Glico represented that the Pocky Almond Crush product configuration differs from the Pocky product configuration in that there are crushed almonds included in the chocolate covering of the biscuit stick, that the two product configurations are substantially the same, that one is a variation of the other. Dkt. 227-9 at EZAKI0000256. Glico disputes Lotte's implication that substantially the same means exactly the same. The two product configurations are not identical. Dkt. 227-9 at EZAKI0000256.

*Confidential – Subject to Motion to Seal*

Dated: November 8, 2018                Respectfully submitted,

/s/  *Roy H. Wepner*

Roy H. Wepner
Charles P. Kennedy
Natalie S. Richer
LERNER, DAVID, LITTENBERG,
 KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090-1497
Tel: 908.654.5000
Fax: 908.654.7866

/s/  *Steven M. Levitan*

Steven M. Levitan (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
4085 Campbell Avenue
Suite 100
Menlo Park, CA 94025
Tel: 650.463.4000
Fax: 650.463.4199

Anna Kurian Shaw
(admitted *pro hac vice*)
Katherine Bastian
(admitted *pro hac vice*)
Lauren Cury
(admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Tel: 202.637.5600

Aaron S. Oakley
(admitted *pro hac vice*)
Katherine Armstrong Nelson
(admitted *pro hac vice*)
HOGAN LOVELLS US LLP
1601 Wewatta St #900
Denver, CO 80202
Tel: (303) 899-7300

*Attorneys for Plaintiffs Ezaki Glico*
*Kabushiki Kaisha, d/b/a Ezaki Glico Co., Ltd. and*
*Ezaki Glico USA Corporation*