CONFIDENTIAL – FILED UNDER SEAL

Riley T. Orloff  (RO4865)
McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY  10173-1922
rorloff@mwe.com

John J. Dabney (admitted *pro hac vice*)
Mary D. Hallerman (admitted *pro hac vice*)
Katie Bukrinsky (admitted *pro hac vice*)
Rebecca H. Duttry (admitted *pro hac vice*)
McDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C.  20001
jdabney@mwe.com, mhallerman@mwe.com,
kbukrinsky@mwe.com, rduttry@mwe.com

*Attorneys for Defendants/Counterclaimants*
*Lotte International America Corp. and*
*Lotte Confectionery Co., Ltd.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EZAKI GLICO KABUSHIKI KAISHA, d/b/a : <br> EZAKI GLICO CO., LTD., : <br> and EZAKI GLICO USA CORPORATION, : <br> : <br>     Plaintiffs/Counterdefendants. : <br> : <br>     v. : <br> : <br> LOTTE INTERNATIONAL AMERICA : <br> CORP. : <br> and LOTTE CONFECTIONERY CO. LTD. : <br> : <br>     Defendants/Counterclaimants.  : | Civil Action No. 15-5477-MCA-LDW <br><br> District Judge Madeline Cox Arleo <br> Magistrate Judge Leda Dunn Wettre |

## <u>DEFENDANTS' REPLY IN SUPPORT OF</u>
## <u>MOTION FOR SUMMARY JUDGMENT</u>

CONFIDENTIAL – FILED UNDER SEAL

## **TABLE OF CONTENTS**

I.    THE POCKY PRODUCT CONFIGURATION IS FUNCTIONAL. ............1

    A.    Glico's U.S. Utility Patent.......................................................4

    B.    Glico's Japanese Utility Model ...............................................7

    C.    Glico's Internal Documents and Advertising.........................8

    D.    Lotte's Foreign Applications for Pepero Do Not Create a Genuine Dispute of Fact......................................................10

II.    GLICO ABANDONED ITS TRADE DRESS..............................11

    A.    Glico does not control the ████████████. ......................12

    B.    The Pocky trade dress lost trademark significance *because* of Glico's lack of quality control. ..........................13

III.    LOTTE ESTABLISHED ITS LACHES DEFENSE. ...................15

    A.    Glico Failed to Rebut the Presumption of Laches ..............15

        1.    *Glico's Delay Is Inexcusable* ....................................16

        2.    *Lotte Has Suffered Prejudice*...................................18

    B.    Glico Fails to Show That Lotte is a "Willful Infringer" ....................21

CONCLUSION ....................................................................................22

CONFIDENTIAL – FILED UNDER SEAL

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams Mfg. Corp. v. Rea*,
  No. 12-1430, 2014 WL 978116 (W.D. Pa. Mar. 12, 2014) ................................9

*Am. Greetings Corp. v. Dan-Dee Imports, Inc.*,
  807 F.2d 1136 (3d Cir. 1986) ............................................................................9

*Barcamerica Intern. USA Tr. v. Tyfield Importers, Inc.*,
  289 F.3d 589 (9th Cir. 2002) ...........................................................................13

*Converse, Inc. v. Int'l Trade Comm'n*,
  No. 2016-2497, 2018 U.S. App. LEXIS 30648 (Fed. Cir. Oct. 30,
  2018) ...................................................................................................................2

*DC Comics v. Towle*,
  802 F.3d 1012 (9th Cir. 2015) .........................................................................21

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,
  158 F.3d 1002 (9th Cir. 1998) ...........................................................................1

*Doeblers' Pa. Hybrids, Inc. v. Doebler*,
  442 F.3d 812 (3d Cir. 2006) .......................................................................13, 14

*Elvis Presley Enters., Inc. v. Capece*,
  141 F.3d 188 (5th Cir. 1998) ...........................................................................21

*Eppendorf-Netheler-Hinz GmBH v. Ritter GmBH*,
  289 F.3d 351 (5th Cir. 2002) .............................................................................3

*Eva's Bridal Ltd. v. Halanick Enters.*,
  639 F.3d 788 (7th Cir. 2011) ...........................................................................14

*Exxon Corp. v. Oxxford Clothes, Inc.*,
  109 F.3d 1070 (5th Cir. 1995) ....................................................................13, 14

*Fair Wind Sailing, Inc. v. Dempster*,
  764 F.3d 303 (3d Cir. 2014) ...............................................................................5

CONFIDENTIAL – FILED UNDER SEAL

*Freecycle Sunnyvale v. Freecycle Network*,
 626 F.3d 509 (9th Cir. 2010) ............................................................................14

*Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*,
 754 F.2d 591 (5th Cir. 1985) ............................................................................11

*H.G. Shop. Centers, L.P. v. Birney*,
 H-99-0622, 2000 WL 33538621 (S.D. Tex. Nov. 29, 2000) ......................18, 19

*Hermes Intern. v. Lederer de Paris Fifth Ave., Inc.*,
 219 F.3d 104 (2d Cir. 2000) ..............................................................................21

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
 191 F.3d 813 (7th Cir. 1999) ............................................................................18

*Jt. Stock Socy. v. UDV N.A., Inc.*,
 53 F. Supp. 2d 692 (D. Del. 1999), *aff'd,* 266 F.3d 164 (3d Cir.
 2001) ......................................................................................................18, 19, 22

*Kohler Co. v. Honda Giken Kogyo K.K.*,
 125 U.S.P.Q.2d 1468 (TTAB 2017) ....................................................................8

*Kos Pharms., Inc. v. Andrx Corp.*,
 369 F.3d 700 (3d Cir. 2004) ..............................................................................11

*Liquid Glass Enters., Inc. v. Dr. Ing. h.c.F. Porsche AG*,
 8 F. Supp. 2d 398 (D.N.J. 1998) ........................................................................16

*Nartron Corp. v. STMicroelectronics, Inc.*,
 305 F.3d 397 (6th Cir. 2002) ..............................................................16, 17, 19

*Prestwick Grp., Inc. v. Landmark Studio Ltd.*,
 14-CV-731, 2015 WL 2384191 (E.D. Wis. May 19, 2015)..................16, 21, 22

*Roederer v. J. Garcia Carrion, S.A.*,
 569 F.3d 855 (8th Cir. 2009) ............................................................................21

*Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*,
 401 F.3d 123 (3d Cir. 2005) ....................................................................*passim*

*Sara Lee Corp. v. Kayser-Roth Corp.*,
 81 F.3d 455 (4th Cir. 1996) ..............................................................................17

CONFIDENTIAL – FILED UNDER SEAL

*Schutte Bagclosures Inc. v. Kwik Lok Corp.*,
 193 F. Supp. 3d 245 (S.D.N.Y. 2016), *aff'd,* 699 Fed. App'x 93
 (2d Cir. 2017) ................................................................................................22

*Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co., Ltd.*,
 668 F.3d 677 (9th Cir. 2012) .......................................................................10

*Stanfield v. Osborne Industries, Inc.*,
 52 F.3d 867 (10th Cir. 1995) ..................................................................13, 14

*Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*,
 655 Fed. Appx. 103 (3d Cir. 2016) .......................................................3, 4, 8

*TrafFix Devices v. Mtkg. Displays*,
 532 U.S. 23 (2001) ...............................................................................*passim*

*Unicasa Mktg. Grp., LLC v. Spinelli*,
 2007 WL 757909 (D.N.J. Mar. 8, 2007) .......................................................13

*Univ. of Pittsburgh v. Champion Prods. Inc.*,
 686 F.2d 1040 (3d Cir. 1982) .......................................................................18

*Urban Outfitters, Inc. v. BCBG Max Azaria Grp., Inc.*,
 511 F. Supp.2d 482 (E.D. Pa. 2007) .............................................................17

*Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd*,
 50 F.3d 189 (3d Cir. 1995) ...........................................................................22

*Zinn v. Seruga*,
 2008 WL 482324 (D.N.J. Feb. 19, 2008) .......................................................13

**Other Authorities**

McCarthy on Trademarks § 18:48 (5th ed.) .........................................................15

Restatement Third, Unfair Competition § 33, cmt b. ...........................................15

iv

CONFIDENTIAL – FILED UNDER SEAL

As shown in Lotte's opening brief, Lotte is entitled to summary judgment on all claims in Glico's operative complaint based on three independent grounds. First, the Pocky trade dress is functional and thus invalid. Second, Glico abandoned any rights to the Pocky trade dress through naked licensing. Third, Glico's twenty-five-year delay in filing suit constitutes laches and bars Glico's claims. *See* Lotte's Opening Brief ("Dkt. 228-2"); Lotte SUMF ("Dkt. 228-1").

Glico attempts to create the appearance of a factual dispute by evasive denials of Lotte's undisputed facts and a laundry list of non-material, supplemental facts. It objects as hearsay to the reports of its own experts and even has the audacity to pretend to dispute the veracity of statements that appear on its own website glico.com/us, i.e. "one end of the [Pocky] stick remains uncovered so that no chocolate gets on the fingers." As shown below, Glico has failed to create a genuine dispute of material fact, and Lotte is entitled to judgment as a matter of law.

## I.   THE POCKY PRODUCT CONFIGURATION IS FUNCTIONAL.

A trade dress is functional and thus invalid if it is "essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices v. Mtkg. Displays*, 532 U.S. 23, 32 (2001). "A product feature need only have *some* utilitarian advantage to be considered functional." *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1007 (9th Cir. 1998). Glico's patents, internal documents, advertising and the testimony of its employees and experts prove that

CONFIDENTIAL – FILED UNDER SEAL

the Pocky trade dress is functional as a matter of law.[1]

Glico's opposition largely rests on a fundamental misunderstanding of *TrafFix*. Glico concedes (at 5-6) that the Pocky trade dress makes Pocky "convenient, easy to hold, easy to eat, easy to package, and easy to share."[2] Glico argues, however, that its trade dress serves those purposes no better than "any number of other shapes and configurations." *Id.* Because "virtually every snack product in the U.S. is an available alternative," Glico insists that its trade dress is not functional. *Id.*

*TrafFix* (and Third Circuit law applying *TrafFix*) foreclose that argument. In *TrafFix*, the Supreme Court found that the trade dress at issue – a dual-spring device – was "essential to the use or purpose of the article" because it served to keep traffic signs standing in wind. 532 U.S. at 33-35. Thus, the Court held that the trade dress was functional as a matter of law. *Id.* In so holding, the Court expressly rejected

---

[1] After Lotte filed its opening brief, the Federal Circuit held that if a defendant began using the challenged mark **before** the issuance date of plaintiff's federal registration, then plaintiff **is not entitled to the statutory presumptions of registration**, which includes the presumption of non-functionality. *Converse, Inc. v. Int'l Trade Comm'n*, No. 2016-2497, 2018 U.S. App. LEXIS 30648, at *10-11 (Fed. Cir. Oct. 30, 2018). Lotte began U.S. Pepero sales before Glico's registration issued. Dkt. 228-1 ¶¶ 1, 103. Thus, Glico bears the burden of proving that its Pocky trade dress is non-functional. Whoever has the burden, the undisputed evidence proves the Pocky trade dress is functional.

[2] Glico's experts admit that these functions are essential to the use or purpose of a snack. Levine Decl. ¶¶ 19, 38; Latella Decl. ¶¶ 42, 51.

CONFIDENTIAL – FILED UNDER SEAL

plaintiff's argument that the trade dress was not functional because alternative devices could keep signs standing in wind and instead found such evidence to be irrelevant to the functionality inquiry:

> There is no need, furthermore, to engage, as did the Court of Appeals, in speculation about other design possibilities, such as using three or four springs which might serve the same purpose. [] [T]he functionality of the spring design means that competitors need not explore whether other spring juxtapositions might be used. The dual-spring design is not an arbitrary flourish in the configuration of MDI's product; it is the reason the device works. Other designs need not be attempted.

*Id.* at 33-34.

The Third Circuit recently followed *TrafFix* in a case involving a pastry configuration in the shape of a flower blossom. *Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 655 Fed. Appx. 103 (3d Cir. 2016). In *Sweet St.*, the court affirmed summary judgment for defendant and canceled plaintiff's federal trade dress registration. *Id.* at 109-10. In so doing, the court rejected plaintiff's contention that its trade dress was not functional because there were an unlimited number of alternative pastry configurations: "Because the six-fold Blossom Design is functional, there is no need to consider whether five or seven folds, let alone a different shape, could also have accomplished the purpose [of keeping in the filing.]" *Id.* at 110 n.9 (citing *TrafFix*). *Accord Eppendorf-Netheler-Hinz GmBH v. Ritter GmBH*, 289 F.3d 351, 357 (5th Cir. 2002) (same).

Glico ignores altogether the Third Circuit's decision in *Sweet St.* Instead,

CONFIDENTIAL – FILED UNDER SEAL

Glico argues that the interpretation of *TrafFix* offered by Lotte disqualifies all snacks from trade dress protection. *See* Glico Br. at 6. Not so. As *TrafFix* held, an "ornamental, incidental or arbitrary" feature that is not "the reason the [snack] works," and that does not affect its cost or quality, is non-functional. 532 U.S. at 30; *Sweet St.*, 655 Fed. App'x at 110 ("an arbitrary flourish on an otherwise complete dessert" may be protectable). For example, while a Goldfish cracker is easy to eat, the **fish shape itself** does not make it so. By contrast, and as shown below, the undisputed evidence proves that Pocky is (and was designed to be) easy to eat **due to** the elongated, thin stick-shaped biscuit and the uncoated portion of the biscuit (the handle), which are the features that comprise the Pocky trade dress.

### A.    Glico's U.S. Utility Patent

*TrafFix* held that utility patents play a decisive role in determining functionality: A utility patent "has **vital significance** in resolving a trade dress claim, for a utility patent is **strong evidence** that the features therein claimed are functional." 532 U.S. at 23 (emphasis added).

### 1.    *An Elongated, Thin, Straight, Cylindrical Biscuit*

Glico's '428 patent claims an uncoated stick-shaped snack. Dkt. 228-1 ¶ 62; Dkt. 28-2 at 16-17. Claim 1 of that patent teaches "a method for producing a stick-shaped snack" that is 2.5mm to 3.5mm in width and Claim 14 claims the "stick-shaped snack made by the method of Claim 1." Dkt. 228-1 ¶ 62. Glico admits that

CONFIDENTIAL – FILED UNDER SEAL

Ultra Slim Pocky ████████████████████████████████████

Levine Decl. ¶ 70. Glico also admits that the Ultra Slim Pocky bears the Pocky trade dress. Glico Resp. to SUMF ¶ 3. Thus, the stick-shaped biscuit feature in Glico's Pocky trade dress (as defined by Glico in this case) is claimed in the '428 patent and is functional as a matter of law. *See, e.g.*, *TrafFix*, 532 U.S. at 31-34.[3]

Glico attempts to avoid the fatal impact of its '428 patent by contending that most Pocky products contain a stick-shaped biscuit with a 4mm width, while the '428 patent claims a stick-shaped biscuit with (at most) a 3.5mm width. Glico Br. at 8-10. Glico then insists (without legal support) that the '428 patent is "irrelevant" to functionality. There is no merit to Glico's argument.

Here, Glico itself defined the Pocky trade dress for purposes of this case to contain an elongated, thin stick-shaped biscuit which Glico also claims in its '428 utility patent.[4] Courts assess the functionality of plaintiff's trade dress based on plaintiff's definition of that trade dress. *E.g., Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014). The mere fact that some embodiments of the Pocky trade dress contain an elongated, thin stick-shaped biscuit approximately 4 mm in

---

[3] This explains why Glico concedes that it does not own **trade dress** rights sufficient to stop sales of an uncoated stick (Nude Pepero). Dkt. 228-1 ¶ 114 n.2.

[4] In an interrogatory, Lotte asked Glico to "identify and describe with particularity each and every element that comprises the configuration, e.g., **dimensions**, weight, etc." Dkt. 229-1, Rog. 6 (emphasis added). Glico identified "an elongated, thin, straight, cylindrical rod-shaped biscuit" and provided no dimension. *Id.* at 4.

CONFIDENTIAL – FILED UNDER SEAL

width, i.e., one half of a millimeter greater in width than the 3.5 mm stick-shaped biscuit claimed in the '428 patent, is irrelevant to whether the trade dress is functional. Glico knowingly defined its Pocky trade dress to include the stick-shaped biscuit claimed in the '428 patent and it must live with that decision.

### 2. *Partial Chocolate Coating on More Than Half of Stick*

Glico's '428 patent undisputedly admits that the partial coating of the Pocky trade dress serves a useful purpose to make the stick stronger and more resistant to breakage. Dkt. 228-1 ¶ 68. Glico's '428 patent claims certain methods for covering a stick-shaped biscuit in chocolate. *Id.* ¶¶ 53-55. Glico's patent states that coating the stick-shaped snack "makes it possible to produce a stick-shaped snack that **is strong and does not easily break**." *Id.* ¶ 55 (emphasis added). Thus, the '428 patent proves that the partial coating feature of the Pocky trade dress serves the useful purpose of strengthening the stick and affects the quality of Pocky, making that feature functional as a matter of law. *See* Dkt. 228-2 at 20-21.

Glico admits that the '428 patent ██████████████████████████████ ██████████████████████████████ Levine Decl. ¶¶ 34, 66; Glico Br. at 10-11. Glico's expert admits that ██████████████████████████████ ████████ Levine Decl. ¶ 63. Nonetheless, Glico argues that the partial coating feature is not functional because "any number of changes to the product would strengthen it, and there are better and less costly ways to attain that result." Glico Br.

CONFIDENTIAL – FILED UNDER SEAL

at 10-11. But *TrafFix* and *Sweet Street* hold that the existence of alternative configurations is irrelevant. *See* 532 U.S. at 32. Because Glico swore to the U.S. Patent Office that partial coating makes the stick-shaped biscuit stronger, the partial-coating feature is functional as a matter of law regardless if an uncoated stick could be made stronger by other means. *Id.* at 30-32.

## B.    Glico's Japanese Utility Model

Glico's expired Japanese utility model entitled "Biscuit Coated with Chocolate" is further undisputed evidence that the Pocky trade dress and each of its claimed features are functional. *See* Dkt. 228-2 at 23-24. Glico applied for its Utility Model the same year it created Pocky, and the Model describes an "[invention] [that] relates to an improvement of so-called finger biscuits . . . to also make the same **more easily consumable**." Dkt. 229-28 (emphasis added). The chocolate-coated biscuit depicted in the drawings contained in the model is substantially indistinguishable from Pocky. *See id.*[5]

Regarding the uncovered portion of the biscuit stick, Glico's Utility Model states that "the exposed part [of the biscuit] fulfills the role of a **so-called handle** and prevents chocolate from getting on [the consumer's] hands, and when combined with the overall shape that is long and slender, it could be **easily consumed** and is

---

[5] Lotte's opening brief quoted from a different translation of Glico's Utility Model than Glico's translation. For completeness, Lotte submits the translation it quoted from in its opening brief. 11-8 Hallerman Decl. Ex. 118.

CONFIDENTIAL – FILED UNDER SEAL

**exceedingly convenient**.” Dkt. 229-28 (emphasis added).[6] *See Kohler Co. v. Honda Giken Kogyo K.K.*, 125 U.S.P.Q.2d 1468, 1478 (TTAB 2017) (finding applicant's factual statements in a Japanese utility model that the shape of its trade dress made maintenance easier to be evidence of functionality).

### C.    Glico's Internal Documents and Advertising

As shown in Lotte's opening brief, Glico's own records prove that the Pocky trade dress features are not "incidental, ornamental, [or] arbitrary," but rather make (and were designed to make) the product easy to eat. Dkt. 228-2 at 9-16; Dkt. 228-1 ¶¶ 25-29. Glico's product developers ██████████████████████ ████████████████████████████████████████████████ ████████████████████████ Dkt. 228-1 ¶¶ 26-28. ████████████ ██████████████████████ *Id*. ¶ 8. ████████████████████ ██████████████████████████████████ *Id.* ¶ 29. Glico's "own account of [its] creation" of the Pocky trade dress proves that the trade dress is functional. *Sweet St.,* 655 Fed. App'x at 109 (affirming summary judgment and cancelling plaintiff's federal registration where functionality of pastry configuration

---

[6] Contrary to Glico's suggestion (at 11-12), the utility model's reference to a groove (which is not included in the Pocky trade dress) does not detract from these admissions, which relate to the stick-shaped biscuit and the partial coating. Glico's expert admitted that ██████████████████████████████████████ ████████ which were provided by the partially-coated, stick-shaped biscuit identified in the utility model. Dkt. 229-6 (Levine Dep.) 172:18-21.

CONFIDENTIAL – FILED UNDER SEAL

established by testimony that the shape "filled a need to . . . ease serving").

Moreover, as explained in Lotte's opening brief, Glico advertises these same functional benefits to consumers. Glico's advertising touts that Pocky's stick shape is "easy to handle" (Dkt. 228-1 ¶ 34), that the "no-mess handle" "keeps chocolate off your hands" (*id.* ¶ 35), that a good taste results from most of the stick being "generously coated" with chocolate (which Glico's expert admitted was placed on the product ███████████████████████████████████ ) (*id.* ¶ 36; Levine Decl. ¶ 61), and that Pocky's "convenient design" allows the sticks to be "packed close together" in a "compact box." Dkt 228-1 ¶¶ 31, 34-35. *See also id.* ¶¶ 36-40. Glico's advertising "renders a finding of the functional purpose of the [configuration] inescapable," *Adams Mfg. Corp. v. Rea*, No. 12-1430, 2014 WL 978116, at *12 (W.D. Pa. Mar. 12, 2014) (granting summary judgment); *see also Am. Greetings Corp. v. Dan-Dee Imports, Inc.*, 807 F.2d 1136, 1142 (3d Cir. 1986) (advertising of utilitarian advantages of trade dress is "**strong evidence** of its functionality" (emphasis added)).

Critically, Glico does not dispute that its internal documents and advertising tout these benefits of its alleged trade dress. Instead, Glico insists the benefits are not "essential to the use or purpose of the article" because other snack configurations also provide the benefits. Glico Br. at 13-14. However, *TrafFix* and *Sweet St.* foreclose that argument, and the undisputed evidence proves that the Pocky trade

CONFIDENTIAL – FILED UNDER SEAL

dress is essential to the use or purpose of the product and affects its quality.[7]

### D.   Lotte's Foreign Applications for Pepero Do Not Create a Material Issue of Fact

Glico argues that the Pocky trade dress is not functional under U.S. law because Lotte filed applications to register the Pepero trade dress under foreign laws in foreign countries. Glico Br. at 14-15. Glico asks this Court to analyze the trademark laws of two dozen foreign countries to determine if those countries' substantive legal standards pertaining to registration of product configurations are identical to those of the United States. *See* Glico Supp. ¶ 250 (excerpts of foreign laws cobbled together from websites). Glico offers no expert on these foreign laws,[8] and in any event, whether the Pepero biscuit stick is registrable and non-functional trade dress under the laws of, e.g., Azerbaijan, has absolutely no bearing on whether

---

[7] Glico asserts with no factual support (at 14) that even if all of the features of its trade dress are functional, the "overall appearance" is still nonfunctional. But that is "semantic trickery" because the whole is nothing other than an assemblage of functional parts here and there is "nothing arbitrary about the components of its [trade dress] or the way they are assembled." *TrafFix*, 532 U.S. at 34; *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co., Ltd.*, 668 F.3d 677, 684 (9th Cir. 2012) ("no [] evidence of fanciful design or arbitrariness" except "self-serving statements"); Dkt. 228-2 at 12-13 (citing *Leatherman Tool Grp., Inc. v. Cooper Indus.*, 199 F.3d 1009, 1013 (9th Cir. 1999)).

[8] Glico retained Philip Hampton as an expert on foreign trademark laws, conceding that an expert was necessary on this subject. Mr. Hampton submitted a report purporting to render opinions about foreign trademark laws, but then admitted at his deposition that he was not an expert on foreign trademark laws and thus Glico makes no reference to him here.

CONFIDENTIAL – FILED UNDER SEAL

the *Pocky* trade dress is functional **under U.S. law**. *See Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 714 (3d Cir. 2004) ("Trademark standards do not traverse international borders."); *Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 599-600 (5th Cir. 1985) ("it was error to admit evidence of the parties' foreign trademark practices").[9]

\*\*\*

The functionality doctrine substantially limits trade dress rights because product configurations, like the Pocky trade dress, "'almost invariably serve[] purposes other than source identification' . . . [and thus,] trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products." *TrafFix*, 532 U.S. at 23.

## II.   GLICO ABANDONED ITS TRADE DRESS.

Glico's license with ███ is naked as a jaybird. Although Glico acknowledges that it has a legal duty to play a meaningful role in controlling the quality of the

████████████████████████████████████████████,

**Glico has not communicated with ███ in twenty years.** Glico Resp. to Lotte

---

[9] Lotte's 1995 U.S. application for Pepero never registered. Glico Supp. SUMF ¶ 247. This application was filed over six years before the Supreme Court's decision in *TrafFix* setting forth the standards for functionality and Glico cites no precedent for why this application is relevant to the functionality of Glico's Pocky trade dress, and it does not create a material factual dispute.

CONFIDENTIAL – FILED UNDER SEAL

SUMF ¶ 96. Glico has thus abandoned its Pocky trade dress as a matter of law. *See*

Dkt. No. 228-1, Section II.

**A.    Glico does not control the quality of ████ products.**

The only people connected with Glico who knew about the ████████████

████████████ were its outside counsel who unearthed it during discovery.

Mr. Fukumoto, the former president of Glico USA, who Glico relies on to attempt

to show quality control, ████████████████████████████████

████████████ Lotte Resp. to Glico Supp. SUMF ¶ 287 (emphasis added).

There is no evidence that the two other employees upon whom Glico relies to

attempt to show actual control, Mr. Tsuji and Ms. Merren, knew of the license

either. *See generally* Tsuji Decl.; Merren Decl. (no mention of ████████).

Rather, Ms. Merren and Mr. Tsuji ████████████████████████████

████████████████████████████ Dkt. 228-1 ¶ 94.

Glico nevertheless offers declarations from these three individuals in an

effort to manufacture a factual dispute about whether Glico exercised quality

control over the ████████████████████ has (and is continuing to)

manufacture and sell in the U.S. under the license. Glico Supp. SUMF ¶ 291. But

their deposition testimony proves that these employees made ████████ visits to

stores to ████████████████████████████████████████

████████████████████████. Lotte Resp. to Glico Supp. SUMF

CONFIDENTIAL – FILED UNDER SEAL

¶¶ 75–79. There is no evidence that the purpose of these visits was to control the quality of ███████████, there is no evidence as to the frequency of the visits, and there is no evidence of what the quality standards are for ██████████. Glico's ad hoc, random samplings of products that were unknown at the time to even be licensed does not begin to show that Glico plays or has ever played a meaningful role in the quality of █████████. *See, e.g., Barcamerica Intern. USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 598 (9th Cir. 2002) (random sampling insufficient to survive summary judgment).[10]

### B. The Pocky Trade Dress Lost Trademark Significance *Because* of Glico's Lack of Quality Control.

Glico argues that, even if the license with ████ is uncontrolled, Lotte must still prove that the Pocky trade dress has lost trademark significance to win on abandonment. Glico Br. at 15-18. Glico's argument relies on a misreading of *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070 (5th Cir. 1995).[11] *Exxon*

---

[10]Glico tries to excuse its lack of quality control by claiming that ████████████ ████████████████████████████████████████████████████. Glico Br. at 26-27. But there is no admissible evidence about ████████ reputation now, let alone over the course of the ████████████████, and Glico produced no documents relating to ██████████ reputation. Glico Resp. to Lotte SUMF ¶¶ 95-96. Glico thus cannot reasonably rely on ██████ reputation for purposes of quality control. *See Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 823-24 (3d Cir. 2006).

[11] Glico's cited cases from this Court do not require separate proof of a loss of trademark significance. In *Unicasa Mktg. Grp., LLC v. Spinelli*, 2007 WL 757909, at *5 (D.N.J. Mar. 8, 2007), and *Zinn v. Seruga*, 2008 WL 482324, at *4 (D.N.J.

CONFIDENTIAL – FILED UNDER SEAL

involved a phaseout agreement whereby Exxon permitted alleged infringers to use up infringing products over a set period of time after which they would stop using the mark. 109 F.3d at 1073. The agreement was used to settle trademark disputes, but Oxxford contended that Exxon had abandoned its trademark by failing to control the use of trademarks during the phaseout period. *Id.*

The Fifth Circuit held that Exxon did not need to exercise quality control during the phaseout period: "We, like the district court, would find it wholly anomalous to *presume* a loss of trademark significance merely because Exxon, in the course of diligently *protecting* its mark, entered into agreements designed to preserve the distinctiveness and strength of that mark." *Id.* at 1080. The Fifth Circuit thus refused to **presume** a loss of trademark significance because Exxon **was not required to exercise quality control** over the use of the mark in a phaseout agreement. *Id.* at 1079-1080.[12]

Presuming loss of trademark significance where a licensor, like Glico, fails to exercise quality control for ██████████████ makes sense. A trademark

---

Feb. 19, 2008), the court denied summary judgment because of a factual dispute whether the licensor had controlled quality. Here, there is no dispute.

[12]No court of appeals has required separate proof of loss of trademark significance. *See Doeblers'*, 442 F.3d at 823-24 (3d Cir. 2006); *Eva's Bridal Ltd. v. Halanick Enters.*, 639 F.3d 788, 791 (7th Cir. 2011); *Freecycle Sunnyvale v. Freecycle Network*, 626 F.3d 509, 520 (9th Cir. 2010).

CONFIDENTIAL – FILED UNDER SEAL

loses its trademark significance **because** a trademark owner fails to control the

quality of the products bearing the mark:

> When a trademark owner fails to exercise reasonable control over the use of the mark by a licensee, **the presence of the mark on the licensee's goods or services misrepresents their connection with the trademark owner since the mark no longer identifies goods or services that are under the control of the owner of the mark**. Although prospective purchasers may continue to perceive the designation as a trademark, the **courts have traditionally treated an erosion of the designation's capacity for accurate identification resulting from uncontrolled licensing as a loss of trademark significance [.]**

Restatement Third, Unfair Competition § 33, cmt. b (emphasis added). Because of

Glico's ████████ of uncontrolled licensing, Glico has abandoned its Pocky

trade dress as a matter of law.

## III.   LOTTE ESTABLISHED ITS LACHES DEFENSE.

### A.   Glico Failed to Rebut the Presumption of Laches

Glico does not dispute that under the Third Circuit's decision in *Santana*

*Products, Inc. v. Bobrick Washroom Equipment, Inc.*, 401 F.3d 123, 138-40 (3d Cir.

2005), its decades-long delay in filing suit creates a presumption of both inexcusable

delay **and** prejudice, which means its claims are barred by laches.[13] Glico Br. at 36

---

[13] Contrary to Glico's assertion (at 37-38), there has been no change to the legal landscape in which courts have for decades dismissed state law trademark claims pursuant to laches. *See, e.g.*, Dkt. 228-1 at 38 & cases therein.

CONFIDENTIAL – FILED UNDER SEAL

n.15.[14] As shown below, Glico does not rebut these presumptions, and the Court should thus enter summary judgment for Lotte.

### 1.   *Glico's Delay Is Inexcusable*

Glico argues that its decades-long delay is "excusable" because



Glico Br. at 31-32. But Glico

. Dkt. 228-1 ¶¶ 143-45. The parties'                correspondence does not excuse Glico's subsequent, deliberate twenty-year delay. *See* Dkt. 228-2 at 41-42 & cases therein; *Prestwick Grp., Inc. v. Landmark Studio Ltd.*, 14-CV-731, 2015 WL 2384191, at *9 (E.D. Wis. May 19, 2015) (rejecting same argument).[15]

Relying on the doctrine of progressive encroachment, Glico also argues that its decades-long delay is excusable because Lotte's U.S. Pepero sales were

---

[14]Glico asserts *Santana* is "wrongly decided," but does not explain why. Glico Br. at 36 n.15. Regardless, *Santana* is binding on this Court and has been for 13 years.

[15]Glico's reliance on *Liquid Glass Enters., Inc. v. Dr. Ing. h.c.F. Porsche AG*, 8 F. Supp. 2d 398 (D.N.J. 1998) is misplaced. Glico Br. at 32. There, plaintiff's delay was caused by the parties' "prolonged settlement negotiations" over seven years and that plaintiff sued immediately once negotiations broke down. *Id.* at 406. Here, by contrast, no settlement negotiations occurred between 1994 and 2015.

CONFIDENTIAL – FILED UNDER SEAL

"confined to Asian specialty markets" until 2013. Glico Br. at 32-33. In 2013, Glico

contends, Lotte attempted to expand beyond Asian specialty markets to "mainstream

America retailers" and Glico filed suit two years later. *Id.*

Glico's progressive encroachment is contrived. Progressive encroachment

requires proof that "something about the defendant's use of the mark to have

changed significantly." *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397,

410 (6th Cir. 2002).[16] For progressive encroachment purposes, delay is measured

from "the point at which [Glico] knew or should have known that it now had **a**

**provable claim for infringement**." *Id.* (emphasis added).

Glico knew it had a "provable claim for infringement" in



See Dkt. 228-1 ¶¶135-139 & exs. therein. Glico

---

[16]The cases Glico cites prove this point. In *Urban Outfitters, Inc. v. BCBG Max Azaria Grp., Inc.*, the court found progressive encroachment where the defendant changed both the **mark** and the **goods** on which the mark was used. 511 F. Supp.2d 482, 509 (E.D. Pa. 2007). Here, the Pepero product has undisputedly not changed since U.S. sales commenced in 1987. Glico Resp. to Lotte SUMF ¶ 104. In *Sara Lee Corp. v. Kayser-Roth Corp.*, after the parties' products were sold for years in **different** channels of trade where they **did not compete**, defendant suddenly expanded into plaintiff's channel. 81 F.3d 455, 462 (4th Cir. 1996). The court applied progressive encroachment because, before defendant's expansion, "it is doubtful that [plaintiff] could have proved that its product would likely be confused with [defendant's]" *Id.* By contrast, Glico (Lotte SUMF ¶¶ 107, 108, 117 & exs. therein) and was as able to prove likelihood of confusion in as it was in 2015.

CONFIDENTIAL – FILED UNDER SEAL

had a provable claim at that time twenty some years ago and every year thereafter because Pepero and Pocky have competed on the **same** shelves and in the **same** stores to the **same** class of purchasers for decades. *Id.* ¶¶ 103, 106, 108.

Contrary to Glico's bald assertion (at 34), Lotte's alleged infringement was not "low level" until 2013. U.S. Pepero sales totaled nearly ███████████, and in 2008 alone (more than 6 years before Glico filed suit) Pepero sales were ██████. *See* Dkt. 229-80 Appendix A. *H.G. Shop. Centers, L.P. v. Birney*, H-99-0622, 2000 WL 33538621, at *8 (S.D. Tex. Nov. 29, 2000).[17] Glico's argument is nothing more than a "*post hoc* rationalization for [its] unreasonable delay." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 823 (7th Cir. 1999).

### 2. *Lotte Has Suffered Prejudice*

To avoid summary judgment, Glico must rebut the presumption that Lotte suffered prejudice from Glico's decades-long delay. *Santana*, 401 F.3d at 138-139. Lotte's opening brief identified both the economic and evidentiary prejudice that it has suffered because of that delay. Dkt. 228-2 at 44-50. *Jt. Stock Socy. v. UDV*

---

[17] Glico's reliance (at 33-34) on *Univ. of Pittsburgh v. Champion Prods. Inc.*, 686 F.2d 1040 (3d Cir. 1982), to excuse its delay is misplaced. The court there actually **affirmed** that plaintiff's 20-year delay **barred all monetary relief**. The court held that the delay did not bar injunctive relief **only because** the "character and [geographic] scope of the alleged infringed changed substantially over the years," later growing into national sales. *Id.* at 1046. Here, by contrast, Lotte's Pepero sales have been nationwide since the early 2000s, more than a decade before Glico filed suit. Dkt. 228-1 ¶¶ 107, 118-121.

CONFIDENTIAL – FILED UNDER SEAL

*N.A., Inc.*, 53 F. Supp. 2d 692, 721 (D. Del. 1999), *aff'd,* 266 F.3d 164 (3d Cir. 2001) (laches established by "economic **or** evidentiary" prejudice).

First, Lotte made significant investments in Pepero while Glico sat and watched, and Lotte now faces exponentially higher monetary exposure than if Glico had timely filed suit. *See* Dkt. 228-1 at 47. *Jt. Stock Socy.*, 53 F. Supp.2d at 717 (finding this type of prejudice sufficient for laches defense).

Second, documentary evidence which supports Lotte's prior user, laches, and fraud defenses has been lost or discarded in the ordinary course of business, and critical witnesses of both parties with knowledge relevant to these defenses have died, become unavailable, or their memories have faded. *Id.* at 47-50 (noting loss of evidence from Glico, Lotte, and third parties). For example, █████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████. *Id.* at 49; Dkt. 228-1 ¶¶ 101, 109-111, 134.

Glico disputes none of these facts and its failure to do so establishes Lotte's prejudice as a matter of law. *See, e.g., Nartron*, 305 F.3d at 411 (affirming summary judgment in trademark case on laches – "*any* prejudice is sufficient [to prove laches], including an increase in potential damages or a loss of evidence"). The Court can enter summary judgment for Lotte based on Glico's failure to rebut Lotte's prejudice. *See Santana*, 401 F.3d at 139-140 (plaintiff's failure to rebut one

CONFIDENTIAL – FILED UNDER SEAL

element of the laches defense is fatal).[18]

Indeed, Glico goes one step further and attempts to exploit the evidentiary prejudice caused by its decades-long delay. For example, in its Response to Lotte's SUMF (and in its partial summary judgment motion on Lotte's prior user and fraud defenses), Glico contends Lotte has no evidence of U.S. Pepero sales before 1990. *E.g.* Glico Resp. to SUMF ¶¶ 105-107; Dkt. 257-1 ¶ 46. Because Glico's trade dress registration issued on February 28, 1989, evidence of Lotte's sales prior to that date would establish Lotte's "prior use" in the geographical locations where such use was made. *See id.*; Dkt. 257 (Lotte Br.) at 5-6. ██████████████

████████████████████████████████████████████████

████████████████████ but Glico argues Lotte cannot rely on it because ████

████ is unavailable to confirm knowledge of these early sales. *See id.*[19]

Glico nevertheless urges the Court to disregard Lotte's undisputed

---

[18] Relying on entries dated 2003, 2012, and 2014 on Lotte's privilege log, Glico argues (at 34) that Lotte is to blame for its evidentiary prejudice. Glico argues that Lotte had a duty to preserve documents because it anticipated litigation related to U.S. Pepero sales in 2003. But the evidence that is unavailable is from well before 2003 and was thus presumably discarded before then. Further, any such duty was eliminated no later than **2009** when the analogous statute of limitations expired.

[19] Similarly, Glico's President, Mr. Ezaki – who executed declarations in support of Glico's application in 1987 and 1988 stating that Glico's use was "substantially exclusive" – could not testify if he knew Pepero and other biscuit sticks were sold in the U.S. in the 1980s. *See* Dkt. 257 at 16; Dkt. 257-1 ¶ 94. Such knowledge could have invalidated Glico's registration for fraud. *See* Dkt. 257 at 15-17.

CONFIDENTIAL – FILED UNDER SEAL

evidentiary prejudice and even to allow Glico to benefit from that prejudice by asserting that Lotte "assumed the risk of enforcement" when it continued Pepero sales after Glico's objection in 1993-1994. Glico Br. at 34-35. In support, Glico cites *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 192 (5th Cir. 1998) and *Roederer v. J. Garcia Carrion, S.A.*, 569 F.3d 855, 860 (8th Cir. 2009), but neither case involved a plaintiff's **decades-long delay** in filing suit after objecting to the use, or evidence of evidentiary prejudice. Here, Glico waited over 20 years after sending a demand letter to file suit. Glico cannot "sleep on [its] rights" for more than two decades after objecting, watch to see how successful Lotte becomes, wait until witnesses are unavailable and documents discarded, and then pounce because it had objected 20 years earlier. *See, e.g. Prestwick*, 2015 WL 2384191, at *9 ("The Court finds that it is simply unreasonable to hold that a party may sleep on their rights, in theory, for any period of time, and maintain an infringement claim simply because it gave the other party notice of its alleged infringement.").

### B.   Glico Fails to Show That Lotte is a "Willful Infringer"

Glico argues that Lotte is a "willful infringer" and therefore Lotte cannot invoke the laches defense.[20] Glico Br. at 30-31. Glico cites 35-year-old Korean

---

[20]Glico cited no case to support this proposition, but cites two that reject it. *Hermes Intern. v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir. 2000) and *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015) held that laches bars claims for **monetary** relief even if the infringement is willful. The Third Circuit holds that laches may bar **injunctive** relief even if the infringement was willful.

CONFIDENTIAL – FILED UNDER SEAL

documents about Pepero's creation and claims they show that Lotte engaged in a "campaign of intentional copying." *Id.*[21] Glico also cites Lotte's continued sales of Pepero after receipt of Glico's demand letters as evidence of Lotte's willfulness. *Id.* This evidence does not show willful infringement as a matter of law.

The Third Circuit holds that proof that defendant copied a **product configuration** does not bear on whether defendant's alleged infringement is willful. *Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd*, 50 F.3d 189, 201 (3d Cir. 1995); *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 282 (S.D.N.Y. 2016), *aff'd,* 699 Fed. App'x 93 (2d Cir. 2017) (summary judgment to defendant – intentional copying of product configuration is not evidence of willfulness). Similarly, continued use by the defendant following receipt of a demand letter is not evidence of willfulness. *Prestwick*, 2015 WL 2384191, at *10-11. Glico cites no evidence that Lotte had an "intent to confuse or deceive."

## **CONCLUSION**

For the foregoing reasons and those stated in its opening brief, Lotte respectfully asks the Court to grant summary judgment in its favor.

---

*See Jt. Stock Socy*, 53 F. Supp. at 721, *aff'd,* 266 F.3d 164 (3d Cir. 2001) (injunctive relief barred despite willfulness; plaintiff "did nothing but stand by and watch").

[21]Lotte disputes these documents show copying, but is stymied because witnesses with knowledge of the documents are unavailable because of Glico's decades-long delay. Dkt. 228-1 ¶ 101; Lotte Resp. to Glico Supp. SUMF ¶¶ 318-325.

CONFIDENTIAL – FILED UNDER SEAL

Dated:  November 8, 2018                    Respectfully submitted,


                                            /Riley T. Orloff/
                                            Riley T. Orloff (N.J. Bar No. 128672015)
                                            MCDERMOTT WILL & EMERY LLP
                                            340 Madison Avenue
                                            New York, NY  10173-1922
                                            Email:  rorloff@mwe.com
                                            Tel:  212.547.5683
                                            Fax: 212.547.5444

                                            /John J. Dabney/
                                            John J. Dabney (admitted *pro hac vice*)
                                            Mary Hallerman (admitted *pro hac vice*)
                                            Katie Bukrinsky (admitted *pro hac vice*)
                                            Rebecca Duttry (admitted *pro hac vice*)
                                            MCDERMOTT WILL & EMERY LLP
                                            500 North Capitol Street, N.W.
                                            Washington, D.C. 20001
                                            Email:  jdabney@mwe.com
                                            Tel:  202.756.8000
                                            Fax:  202.756.8087
                                            *Attorneys for Defendants/Counterclaimants*

CONFIDENTIAL – FILED UNDER SEAL

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served upon the following counsel of record via email on this 21st day of September, 2018:

Roy H. Wepner, Charles P. Kennedy, Natalie S. Richer
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ  07090-1497
Email:  rwepner@lernerdavid.com; ckennedy@lernerdavid.com;
nricher@lernerdavid.com

Steven Levitan
HOGAN LOVELLS US LLP
4085 Campbell Avenue, Suite 100
Menlo Park, CA  94025
Email: steve.levitan@hoganlovells.com

Birte Hoehne Mahyera
HOGAN LOVELLS US LLP
3 Embarcadero Center, Suite 1500
San Francisco, CA 94111
Email: birte.hoehne-mayhera@hoganlovells.com

Aaron S. Oakley, Katherine Nelson
HOGAN LOVELLS US LLP
1601 Wewatta Street, Suite 900
Denver, CO 80202
E-mail: aaron.oakley@hoganlovells.com,
Katherine.nelson@hoganlovells.com

Anna Kurian Shaw, Katherine Bastian Phillips, Lauren B. Cury
HOGAN LOVELLS US LLP
555 13th Street, N.W.
Washington, D.C. 20004
Email: anna.shaw@hoganlovells.com, katherine.bastian@hoganlovells.com,
lauren.cury@hoganlovells.com

<u>s/*Mary D. Hallerman*</u>