UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EZAKI GLICO KABUSHIKI KAISHA and EZAKI GLICO USA CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>LOTTE INTERNATIONAL AMERICA CORP. and LOTTE CONFECTIONERY CO. LTD.,<br><br>Defendants. | Civil Action No.<br><br>15-5477 (MCA) (LDW)<br><br>**OPINION** |

## **LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court is the letter application of Ezaki Glico Kabushiki Kaisha and Ezaki Glico USA Corp. ("Plaintiffs" or "Glico") to strike the supplemental expert report of Ambreen Salters and/or for sanctions against Lotte International America Corp. and Lotte Confectionery Co. Ltd. ("Defendants" or "Lotte") pursuant to Rule 37(c) of the Federal Rules of Civil Procedure. (ECF Nos. 191, 197). Defendants oppose the application. (ECF No. 195). The Court heard oral argument on September 28, 2018 and reserved decision. (ECF No. 245). Having considered the parties' written submissions and arguments, and for the reasons set forth below, plaintiffs' application to strike is **DENIED**, but the application for sanctions is **GRANTED**.

### I. BACKGROUND

Familiarity with the facts and extensive procedural history of this case is presumed, and the Court will only discuss those facts that are relevant to the instant decision. Briefly, this is a trademark infringement and unfair competition action involving Glico's Pocky brand and Lotte's Pepero brand biscuit stick products. Pursuant to 15 U.S.C. § 1117(a), a prevailing plaintiff in such

an action is entitled to recover a defendant's profits. The statute provides that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.* Thus, plaintiffs retained John Hansen as their damages expert to establish defendants' sales, and defendants retained Ambreen Salters as their damages expert to establish deductible costs and resulting profits. In a stipulation and order dated February 20, 2018, the Court approved the parties' proposal that opening expert reports be served on April 13, 2018 and rebuttal expert reports be served on May 14, 2018. (ECF No. 153).

Defendants served Ms. Salters' rebuttal expert report on May 14, 2018. In this report, Ms. Salters calculated Lotte's profits by deducting from total Pepero revenues (1) the cost of goods sold and (2) certain operating expenses. (StoneTurn Ex. 4, ECF No. 192-7; Hansen Supp. Report ¶ 14, ECF No. 195-2). In determining the amount of deductible operating expenses, Ms. Salters relied on hundreds of pages of financial documents that defendants had not produced to plaintiffs prior to the February 20, 2018 close of fact discovery or the service of the expert report. Ms. Salters also relied on previously undisclosed interviews she purportedly conducted of defendants' employees, including Lotte's accounting manager, Ms. Joanne Joo Hee Lee, who provided information about which expenses were "directly related to Pepero" and thus properly included in the calculation. (StoneTurn Ex. 4, footnotes (c)-(j), (l)-(o)).

Because defendants only produced this operating expense financial information after the close of fact discovery, Mr. Hansen was not able to consider it in his own analysis in his opening expert report. (Hansen Decl. ¶ 5, ECF No. 191-1). In an attempt to mitigate the potential prejudice resulting from defendants' untimely production of the financial information on which their expert relied, plaintiffs worked with defendants in good faith to resolve the issue without Court intervention. The parties ultimately entered into a stipulation dated June 11, 2018 whereby defendants agreed to produce Ms. Lee for a deposition pursuant to Rule 30(b)(6) of the Federal

Rules of Civil Procedure to testify on the subject of the late-produced operating expense information. (ECF No. 188). Defendants further agreed to pay for the court reporter, videographer, and translator for the Rule 30(b)(6) deposition. (*Id.*). Finally, the parties agreed that plaintiffs' economic expert could submit a supplemental report addressing the newly produced operating expense documents, Ms. Salters' opinions relating to those financial documents, and Ms. Lee's Rule 30(b)(6) deposition testimony on behalf of defendants. (*Id.*). The Court extended the deadline for expert depositions to accommodate the arrangement set forth in the parties' stipulation. (*Id.*).

Plaintiffs' counsel reviewed the newly produced operating expense documents in preparation for the Rule 30(b)(6) deposition and traveled to Los Angeles to depose Ms. Lee on June 15, 2018. (ECF No. 191). At deposition, Ms. Lee contradicted many of the facts underlying defendants' own expert's damages analysis. Plaintiffs' damages expert reviewed the newly produced financial documents, as well as Ms. Lee's damaging deposition testimony, and, as agreed, prepared and delivered to defendants a supplemental report dated July 2, 2018. (Hansen Supp. Report, ECF No. 195-2). Believing that they finally had all of the information underlying Ms. Salters' May 14, 2018 expert report, plaintiffs' counsel turned their attention to preparing for her July 12, 2018 deposition.

On July 12, 2018, minutes before Ms. Salters' deposition was scheduled to begin, defense counsel handed to plaintiffs' counsel a "supplement" to her May 14, 2018 report. (July 12, 2108 Tr. at 3:15-19, ECF No. 193-8). Defense counsel explained that "Ms. Salters received Mr. Hansen's supplemental expert report nine days ago. After considering and analyzing Mr. Hansen's report and the deposition of Joanne Joo [Hee] Lee, Ms. Salters made revisions to her own expert report pursuant to Federal Rule 26 and those revisions were provided to you today." (*Id.* at 7:22-8:6).

3

The revisions in the July 12, 2018 supplement were substantial. They comprised three material changes to her May 14, 2018 expert report. First, whereas the original report calculated Lotte's Pepero profits by deducting from revenues both cost of goods sold and certain operating expenses, the supplemental report deducts only cost of goods sold. (Salters Decl. ¶ 6, ECF No. 195-1; Hansen Decl. ¶¶ 13-14). Next, the supplemental report revises the cost of goods sold calculation to exclude non-Pepero products she claims were "erroneously" included in the original report's analysis. (Salters Decl. ¶ 7; Hansen Decl. ¶ 14; *compare* StoneTurn Original Workpaper 11, ECF No. 192-15 *with* StoneTurn Supp. Workpaper 11, ECF No. 192-16). Finally, the supplemental report adopts Mr. Hansen's suggested methodology for estimating cost of goods sold for the years 2009-2012. (Salters Decl. ¶¶ 8-9). In her original report, Ms. Salters estimated the cost of goods sold for 2009-2012 by taking the simple average of cost of goods sold in other years; in her supplemental report, she adopts Mr. Hansen's opinion that a weighted average methodology would produce a "more accurate" estimate of cost of goods sold, "[e]ven though the methodology used in [the] May 14, 2018 report . . . is reliable and can be used by damages experts." (*Id.* ¶ 9). Ms. Salters candidly acknowledges that she created the supplemental report in response to "suggestions" in Mr. Hansen's supplemental report, as well as Ms. Lee's Rule 30(b)(6) deposition testimony. (*Id.* ¶¶ 7-8, 11).

Plaintiffs' counsel objected to the late-produced supplemental report on the record at the start of what was to be Ms. Salters' July 12, 2018 deposition:

> The first notice of this supplement that I or anyone from my team had was when counsel handed it to me this morning. This supplement was not authorized by the court or any agreement of the parties. . . . You've had the report of John Hansen for ten days. You knew you were preparing something like this, and you gave us no advance notice. It's totally unreasonable to expect us to digest this in any intelligent way and examine and ask questions about it today.

(July 12, 2108 Tr. at 3:20-4:21). Defense counsel nevertheless insisted that plaintiffs' counsel depose Ms. Salters on the new report that had been produced with no advance notice only minutes before. (*Id.* at 6:1-5). Plaintiffs' counsel declined to proceed on that condition, explaining on the record:

> I understand from counsel that Ms. Salters intends to refer to and rely upon the so-called supplement to her rebuttal report if we go forward with this deposition today. Again, this is the report that counsel handed me this morning at the time that the deposition was supposed to begin with no other advance notice. So it was after the deadline for the disclosure of Ms. Salters' expert opinion and it's improper and prejudicial to attempt to supplement now. Lotte can't force us to take a deposition that will be based on substance that we have not been able to analyze and that was disclosed long after the deadline for that opinion.

(*Id.* at 7:1-15).

Plaintiffs now move to strike Ms. Salters' supplemental report or, in the alternative, for monetary sanctions in the full amount of the fees, costs, and expenses associated with plaintiffs' efforts to investigate the operating expense information on which Ms. Salters no longer relies. Defendants object to monetary sanctions and/or exclusion of the supplemental report, contending that Ms. Salters had a duty to supplement her May 14, 2018 expert report to include "new information" pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

## II. ANALYSIS

### A. Rule 26(e) Does Not Justify Defendants' Late Production of the Supplemental Salters Report

Rule 26(e)(1)(A) requires an expert to supplement or correct his or her disclosure "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." "Courts have repeatedly emphasized the limited scope of supplementation permitted by Rule 26(e); such supplementation is proper only for the narrow purpose of correcting inaccuracies or adding information that was not available at

5

the time of the initial report." *Novartis Pharm. Corp. v. Actavis, Inc.*, Civ. A. No. 12-366, 2013 WL 7045056, at *7 (D. Del. Dec. 23, 2013) (quotation omitted). Courts have interpreted Rule 26(e) to allow supplementation, for example, when an expert receives newly produced information after submitting his or her expert report, *see, e.g., Dzielak v. Whirlpool Corp.*, Civ. No. 12-89, 2017 WL 1034197, at *33 (D.N.J. Mar. 17, 2017) (finding supplemental expert report that updated analysis to reflect sales data produced for the first time after submission of initial expert report to be a timely supplement under Rule 26(e)), or when an expert discovers numerical errors in his or her calculations, *see, e.g., Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, No. C-06-1066, 2008 WL 4601038, at *2 (N.D. Cal. Oct. 15, 2008) (denying motion to strike supplemental expert report where "during his deposition, Abbott pointed out that there were numerical errors on which [the expert] based his findings. These errors appear to have been nothing more than honest mistakes, as even Abbott conceded at the hearing. The supplemental report merely corrects these mistakes; it does not attempt to mask inadequate preparation of the original report"). However, "Rule 26(e) is not an avenue to correct failures of omission because the expert did an inadequate or incomplete preparation, add new opinions, or deepen or strengthen existing opinions." *In re Asbestos Prods. Liability Litig. (No. VI)*, 289 F.R.D. 424, 425 (E.D. Pa. 2013) (internal quotations and citations omitted); *see Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009) ("Rule 26(e) creates a 'duty to supplement,' not a right. Nor does Rule 26(e) create a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed."); *Lidle v. Cirrus Design Corp.*, No. 08-cv-1253, 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009) ("Rule 26(e) is not, however, a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report.").

6

Despite defendants' attempts to characterize the changes in the supplemental expert report as necessary to reflect "new information," Ms. Salters' July 12, 2018 report far exceeds the bounds of supplementation contemplated by Rule 26(e). Indeed, none of the three material changes to her analysis are based on information that was unavailable at the time she produced her original report or were made simply to correct inaccuracies. First, Ms. Salters eliminated her reliance on operating expenses after defendants' own accounting manager testified at the Rule 30(b)(6) deposition that certain operating expenses were not, in fact, directly related to Pepero products. Ms. Lee is a Lotte employee to whom Ms. Salters had access before she prepared her initial expert report, and Ms. Salters' May 14, 2018 report explicitly states that she interviewed Ms. Lee on the subject of operating expenses. *See* StoneTurn Ex. 4. Ms. Salters has not offered any explanation for this inconsistency; the operating expense data itself is certainly not newly available, and there is no question that Ms. Salters had the opportunity at all relevant times to ask Ms. Lee the type of detailed questions plaintiffs' counsel posed at deposition. *See Lidle*, 2009 WL 4907201, at *6 (supplemental expert report that included testing on airplane wreckage and exemplar aircraft was not based on new information under Rule 26(e) because expert had access to those materials at the time of his initial report). The Court can only conclude that Ms. Salters' investigation of the facts underlying her expert opinion was inadequate, a problem that cannot be rectified via Rule 26(e).

Next, Ms. Salters states that she mistakenly included non-Pepero products in the dataset underlying her 2016 cost of goods sold analysis, an "error" she corrected in the supplemental report. (Salters Decl. ¶ 7). But the supplemental report makes much broader changes to the cost of goods sold analysis than this purported "correction." Ms. Salters' original Workpaper 11 is a list of 367 sales datapoints for various Pepero product lines in years 2013 to 2017. Her supplemental Workpaper 11, however, eliminates several categories of products from the overall analysis (including what appear to be Pepero products), resulting in a reduction of the dataset by

7

more than fifty percent. Moreover, the supplemental report's calculation removes sales datapoints not just for 2016, but also for years 2013, 2014, 2015, and 2017. It appears that Ms. Salters completely reconfigured the dataset underlying her cost of goods sold analysis. *See* StoneTurn Supp. Workpaper 11, note (a) (explaining that the revised analysis excludes not only non-Pepero products, but also four categories of Pepero products); *compare* StoneTurn Workpaper 6, note (b), ECF No. 192-13 (excluding products labeled as "Assorted") *with* StoneTurn Supp. Workpaper 6, note (a), ECF No. 192-14 (no reference to excluding products labeled as "Assorted"); *see also* Hansen Decl. ¶ 14. There is no indication that this wholesale change to the dataset was prompted by new information or a mathematical error, and it does not fall within the narrow scope of Rule 26(e) supplementation. Ms. Salters merely reanalyzed the same cost of goods sold data spreadsheet that was available to her before she submitted her initial expert report. *See Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 157 (S.D.N.Y. 2003) (striking portion of supplemental expert report because "[t]he duty placed upon a proponent to supplement expert disclosure does not support Prague's endeavor here to bolster his original expert report. Prague's new analysis is based on no new information, and appears simply an effort to include in Prague's report an alternative review of the same accounts receivable documents . . .").

Finally, Ms. Salters' attempt to revise her expert report to adopt Mr. Hansen's suggested weighted average cost of goods sold methodology is not proper Rule 26(e) supplementation. Ms. Salters asserted that the methodology she used in her original report is reliable and accepted by damages experts; her intentional decision to apply a simple average calculation thus was not an error or an inaccuracy. She simply sought an untimely opportunity to improve her methodology after reviewing Mr. Hansen's criticism of it. But Rule 26(e) does not grant experts a second bite at the apple so they can "deepen or strengthen existing opinions." *In re Asbestos Prods. Liability Litig. (No. VI)*, 289 F.R.D. at 425; *see Luke*, 323 F. App'x at 500 (affirming district court's

8

exclusion of untimely expert report that "impermissibly attempted to fix the weakness, identified by the Clinic Defendants in their summary judgment motion, in [plaintiff's] ability to establish causation"); *Sandata Tech., Inc. v. Infocrossing, Inc.*, Nos. 05-cv-9546, 06-cv-1896, 2007 WL 4157163, at *5 (S.D.N.Y. Nov. 16, 2007) ("Infocrossing's transparent attempt to evade the Court's Order, by claiming that it was *obligated* to submit a 'supplemental' report, pursuant to Rule 26(e)(1), because Sandata's experts' reports and testimony constituted newly-discovered evidence which rendered the information provided in the Roman Preliminary Report inaccurate or incomplete, will not be sanctioned; indeed, it is sanctionable."). If that were the standard, expert discovery could become an endless succession of reports rather than a procedure for the issuance of a single studied opinion. *See Hioutakos v. SimplexGrinnell LP*, Civ. A. No. 10-4505, 2014 WL 1255197, at *3 (D.N.J. Mar. 26, 2014) ("Counsel's duty under Fed. R. Civ. P. 26(e)(2) to correct materially incomplete or erroneous information should not be misused to circumvent deadlines or turn an expert report into a moving target.").

In the end, Ms. Salters' July 12, 2018 supplemental report was submitted nearly two months after the Court's deadline for defendants' expert disclosures, minutes before her deposition and without any advance notice, and after plaintiffs expended significant time and effort investigating the operating expense data upon which Ms. Salters' supplement now disclaims any reliance. The Court concludes that Ms. Salters' supplemental report was not a mandatory correction under Rule 26(e). Accordingly, the Court next considers whether to strike the supplemental report or to issue other sanctions for this improper conduct.

### B. Rule 37(c) Sanctions

Rule 37 of the Federal Rules of Civil Procedure gives the Court the discretion to fashion a sanction that appropriately addresses defendants' impermissible attempt to surprise plaintiffs with Ms. Salters' substantially revised "supplemental" report. Under Rule 37(c)(1), "[i]f a party fails

to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard . . . may order payment of the reasonable expenses, including attorney's fees, caused by the failure." The Third Circuit has identified several factors for district courts to weigh when considering whether to strike an untimely or improper expert disclosure: (1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the testimony sought to be excluded. *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997).

On one hand, defendants' untimely submission of Ms. Salters' supplemental expert report is neither substantially justified nor harmless. Defendants insist that the supplemental report was mandatory under Rule 26(e), but, as discussed above, the Court finds this assertion utterly unsupported. Moreover, even if the revisions to the expert report could be considered proper under Rule 26(e), defendants offer no justification for their failure to notify opposing counsel that their expert's opinions had changed, knowing that plaintiffs' counsel was preparing for Ms. Salters' imminent deposition. There is no excuse for defendants' failure to communicate to plaintiffs their plans to serve a supplemental report, even if, as they claim, the supplemental report was not finalized until the day before the deposition was scheduled to take place. Defendants also could (and should) have sought leave from the Court for Ms. Salters to file a supplemental report; they did not do so. Nor can Ms. Salters' supplemental report be considered harmless in light of the time and expense plaintiffs spent reviewing defendants' newly and untimely produced operating expense data, preparing for and taking Ms. Lee's deposition on the topic of operating expenses, and having Mr. Hansen prepare his supplemental report synthesizing the new operating expense

10

information. Much of that effort was wasted when Ms. Salters changed her opinion to disavow her previous inclusion of operating expenses in her damages calculation.

On the other hand, some of the prejudice plaintiffs have suffered can be cured by extending the expert discovery deadline for a final time to allow counsel the opportunity to depose Ms. Salters on her new opinions. Summary judgment motions (which, the parties agree, are unaffected by this expert discovery dispute) are pending and no trial date has been set, so allowing Ms. Salters' supplemental damages opinion to stand should not disrupt the order or speed of these proceedings. And, although the Court does not countenance defense counsel's conduct, defendants' failure to comply with the Court's deadline for expert disclosures is likely more attributable to the expert's negligence in preparing her initial report than bad faith. Finally, the Court recognizes that Ms. Salters' supplemental report is of some importance to the defense, that it narrows the issues in dispute with respect to damages by removing operating expenses, and that "exclusion of critical evidence is an extreme sanction." *Konstantopoulos*, 112 F.3d at 719 (quotation omitted).

In considering all of these factors, the Court concludes that striking Ms. Salters' supplemental expert report would be a harsh sanction that does not appropriately redress the violation at issue. The Court can fashion conditions to cure the prejudice plaintiffs have suffered, and allowing Ms. Salters' supplemental report to stand will simplify many issues at trial. In the Court's view, an appropriate sanction would put plaintiffs in a similar position as they would have occupied had Ms. Salters been more diligent in preparing her initial report and not put plaintiffs through the process of investigating operating expenses her supplemental report now abandons. The Court advised the parties at oral argument that it was inclined to apply then-Magistrate Judge Madeline Cox Arleo's "cost-shifting" solution to a remarkably similar situation in *Hioutakos v. SimplexGrinnell LP*, Civ. A. No. 10-4505, 2014 WL 1255197, at *2 (D.N.J. Mar. 26, 2014). In *Hioutakos*, Judge Arleo allowed the late-supplementing party to choose whether its sanction would

11

be to "(1) withdraw the Revised Report and rely upon [the expert's] original report, or (2) rely on the Revised Report but reimburse Defendant for the reasonable attorney's fees and costs incurred to prepare for [the expert's] deposition and generate a rebuttal to the original report." *Id.* at *1; *see Deville v. Givaudan Fragrances Corp.*, 419 F. App'x 201, 204-05 (3d Cir. 2011) (affirming Rule 37 sanctions where party proffered supplemental expert report without notice and after deadline for expert discovery expired and Magistrate Judge gave the option of withdrawing the supplemental report or facing monetary sanctions). Adopting the logic of this approach, the Court asked defendants whether in order to rely on the expert's revised opinions they "would be willing to make the plaintiff[s] whole for the extra costs that were imposed by the manner in which" they produced Ms. Salters' supplemental report or whether they preferred to rely on the original report. *See* ECF No. 278. Defendants instead attempted to manufacture a third option whereby they would avoid a monetary sanction and nonetheless rely on Ms. Salters' supplemental report. Ultimately, however, defendants informed the Court that they cannot disavow Ms. Salters' updated opinions. *See* ECF No. 280. As those updated opinions were submitted in violation of the Court's scheduling order, without leave, and without the protection of Rule 26(e), the Court concludes that defendants must compensate plaintiffs for the time and expense plaintiffs spent essentially educating defendants about the weaknesses in Ms. Salters' initial report.

Plaintiffs seek monetary sanctions in the full amount of: (1) attorneys' fees and travel costs relating to preparing for and taking Ms. Lee's Rule 30(b)(6) deposition, which was rendered irrelevant by Ms. Salters' supplemental report; (2) expert fees and attorneys' fees relating to Mr. Hansen's supplemental report; (3) attorneys' fees and costs relating to Ms. Salters' aborted July 12, 2018 deposition; and (4) attorneys' fees and costs relating to this application for sanctions. *See* ECF No. 191. Although the Court could impose all of these costs on defendants as a sanction, it is cognizant that the total amount of these fees and expenses would likely add up to a very

substantial figure, one potentially out of proportion to the conduct at issue. In an attempt to balance the equities, the Court finds that Ms. Salters' July 12, 2018 supplemental report may stand, and defendants may rely on her updated damages opinions, but defendants must reimburse plaintiffs for: (1) attorneys' fees related to preparing for the Rule 30(b)(6) deposition of Ms. Lee on the topic of operating expenses; (2) attorney expenses and travel costs to and from Los Angeles for Ms. Lee's Rule 30(b)(6) deposition; (3) attorneys' fees related to conducting Ms. Lee's Rule 30(b)(6) deposition; (4) attorneys' fees related to preparing for the July 12, 2018 deposition of Ms. Salters; (5) attorneys' fees related to time spent at the aborted July 12, 2018 deposition of Ms. Salters; and (6) costs related to the July 12, 2018 deposition of Ms. Salters, if any.

The Court is mindful that plaintiffs requested as a sanction, and the Court appropriately could impose, additional fees and costs related to Mr. Hansen's supplemental report and attorney time preparing this application for sanctions. Rule 37 vests the Court with "broad discretion regarding the type and degree of sanctions it can impose, but the sanctions must be just and related to the claims at issue." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006). The Court's ultimate goal is to return plaintiffs to approximately the same position they would have been in if not for this dispute, a sanction that is just with respect to both parties. *See Hioutakos*, 2014 WL 1255197, at *2 ("Where one party has violated a court order and delayed proceedings, awarding the excess costs caused by that conduct to the innocent party may restore the balance of equity between the parties."). The Court does not consider attorney and expert time and expenses related to Mr. Hansen's supplemental report to be a completely wasted effort because they will likely inform Mr. Hansen's ultimate rebuttal to Ms. Salters' July 12, 2018 supplemental report; therefore, those fees are excluded from the sanction order. Additionally, the Court views the imposition of attorneys' fees related to this sanctions application as more punitive than just; the Court declines to award plaintiffs' their attorneys' fees related to this application.

13

Plaintiffs shall submit a certification calculating the total amount of these fees and expenses, along with supporting documentation, to the Court in accordance with the Court's accompanying order. Further, the parties are directed to meet and confer regarding a date for plaintiffs to depose Ms. Salters on the opinions expressed in her supplemental report. Ms. Salters' deposition shall take place at a location designated by plaintiffs within the deadline set in the Court's accompanying order. Plaintiffs' expert Mr. Hansen shall have the opportunity to submit a rebuttal report in response to Ms. Salters' updated damages opinion no later than fourteen days from the date of Ms. Salters' deposition.

### III. CONCLUSION

For the reasons stated above, plaintiffs' application to strike the supplemental expert report of Ambreen Salters is **DENIED**, and plaintiffs' application for sanctions is **GRANTED**. An appropriate order will follow.

Dated: February 13, 2019

*Leda Dunn Wettre*
Hon. Leda Dunn Wettre
United States Magistrate Judge