<u>**UNDER SEAL - NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **EZAKI GLICO KABUSHIKI KAISHA, d/b/a EZAKI GLICO CO., LTD., and EZAKI GLICO USA CORPORATION,** <br><br> *Plaintiffs*, <br><br> v. <br><br> **LOTTE INTERNATIONAL AMERICA CORP. and LOTTE CONFECTIONERY CO. LTD.,** <br><br> *Defendants.* | **Civil Action No. 15-5477** <br><br> **OPINION** |

**THIS MATTER** comes before the Court by way of Defendants Lotte International America Corp. ("Lotte IA") and Lotte Confectionary Co. Ltd.'s ("Lotte Confectionary," or together with Lotte IA, "Defendants") motion for summary judgment against Plaintiffs Ezaki Glico Kabushiki Kaisha, d/b/a Ezaki Glico Co., Ltd. ("Ezaki Japan") and Ezaki Glico USA Corporation ("Ezaki USA," or together with Ezaki Japan, "Plaintiffs"). ECF No. 230. Plaintiffs opposed Defendants' Motion and filed a partial motion for summary judgment as to Defendants' affirmative defenses. ECF No. 226. For the reasons stated below, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiffs' Motion is **DENIED**.

**I. BACKGROUND**

This matter arises out of Defendants' alleged infringement of Plaintiffs' trademark rights in Pocky, their chocolate covered biscuit sticks. See Second Amended Complaint ("SAC"), ECF No. 102. Specifically, Plaintiffs allege that Defendants created a knock-off of Pocky—a virtually identical chocolate covered biscuit stick sold as Pepero—in violation of the Lanham Act and New

1

Jersey state law. See id. Though the parties raise numerous issues at summary judgment, the threshold issue for this Court is whether Pocky's product configuration is protectible as trade dress. See Sweet St. Desserts, Inc. v. Chudleigh's Ltd., 655 F. App'x 103, 108 (3d Cir. 2016) ("Only 'incidental, arbitrary, or ornamental product features which identify the product's source' are protectable as trade dress."). Because the Pocky product configuration is functional, it is not protectable as trade dress, and Defendants' motion for summary judgment is granted.

**A. Factual Summary**

Plaintiff Ezaki Japan is a global confectionary company headquartered in Osaka, Japan that manufactures and sells "a biscuit stick product partially coated in chocolate and/or cream" under the brand name Pocky. Plaintiffs' Statement of Material Facts ("Pls.' SOMF") ¶¶ 1, 4, ECF No. 227.1.[1] Ezaki Japan began selling Pocky products in the United States in 1978 via its wholly owned subsidiary, Ezaki USA. Id. ¶¶ 3, 8. In 1987, Plaintiffs filed an application to register Pocky's product configuration with the United States Patent and Trademark Office (the "PTO"), and the configuration was later registered in 1989 (the "208 Registration"). Id. ¶ 14, 20; Defendants' Statement of Material Facts ("Defs.' SOMF"), ¶ 1, ECF No. 228.1; see also 1987 Application for Registration, ECF No. 248.2 at 44 ("The mark comprises an elongated rod comprising biscuit or the like, partially covered with chocolate.").[2] Plaintiffs later filed a separate

---

[1] The facts are taken from the parties' statements of material fact and their responsive statements of material fact. The facts are undisputed unless otherwise noted. Moreover, where facts in a party's statement are supported by evidence in the record and denied by the opposing party without citation to conflicting evidence, the Court deems such facts undisputed. See Fed. R. Civ. P. 56(e)(2)–(3); Carita v. Mon Cheri Bridals, LLC, No. 10-2517, 2012 WL 2401985, at *3 (D.N.J. June 25, 2012).

[2] Defendants dispute that the 1987 Application for Registration describes the Pocky product configuration in the same way that Plaintiffs' have defined it in this case. See Defs.' Response to Pls.' Supplemental SOMF ¶ 18, ECF No. 282.1. The Court finds this dispute to be immaterial. Plaintiffs define the Pocky product configuration as "an elongated, thin, straight, cylindrical rod-

2

registration for the Pocky Almond Crush configuration. See Plaintiff's Response to Defendants' Statement of Material Facts ("Pls.' Response") ¶¶ 30–44, ECF No. 247.1. Each registration depicts the Pocky product configuration as follows:

| Reg. No. | Registered Configuration | Glico's Description of the Configuration | Goods |
|---|---|---|---|
| 1,527,208 | | "The mark comprises an elongated rod comprising biscuit or the like, partially covered with chocolate." | "Chocolate covered candy stick" |
| 2,615,119 | | "The mark consists of the configuration of the applicant's goods, which are biscuit sticks, covered with chocolate or cream and almonds." | "Biscuit stick partially covered with chocolate or cream in which are mixed crushed pieces of almond." |

Defs.' SOMF ¶ 1. In 2008, Plaintiffs applied for a U.S. utility patent entitled, "Stick-Shaped Snack and Method for Producing Same." Defs.' SOMF ¶ 47; see also ECF No. 229.29. The utility patent

---

shaped biscuit with more than half, but not all, of the biscuit coated with chocolate and/or a cream or cream-like coating that fully covers and extends from one end of the biscuit over halfway to the other end, but terminates short of the other end, and with the coated portion of the biscuit having a rounded end and the uncoated portion of the biscuit having a generally flat end." ECF No. 229.1 at 4; see also Pls.' Response p. 82, ¶ 2. This configuration covers a variety of Pocky products except for Pocky Almond Crush, which is similarly defined but also contains "almond pieces" added "to the cream or cream-like coating." Id. ¶ 2. Regardless of the exact wording, there is no dispute that the Pocky product configurations at issue are registered as trademarks on the principal register of the PTO. In other words, this isn't a dispute about the scope of the registered trade dress, which would impact the burden of proof analysis. See, e.g., Sweet St. Desserts, Inc. v. Chudleigh's Ltd., 69 F. Supp. 530, 542 (E.D. Pa. 2014), aff'd, 665 F. App'x 103 (3d Cir. 2016) (identifying a dispute as to whether the registered trade dress covered both hand-folded and machine-folded pastries).

was ultimately issued in 2014.  See ECF No. 229.34.  Plaintiffs also hold a Japanese utility model entitled, "Biscuit Covered in Chocolate."  See ECF No. 229.28.

Defendant Lotte Confectionary is a Korean corporation that sells biscuit sticks under the brand name Pepero.  See Pls.' Response ¶ 101.  "Pepero Chocolate" and "Pepero Almond" are pictured below:



Defs.' SOMF ¶ 103.  Plaintiffs allege that Defendants "have adopted and are using the identical product designs" for Pepero biscuit sticks.  SAC ¶¶ 24, 26 ("Defendants' product designs are identical to, and confusingly similar to, the Ezaki Glico Marks.").  As such, Plaintiffs initiated this lawsuit on July 10, 2015.  See ECF No. 1.

The operative complaint asserts five causes of action: (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (2) unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) unfair competition in violation of New Jersey common law; (4) trademark infringement in violation of New Jersey common law; and (5) unfair competition in violation of N.J.S.A. § 56:4-1 and 2.  See SAC ¶¶ 29–50.  Defendants filed an answer to the operative complaint and asserted fifteen affirmative defenses and five counterclaims.  See ECF No. 117.  Defendants now seek summary judgment on all of Plaintiffs' claims.[3]  ECF No. 230.  Plaintiffs also seek partial summary judgment on Defendants' affirmative defenses of prior use and fraud.  ECF No. 226.

---

[3] Defendants also ask this Court to grant summary judgment on Count I (false advertising under the Lanham Act, 15 U.S.C. § 1125) and Count III (false advertising under California state law) of its counterclaims.  See Defs.' Br. at 36, ECF No. 228.2; see also ECF No. 17.  However,

4

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

## III. ANALYSIS

Defendants argue that they are entitled to summary judgment because: (1) the Pocky Product configuration is functional and therefore their registered trade dress is invalid as a matter of law; (2) Plaintiffs have abandoned the Pocky product configuration through naked licensing; and (3) Plaintiffs' claims are barred by laches due to their "decades-long delay" in bringing suit. See Defs.' Br. at 10–11, ECF No. 228.2. Without sugarcoating, the Court finds that there is no genuine issue of material fact as to the functionality of Pocky's product configuration. Plaintiffs'

---

Defendants set forth no factual basis as to why summary judgment is warranted as to its counterclaims. Accordingly, the Court denies Defendants' motion without prejudice with respect to its counterclaims.

5

arguments to the contrary are "half-baked." Accordingly, the Court grants summary judgment in favor of Defendants and need not address Defendants' latter arguments.

### A. Trade Dress Infringement Under the Lanham Act

The Lanham Act "protects from deceptive imitation not only a business's trademarks, but also its 'trade dress.'" Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 308 (3d Cir. 2014) (citing 15 U.S.C. § 1125(a)(3)).[4] Trade dress "is the total image or overall appearance of a product, [which] includes, but is not limited to, such features as size, shape, color, or color combinations, texture, [and] graphics." Sweet St. Desserts, 655 F. App'x at 108 (internal quotation marks omitted). "In short, trade tress is the overall look of a product or business." Fair Wind Sailing, 764 F.3d at 308; see also Pet Gifts USA, LLC, 2018 WL 1586324, at *3 ("Although trade dress historically referred to the packaging and labeling of a product, it has extended to include the product itself."). Yet, "only incidental, arbitrary or ornamental product features which identify the product's source are protectable as trade dress." Sweet St. Desserts, 655 F. App'x at 108. "Functional" features are not protectable. See id.; Fair Wind Sailing, 764 F.3d at 309 ("[T]he law does not afford every combination of visual elements exclusive legal rights."); Am. Greetings Corp. v. Dan-Dee Imports, Inc., 807 F.2d 1136, 1141 (3d Cir. 1986) ("When a feature or combination of features is found to be functional, it may be copied and the imitator may not be enjoined from using it, even if confusion in the marketplace will result.").

---

[4] "Because N.J.S.A. § 56.4-1 is the statutory equivalent of Section 43(a) of the Lanham Act, courts assess New Jersey trade dress infringement claims under the Lanham Act." Pet Gifts USA, LLC v. Imagine This Co., LLC, No. 14-3884 (PGS) (DEA), 2018 WL 1586324, at *3 (D.N.J. Mar. 29, 2018); see Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 454–55 (D.N.J. 2009) (noting that the elements for both trademark infringement and unfair competition claims under the Lanham Act are the same as the elements for trademark infringement and unfair competition under New Jersey statutory and common law).

6

Trade dress may be registered with the PTO. See Sweet St. Desserts, 69 F. Supp. 3d at 541. "Registration provides the owner with a right of action under 15 U.S.C. § 1444 for infringement of a registered trademark" and "creates a presumption of non-functionality." Id. However, "[a] registered trademark is always subject to cancellation as functional." Id.; see also Sweet St. Desserts, 655 F. App'x at 109 ("A registered trade dress is presumed to be non-functional unless the alleged infringer demonstrates that it is functional."). Therefore, "functionality is a defense to infringement of a registered trademark, even if that mark has become incontestable." Id.

Whether a feature is functional is a question of fact.[5] See Sweet St. Desserts, 69 F. Supp. 3d at 544. "[A] product feature is functional . . . if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 32 (2001) (internal quotation marks omitted). "When the thing claimed as trade dress or a trademark consists of a combination of individual design features, then it is the functionality of the overall combination that controls." 1 McCarthy on Trademarks § 7:76; see also Am. Greetings, 807 F.2d at 1143. If the product feature or features meets this test for functionality, "the feature is not protected and no further inquiry is necessary." Pet Gifts, 2018 WL 1586324, at *4; see also Sweet St. Desserts, 655 F. App'x at 109. If, however, the Court cannot determine functionality

---

[5] While courts across the circuits "are divided over whether it is appropriate to grant summary judgment on the question of functionality," Sweet St. Desserts, 69 F. Supp. 3d at 544 (collecting cases), the Third Circuit has affirmed a district court's grant of summary judgment on the question of functionality on more than one occasion, see Sweet St. Desserts, Inc. v. Chudleigh's Ltd., 655 F. App'x 103 (3d Cir. 2016); U.S. Golf Ass'n v. St. Andrews Sys., Data-Max, Inc., 749 F.2d 1028 (3d Cir. 1984). Generally, "courts may determine functionality on summary judgment where there is no dispute of material fact regarding the functionality of the product at issue and no reasonable jury could find the product to be nonfunctional." Sweet St. Desserts, 69 F. Supp. 3d at 545 ("[S]ummary judgment is inappropriate where a dispute of material fact precludes the court from determining that the product is functional.").

under this standard, the Court "next ask[s] whether affording [the feature] trademark protection would nonetheless put competitors at a 'significant non-reputation related disadvantage' that would restrict competition in the market." Sweet St. Desserts, 655 F. App'x at 109 (quoting TrafFix, 532 U.S. at 33).

### B. Plaintiffs' Registered Trade Dress Is Functional

Because Pocky's trade dress is registered, it is presumed to be non-functional unless Defendants can demonstrate otherwise. See Sweet St. Desserts, 655 F. App'x at 109. Here, Defendants have overcome that presumption and have shown that there is no genuine dispute of material fact that Pocky's trade dress is functional.

Pocky's trade dress consists of the following features, as articulated by Plaintiffs:

> an elongated, thin, straight, cylindrical rod-shaped biscuit with more than half, but not all, of the biscuit coated with chocolate and/or cream or cream like coating that fully covers and extends from one end of the biscuit over halfway to the other end, but terminates short of the other end, and with the coated portion of the biscuit having a rounded end and the uncoated portion of the biscuit having a generally flat end.[6]

ECF No. 229.1 at 4; see also Fair Wind Sailing, 764 F.3d at 311 (utilizing the plaintiff's definition of its trade dress in assessing its functionality). Considering the functionality of the Pocky design as a whole, the Court concludes that the evidence clearly indicates that the design "is essential to the use or purpose" of the cookie and is not merely an "arbitrary, incidental, or ornamental" product feature. See TrafFix, 532 U.S. at 33–34.

---

[6] As noted, Plaintiffs define the product configuration for Pocky Almond Crush in a nearly identical fashion but add that almond pieces can be found in the cream or cream-like coating. See Pls.' Response p. 81, ¶ 2.

1. **Designed for Ease of Consumption**

First, the undisputed evidence in the record indicates that Pocky product configuration was designed with functionality in mind, a factor that the Third Circuit has cited as evidence of a product configuration's functionality. See Sweet St. Desserts, 655 F. App'x at 109. According to Plaintiffs' own press release for Pocky's 50th Anniversary, the Pocky product configuration is at least partially based[7] on an earlier product of Plaintiffs' called "Pretz," which was born out of the idea that a fully coated chocolate stick "would get all over your hands when you held it." ECF No. 229.15 at 3 ("Pretz was stick-shaped and easy to hold, so it could be shared with others to enjoy as a snack."). Other internal documents also highlight functionality as playing a role in the "[b]irth of Pocky":

> How about coating a plitz with chocolate? You can eat it watching TV, or on a date. We may be able to capture the multitasking group, was the first inspiration. … However, the fact that the chocolate melts and stains the hands when holding it remained a problem. One day, we thought it might not be necessary to coat the entire plitz with chocolate, and tried coating with chocolate . . . leaving a "Place to hold" --- It was the moment when the original shape of the product called Pocky was born.

ECF No. 229.8 at 5 (internal quotation marks omitted); see also ECF No. 229.14 at 3 ("Even after repeated research in manufacturing, developing a product that tasted good but that would not dirty the hands was difficult. . . . Can it be made so that one can eat it without having to grasp it in one's

---

[7] Although Plaintiffs dispute that Pretz was the "precursor" to Pocky, Pls.' Response p. 92, ¶ 25, the Court finds that there is no genuine dispute that Pretz played a role in Pocky's development. Plaintiffs cite only to the Latella Declaration in support of their contention that "Pocky is a different product entirely." Id. However, the cited section of the Latella Declaration merely states that "the Pocky product configuration is unique in the U.S. market." Latella Decl. ¶ 22, ECF No. 254. In the absence of truly conflicting evidence, the Court deems such facts undisputed. See Fed. R. Civ. P. 56(e)(2)–(3). Moreover, Plaintiffs address Pretz in their "50th Anniversary of Pocky" press release in the section on Pocky's development, see ECF No. 229.15 at 3, and also cite to Pretz's development in a corporate history document titled "The Birth of Pocky," see ECF No. 229.14.

hands[?]"). Thus, by Plaintiffs' own account, Pocky's design is critical in enabling ease of consumption for the customer.

In addition, Pocky documents—both advertisements and those internal to the company—explicitly link the Pocky product configuration to functionality. <u>See, e.g.</u>, ECF No. 229.8 at 10 (describing Pocky as having an "[e]longated shape that you can eat without opening your mouth wide, one bite at a time at your own pace" and noting it "has a place to hold"). Indeed, Pocky's 2011 "Product Specification Sheet" explicitly states: "The idea of <u>handy</u>, <u>convenient</u> and fun snacks <u>resulted in the current design</u> of Pocky biscuit sticks coated with Chocolate cream except for a small portion at one end of the stick to make it easier to snack on." ECF No. 229.16 at 2 (emphasis added). In advertisements, Plaintiffs explicitly tout Pocky's "convenient design." ECF No. 229.20; <u>see also</u> ECF No. 229.21 ("Generously coated with high-quality chocolate except for a small portion at one end, creating a handle, making it easier for multi-tasking without getting chocolate on your hands."); ECF No. 229.19 ("Small portion to make it easy to handle."). Even the Pocky website referred to the partial coating of the biscuit stick as "[t]he [h]andle [i]nnovation." ECF No. 229.17 at 1; <u>see also</u> ECF No. 229.18 at 1; Defs. SOMF ¶ 35 (citing language from Pocky's website: "no mess handle"; "easy-to-handle stick that keeps chocolate off your hands"; "[t]he snack with a handle"; "[a] simple, yet innovative idea of leaving a portion uncoated" (internal quotation marks omitted)); <u>id.</u> at ¶ 38 ("With the no mess handle of the Pocky stick, your kids won't have chocolate all over their hands."). Plaintiffs also promote that the thin shape of the Pocky product configuration, emphasizing that it allows many Pocky sticks to be "packed close together" in a "compact box," which is "both suitable for oneself and good for sharing it." <u>Id.</u>; <u>see also</u> ECF No. 229.23 ("With plenty of sticks in each box, Pocky is the perfect snack for bringing people closer together and livening the mood."). The Third Circuit has found similar

10

advertisements to constitute "strong evidence" of functionality. See Am. Greetings Corp., 807 F.2d at 1142 ("If the marketer of a product advertises the utilitarian advantages of a particular feature, this constitutes strong evidence of its functionality.").

Nevertheless, Plaintiffs argue that "these qualities do not show functionality." Pls. Response ¶ 29. To support this line of reasoning, Plaintiffs put forth the following argument: (1) the fundamental use and purpose of a snack product is to be consumed; (2) pleasant taste, texture, and ease of consumption are important for that purpose; (3) the Pocky product configuration is not essential for taste, texture or consumption; and therefore, (4) there is at least a dispute as to whether the Pocky product configuration is essential to the use or purpose of the Pocky product. See Pls.' Opp. at 12–13, ECF No. 247; see also Levine Decl. ¶ 18, ECF No. 255. This argument fails on multiple levels.

As an initial matter, Plaintiffs' experts admit that "ease of consumption" is an important consideration with respect to a snack's purpose. Levine Decl. ¶ 18 (emphasis added); see also Latella Decl. ¶ 42. It would seem to logically follow that the Pocky product configuration, which plainly allows for ease of consumption, is functional. Yet, Plaintiffs' expert asserts that the Pocky product configuration is not essential for easy consumption because "[m]any other shapes are equally suited for easy consumption." Levine Decl. ¶ 19; see also id. ¶ 37 ("The Pocky product configuration is no more suited for holding, consumption, or packaging that [sic] the vast majority of other snack products."). The fact that other shapes might be equally suited for easy consumption, however, does not foreclose the conclusion that Pocky's configuration is itself functional.

Indeed, both the Supreme Court and the Third Circuit have found product designs to be essential to the use or purpose of a product, and therefore functional, even where alternative

11

designs might accomplish the same result. In TrafFix Devices, Inc. v. Marketing Displays, Inc., the Supreme Court found that the trade dress at issue—a dual-spring designed to keep road signs upright in adverse weather conditions—was "essential to the use or purpose of the device" and therefore functional because it provided a "useful mechanism to resist the force of the wind." 532 U.S. 23, 33 (2001). The Supreme Court then expressly rejected plaintiff's contention that the trade dress was not functional because alternative devices could also keep a road sign upright in windy conditions. See id. at 33–34. The Court explained:

> There is no need . . . to engage, as did the Court of Appeals, in speculation about other design possibilities, such as using three or four springs which might serve the same purpose. Here, the functionality of the spring design means that competitors need not explore whether other spring juxtapositions might be used. The dual-spring is not an arbitrary flourish in the configuration of [defendant's] product; it is the reason the device works. Other designs need not be attempted.

Id. (internal citation omitted). Similarly, in Sweet Street Desserts, Inc. v. Chudleigh's Ltd., the plaintiff argued that its six-fold pastry product configuration was non-functional because there were an unlimited number of other effective pastry configurations. 655 F. App'x 103 (3d Cir. 2016). However, the Third Circuit rejected this argument, explaining that there was "no need to consider whether five or seven folds, let alone a different shape, could have accomplished" the purpose of holding the pastry together because the six-fold design was itself functional. See id. 655 F. App'x at 110 n.9. The same analysis applies here.

Furthermore, the Third Circuit has found product designs to be functional where the record indicates that the design was "driven at least in part by functional considerations." See Sweet St. Desserts, 655 F. App'x at 109; see also Disc Golf Ass'n, Inc. v. Champion Discs, Inc., 158 F.3d 1002, 1007 (9th Cir. 1998) ("A product feature need only have some utilitarian advantage to be considered functional."). In Sweet Street Desserts, the record indicated that the six-fold pastry at issue allowed for "the best bake . . . had the [least] leakage of juice, [and] . . . worked the best."

12

655 F. App'x at 109 (internal quotation marks omitted). Though the defendant testified that he chose the pastry design with six folds because it "was the most beautiful," the Court noted that this testimony did "not raise a triable issue of fact as to whether it was also particularly effective." Id. at 110 (internal quotation marks omitted). As in Sweet Street Desserts, the fact that Pocky's partial chocolate covering provides a "unique" design, see Pls.' Opp. at 14, does not raise a triable issue of fact as to whether the configuration, as a whole,[8] is effective in enabling consumers to eat the biscuit cookie.[9] In any event, the cylindrical cookie partially dipped in chocolate "is not 'an arbitrary flourish' on an otherwise complete dessert." Sweet St. Desserts, 655 F. App'x at 110 (quoting TrafFix, 532 U.S. at 34).

### 2. Plaintiff's Utility Patent

In addition to the above, Defendants also point to Plaintiffs' utility patent, "for a utility patent is strong evidence that the features therein claimed are functional." TrafFix, 532 U.S. at 23. The Court agrees that Plaintiffs' utility patent and corresponding application for their "Stick-

---

[8] Plaintiffs emphasize that the "overall combination of features must be assessed, not any of the features in isolation." Pls.' Opp. at 15 (emphasis in original); see also Latella Decl. ¶ 49 ("[E]ven if the uncoated portion of the Pocky product had some utility, that would not render the overall Pocky product configuration functional."). The Court notes that its analysis is inclusive of all features claimed as part of Pocky's product configuration. In other words, the Court clarifies that it considered whether the thin elongated cylindrical rod partially coated in chocolate is functional and not merely whether the partial coating has utility.

[9] Similarly, the fact that consumers also eat products completely coated in chocolate does not raise a triable issue of fact as to whether the product configuration is functional. See Levine Decl. ¶ 33; see also Latella Decl. ¶ 45. Plaintiffs' experts note that "melting is generally not a problem for chocolate-covered snack products because chocolate behaves as a solid over most of the temperatures that consumers regularly encounter while eating snack products." Levine Decl. ¶ 34; see also Latella Decl. ¶ 45. While it may be true that a consumer can hold the Pocky stick by the chocolate end, it does not undermine the fact that ease of consumption is enabled by Pocky's non-coated handle and thin easy to hold shape. Accordingly, the Court finds that no reasonable juror could read Plaintiffs' expert report to refute the evidence that Pocky's design was "driven at least in part by functional considerations." See Sweet St. Desserts, 655 F. App'x at 109.

Shaped Snack and Method for Producing the Same," further support a finding that Plaintiffs' registered trade dress is functional.

Plaintiffs' utility patent and application indicate that the Pocky product configuration enables efficient manufacturing. According to Plaintiff's application, one of the problems that can occur in the production of stick-shaped snacks is warping of the ends of the stick, which results in "production problems such as the baked shaped dough rotating or dropping during the coating operation." See ECF No. 229.29 at 4–5; see also ECF No. 229.34 at 8. Plaintiffs' application then states that its "method for producing a stick-shaped snack of this embodiment" solves this problem by enabling production without warping. ECF No. 229.29 at 12 ("[T]he stick-shaped pastries can be reliably prevented from rotating or dropping from the holder, thus enabling the efficient production of stick-shaped snacks coated with a coating material."); see also id. ("[U]sing the method for producing a stick-shaped snack according to this embodiment . . . mak[es] it possible to efficiently align the stick-shaped pastries."); ECF No. 229.34. These "statements made in the patent applications and in the course of procuring the patents demonstrate the functionality of the design."[10] TrafFix, 532 U.S. at 32.

---

[10] Plaintiffs assert that the advantages stated in the utility patent "do not prove functionality." See Pls.' Opp. at 19. The Court finds Plaintiffs' arguments unpersuasive. Plaintiffs maintain that the utility patent only provides the advantages of its "very thin biscuit sticks." Id. However, there is no dispute that the product identified in the utility patent bears the Pocky trade dress. Plaintiffs admit that: (1) the utility patent describes its Ultra Slim Pocky product, see Levine Decl. ¶ 71; and (2) Ultra Slim Pocky bears the Pocky trade dress, see Defs.' SOMF ¶ 3. Plaintiffs' expert's bald conclusion that "a patent related to one embodiment of a product configuration, but that distinguishes all other embodiments of the same product configuration, cannot show functionality of the product configuration as a whole," Levine Decl. ¶ 73, does not create a triable issue of material fact. In any event, the Court could only find two statements in the patent explicitly distinguishing between Ultra Slim Pocky and other Pocky products when discussing the product's advantages, see ECF No. 229.34 at 9, 10 (thinner stick-shaped snacks are "very easy to eat" and can be coated so that they "do not easily break"), and the Court did not rely on those as part of its analysis. In addition, Plaintiffs argue that there are cheaper manufacturing methods that still result in the Pocky product configuration. See Pls.' Opp. at 19. However, an alternative, less costly

14

Plaintiffs argue, however, that their utility patent is irrelevant to functionality because it only covers "new manufacturing methods by which a biscuit stick can be made." Pls.' Opp. at 18. The Third Circuit has not addressed whether a utility patent that covers manufacturing methods is evidence of the product's functionality. Other circuits have held that a utility patent that covers manufacturing methods can be evidence of a product's functionality where the patent "disclose[s] the advantage of [the product's] design," Fuji Kogyo Co. v. Pac. Bay Int'l, Inc., 461 F.3d 675, 679 (6th Cir. 2006), or where the trade dress claimed is the "central advance" of the patent, see McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 311-12 (4th Cir. 2014) (internal quotation marks omitted).

By either of these standards, Plaintiffs' utility patent is evidence of functionality. First, as discussed, Plaintiffs' utility patent explicitly discloses the advantages of Pocky's design: manufacturing efficiency and ease of consumption. Second, the Pocky product is the central advance of the utility patent. In McAirlaids, the plaintiff sought trade dress protection for a pixel pattern on its textile-like product. See id. at 309. The defendant pointed to plaintiff's utility patents, which covered "a production process and a material," as evidence of functionality. Id. at 312. The Fourth Circuit noted, however, that the utility patents did "not mention a particular embossing pattern as a protected element." Id. (explaining that the pattern was not the "central advance" of any of plaintiff's utility patents (internal quotation marks omitted)). Thus, the Fourth Circuit held that the plaintiff's utility patents were "not the same 'strong evidence' as the patents in TrafFix." Id. ("McAirlaid's patents cover a production process and a material, while the trade dress claimed is a particular pattern on the material that results from the process."). Here, unlike

---

method of production does not undermine the utility patent's claims relating to efficient manufacturing.

the utility patents in McAirlaids, Plaintiffs' utility patent explicitly covers the "Stick-Shaped Snack and Method for Producing the Same." ECF No. 229.34 (emphasis added). It is not merely a pattern on the dough that results from the process; rather, the stick-shape snack is the "material" covered in the utility patent along with the manufacturing process.

Considering all of the undisputed evidence in the record, including Plaintiffs' utility patent,[11] the Court finds that no reasonable juror could find Plaintiffs' registered trade dress to be merely "arbitrary, incidental, or ornamental." See TrafFix, 532 U.S. at 34.

### 3. Affording Plaintiffs' Trade Dress Protection Restricts Competition

Finally, even if this Court could not determine functionality under the first part of the functionality test, the Pocky product configuration would still be found functional under the second. Again, where the Court cannot determine functionality by considering whether the feature is essential to the use or purpose of the product, the Court "next ask[s] whether affording [the feature] trademark protection would nonetheless put competitors at a 'significant non-reputation related disadvantage' that would restrict competition in the market." Sweet St. Desserts, 655 F. App'x at 109 (quoting Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 169–70 (1996)). Here, there is no question that affording Plaintiffs the trade dress protection they seek to maintain permits Plaintiffs to hold a monopoly over the features of the design which are "essential to a successful" thin, partially dipped biscuit cookie—the exact scenario that the functionality doctrine seeks to prevent. See Shire U.S. Inc. v. Barr Labs., Inc., 329 F.3d 348, 353 (3d Cir. 2003) (internal

---

[11] Defendants also point to Plaintiffs' Japanese Utility Model for a biscuit stick partially coated with chocolate. See Defs.' Br. at 31. Plaintiffs argue, however, that "Japanese utility models are not utility patents, but rather a type of intellectual right for which there is no analog under U.S. law." Pls.' Opp. at 20. Because Plaintiffs' do not dispute the statements in the Utility Model (but rather the relevance of those statements), the existence of the Utility Model does not create a genuine issue of material fact. As such, the Court need not address whether Plaintiffs' Japanese Utility Model bears on functionality.

quotation marks omitted); see also TrafFix, 532 U.S. at 29 ("Allowing competitors to copy will have salutary effects in many instances.").

Though Plaintiffs argue that disqualifying any easy to eat snack from trade dress protection would "require removal of countless federal trademark registrations," Pls.' Opp. at 22, this argument misses the mark. A snack can be both easy to eat and have features that are eligible for trade dress protection, but Plaintiffs cannot claim protection over the "features of a design essential to a successful product of that type." Shire U.S. Inc., 329 F.3d at 353 (internal quotation marks omitted). As the Supreme Court has emphasized, "[t]rade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products." TrafFix, 532 U.S. at 29 ("[C]opying is not always discouraged or disfavored by the laws which preserve our competitive economy."). The functionality doctrine only "protects the manufacturer . . . from the copying of those features that signify a product's source (and quality)." Shire U.S. Inc., 329 F.3d at 353 (internal quotation marks omitted). Had Plaintiffs sought trade dress protection for features that were solely ornamental, the result would be different. However, permitting Plaintiffs to maintain a trademark in the functional Pocky product configuration "would overextend trade dress law" and "deny competitors the ability to compete by manufacturing a similar product incorporating [the configuration's] functional elements."[12] See Sweet St. Desserts, 69 F. Supp. 3d at 549–50. Therefore, Plaintiffs' trademark claims must be dismissed.

---

[12] Notably, the Court's decision does not leave Plaintiffs without other means to protect and distinguish their product. "[A]lthough appearance is important to the marketing of a dessert product, the taste of that product is equally important, and this result does not prevent [Plaintiffs] from winning market share by producing a superior tasting dessert." See Sweet St. Desserts, 69 F. Supp. 3d at 550.

### III. CONCLUSION

For the reasons set forth herein, Defendants' Motion for Summary Judgment, ECF No. 230, is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiffs' Motion is **DENIED**. Plaintiff's Motion for Partial Summary Judgement, ECF No. 226, is therefore denied as moot.

**Dated: July 31, 2019**

                                            */s Madeline Cox Arleo*
                                            **Hon. Madeline Cox Arleo**
                                            **UNITED STATES DISTRICT JUDGE**