## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EZAKI GLICO KABUSHIKI KAISHA and EZAKI GLICO USA CORPORATION, | Civil Action No. |
| | 15-5477 (MCA) (LDW) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| LOTTE INTERNATIONAL AMERICA CORP. and LOTTE CONFECTIONERY CO. LTD., | |
| Defendants. | |

**LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court is the application of Ezaki Glico Kabushiki Kaisha and Ezaki Glico USA Corp. ("plaintiffs" or "Glico") for an award of attorneys' fees, costs, and expenses pursuant to Rule 37(c) of the Federal Rules of Civil Procedure. (ECF Nos. 302, 308, 309, 316, 320). Defendants Lotte International America Corp. and Lotte Confectionery Co. Ltd. ("defendants" or "Lotte") filed objections to the amount of attorneys' fees sought. (ECF Nos. 304, 306, 319). Having considered the parties submissions, and for good cause shown, the Court awards plaintiffs $33,456.84 in attorneys' fees, costs, and expenses.[1]

---

[1] The Court recognizes that Judge Arleo entered final judgment on September 9, 2019, and the parties have since filed cross notices of appeal. (ECF Nos. 350, 352, 353). Plaintiffs have urged the undersigned to issue an order setting the final amount of attorneys' fees, costs, and expenses recoverable as a discovery sanction despite the case's current procedural posture and before the issues grow stale. The Court believes it is constrained to do so as it "retains jurisdiction over matters collateral to the appeal, such as determining costs and attorneys' fees." *Lightning Lube, Inc. v. Witco Corp.*, 144 F.R.D. 662, 666 (D.N.J. 1992) (deciding motion for Rule 11 sanctions after the filing of a notice of appeal).

# I.    BACKGROUND

The relevant background information is set forth in the Court's February 13, 2019 Opinion

and Order denying plaintiffs' application to strike the supplemental report of defendants' damages

expert Ambreen Salters but granting plaintiffs' application for an award of attorneys' fees and

costs as a sanction for defendants' improper supplementation of the expert report minutes before

Ms. Salters' deposition. *See Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, Civ. A. No.

15-5477, 2019 WL 581544 (D.N.J. Feb. 13, 2019). Specifically, the Court found that

> Ms. Salters' July 12, 2018 supplemental report may stand, and defendants may rely
> on her updated damages opinions, but defendants must reimburse plaintiffs for: (1)
> attorneys' fees related to preparing for the Rule 30(b)(6) deposition of Ms. Lee on
> the topic of operating expenses; (2) attorney expenses and travel costs to and from
> Los Angeles for Ms. Lee's Rule 30(b)(6) deposition; (3) attorneys' fees related to
> conducting Ms. Lee's Rule 30(b)(6) deposition; (4) attorneys' fees related to
> preparing for the July 12, 2018 deposition of Ms. Salters; (5) attorneys' fees related
> to time spent at the aborted July 12, 2018 deposition of Ms. Salters; and (6) costs
> related to the July 12, 2018 deposition of Ms. Salters, if any.

*Id.* at *6. The Court directed plaintiffs to submit a certification calculating the total amount of fees

and costs for which they are entitled to be reimbursed pursuant to the Court's Order, along with

supporting documentation. *Id.* at *7. Accordingly, plaintiffs submitted the Certification of Aaron

S. Oakley, which sets forth the respective hourly billing rates of plaintiffs' counsel and summarizes

the number of hours each attorney devoted to the above-referenced activities. (ECF No. 302). At

the Court's direction, plaintiffs supplemented their application with contemporaneous time records

substantiating the number of hours each attorney spent on reimbursable activities. (ECF Nos. 314,

316). Plaintiffs request a total of $31,772.59 for 49.6 hours of work by attorneys Steven M.

Levitan, Roy H. Wepner, and Aaron S. Oakley that was obviated by Ms. Salters' supplemental

expert report and $2,110.09 in costs related to the aborted July 12, 2018 deposition of Ms. Salters.

## II.    ANALYSIS

"The starting point for determining the amount of a reasonable fee is the lodestar, which courts determine by calculating the 'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The party seeking fees bears the burden of establishing the reasonableness of its fee request. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005). Accordingly, "the fee petitioner must submit evidence supporting the hours worked and rates claimed." *Id.* (quotations omitted). The party opposing the fee application must then "challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

### A.    Hours Worked

The Court must "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (quoting *Hensley*, 461 U.S. at 433). "In reviewing whether the number of hours in a fee application are reasonable, the Court must conduct a thorough and searching analysis, and it is necessary that the Court go line, by line, by line through the billing records supporting the fee request." *Wachtel v. Health Net, Inc.*, Civ. Nos. 01-4183, 03-1801, 2007 WL 1791553, at *2 (D.N.J. June 19, 2007) (quotations omitted).

Plaintiffs' counsel requests reimbursement for a total of 49.6 hours that Aaron S. Oakley, Steven M. Levitan, and Roy H. Wepner worked on the above-referenced compensable activities as follows:

3

| Task | Attorney | Hours |
|------|----------|-------|
| Review Ms. Salters' expert report; prepare outline of questions and exhibits for use at the Rule 30(b)(6) deposition of Joanne Lee; communication among counsel about deposition strategy | A. Oakley | 14.9 |
| | S. Levitan | 1.4 |
| Conduct Rule 30(b)(6) deposition of Joanne Lee | A. Oakley | 3.6 |
| Review Ms. Salters' expert report; analyze financial data and documents underlying that report; prepare outline of questions and exhibits for use at the July 12, 2018 deposition of Ms. Salters; communication among counsel about deposition strategy | A. Oakley | 26.0 |
| | S. Levitan | 0.2 |
| Attend July 12, 2018 aborted deposition of Ambreen Salters | A. Oakley | 2.5 |
| | S. Levitan | 0.5 |
| | R. Wepner | 0.5 |
| **Total** | | **49.6** |

Defendants do not object to any of the time entries submitted or to the reasonableness of the total number of hours plaintiffs' counsel devoted to compensable activities. Nonetheless, the Court has carefully reviewed the Supplemental Declaration of Aaron S. Oakley and the time records attached as its Exhibit A, as well as the Supplemental Declaration of Roy H. Wepner and the time records attached as its Exhibit A. (ECF Nos. 316-1, 316-2). None of the time entries appear to be unnecessary or duplicative. The Court recognizes that the depositions of Ms. Lee and Ms. Salters involved highly technical subject matter and required counsel to digest hundreds of pages of Lotte's operating expense data in order to prepare questions for the witnesses. Consequently, the Court finds that plaintiffs' request to be reimbursed for 49.6 hours of attorney time related to the depositions of Ms. Lee and Ms. Salters is reasonable.

## B. Hourly Rates

With respect to the billing rate claimed, "a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001); *see Interfaith*, 426 F.3d at 705 ("[I]n most cases the relevant [hourly] rate is the prevailing rate in the forum of the litigation."). Plaintiffs seek fees for work performed by Steven M. Levitan, Aaron S. Oakley, and Roy H. Wepner. Steven M. Levitan is a partner at the

Silicon Valley office of Hogan Lovells US LLP. (Oakley Cert. ¶ 4, ECF No. 302-1). He has over 29 years of experience and focuses his practice on intellectual property litigation. (*Id.*). Aaron S. Oakley is counsel in the Denver office of Hogan Lovells US LLP and was primarily responsible for the work that is the subject of the Court's sanctions Order. (*Id.* ¶ 6). Roy H. Wepner is a partner at the Westfield, New Jersey law firm of Lerner, David, Littenberg, Krumholz & Mentlik LLP and serves as local counsel to Glico in this matter. (*Id.* ¶ 5). His practice has focused on intellectual property litigation for over 45 years. (*Id.*).

Plaintiffs' counsel billed their time at the following discounted hourly rates:

| Attorney | Position | Hourly Rate[2] |
|---|---|---|
| Steven M. Levitan | Partner, Hogan Lovells US LLP | $825.95 |
| Aaron S. Oakley | Counsel, Hogan Lovells US LLP | $630.65 |
| Roy H. Wepner | Partner, Lerner, David, Littenberg, Krumholz & Mentlik LLP | $795.00 |

Defendants argue that the prevailing market rate for attorneys in New Jersey is $296 per hour and ask the Court to reduce the fee award accordingly. In support of their position, defendants cite the 2018 Clio Legal Trends Report. (Bukrinsky Decl., Ex A. at 57, ECF No. 306-1). Clio is a Canadian company that markets cloud-based legal practice management software. (*Id.* at 65). As best the Court can determine, Clio calculated average billing rates by surveying its paid subscribers nationwide and aggregating the data. (*Id.* at 63). Clio does not explain who makes up the sample of New Jersey attorneys surveyed, nor does it differentiate its data based on practice area, size of law firm, or years of experience. Thus, it is possible that $296 represents the average hourly rate of 25 criminal defense attorneys in solo or small firm practices, or it might be the average hourly rate for associates billing at mid-size general litigation firms in New Jersey; without

---

[2] Messrs. Levitan and Oakley's hourly rates have been converted from Japanese yen (¥) using the exchange rate reported by the United States Treasury on June 30, 2018.

more information, the Court simply cannot tell. The Clio Report provides a data point for the Court's consideration, but it does not definitively establish that $296 per hour represents the "rate charged by attorneys of equivalent skill and experience performing work of similar complexity" in New Jersey. *Washington v. Philadelphia Cty. Court of Common Pleas*, 89 F.3d 1031, 1036 (3d Cir. 1996) (quotation omitted). Indeed, the Court has not found any cases in the Third Circuit that rely on or even cite the Clio Legal Trends Report as persuasive authority.

More persuasive to the Court is the 2017 Report of the Economic Survey of the American Intellectual Property Law Association (the "AIPLA Report") cited by plaintiffs. The AIPLA Report includes a range of minimum billing rates and maximum billing rates for intellectual property work. (Cury Decl., Ex. A. at F-23, ECF No. 308-2). The AIPLA Report then breaks down the minimum and maximum ranges to show the 25th percentile, midpoint, and 75th percentile billing rates. It segregates these minimum and maximum ranges by law firm size, as well as by geographic area of practice. (*Id.*). The Court finds the AIPLA Report to be a more appropriate benchmark for determining the reasonableness of plaintiffs' counsel's requested hourly rates. *See Source Search Techs., LLC v. Kayak Software Corp.*, Civ. A. No. 11-3388, 2016 U.S. Dist. LEXIS 176665, at *7 (D.N.J. Dec. 19, 2016) (relying on AIPLA Report and awarding attorneys' fees with hourly rates ranging from $422 to $781).

According to the AIPLA Report, the billing rates for intellectual property work by law firms nationwide with 101 or more attorneys – like Hogan Lovells – range from a minimum rate of $233 per hour at the 25th percentile to a maximum rate of $965 per hour at the 75th percentile. (Cury Decl., Ex. A. at F-23, ECF No. 308-2). The vast majority of attorney time related to the sanction at issue was billed by Mr. Oakley at an hourly rate of $630.65. This rate falls comfortably within the reported range of hourly rates charged by large law firms nationally in intellectual

property litigation. Moreover, Mr. Oakley's hourly rate falls just below the 75th percentile maximum billing rate of $656 for intellectual property lawyers in firms throughout the New York Consolidated Metropolitan Statistical Area (which includes Newark). (*Id.*). Thus, the Court finds that the requested hourly rate for Mr. Oakley is reasonable.

Mr. Levitan billed a total of 2.1 hours at a rate of $825.95 per hour. While this rate falls below the 75th percentile maximum billing rate for intellectual property firms overall, it is significantly higher than the 75th percentile maximum billing rate of $656 for the New York Consolidated Metropolitan Statistical Area.

Mr. Wepner billed a total of 0.5 hours at a rate of $795 per hour. According to the AIPLA Report, the billing rates for intellectual property work by law firms nationwide with 31-100 attorneys – like Lerner David – range from a minimum rate of $220 per hour at the 25th percentile to a maximum rate of $793 per hour at the 75th percentile. While Mr. Wepner's hourly rate is just slightly above the highest datapoint for law firms overall, it is significantly higher than the 75th percentile maximum billing rate of $656 for intellectual property lawyers in firms throughout the New York Consolidated Metropolitan Statistical Area.

The Court recognizes that Mr. Levitan and Mr. Wepner have considerable intellectual property litigation experience and billed only a small fraction of the time for which plaintiffs seek reimbursement. However, plaintiffs bear the burden of establishing the reasonableness of counsel's billing rates, and the AIPLA Report indicates that a more reasonable hourly rate in this region for a fee award would be the 75th percentile maximum billing rate of $656 for intellectual property lawyers in firms throughout the New York Consolidated Metropolitan Statistical Area.

### C.     Costs and Expenses

Finally, plaintiffs request reimbursement for the following costs and expenses associated

with the depositions of Ms. Lee and Ms. Salters:

| Cost/Expense | Amount |
|---|---|
| Travel to Los Angeles for deposition of Joanne Lee | $700.86 |
| Hotel in Los Angeles for deposition of Joanne Lee | $363.28 |
| Court Reporter for deposition of Ambreen Salters | $495.95 |
| Videographer for deposition of Ambreen Salters | $550.00 |
| **Total** | **$2,110.09** |

Defendants do not object to any of these costs or expenses. The Court finds that they are

reasonable and directly attributable to the conduct that is the subject of the sanctions Order. *See*

*Miller v. Thomson-Walk*, Civ. A. No. 151605, 2019 WL 2150660, at *5 (W.D. Pa. May 17, 2019)

(adopting Special Master's recommendation to award "deposition costs, travel and other

deposition-related expenses" as discovery sanction pursuant to Rule 37); *Campbell-Bieber v. May*,

Civ. A. No. 07-827, 2008 WL 4072587, at *3 (M.D. Pa. Aug. 27, 2008) (awarding train travel and

court reporter expenses as discovery sanction pursuant to Rule 37).

### D.     Final Lodestar Calculation

Plaintiffs are awarded attorneys' fees and costs in accordance with the Court's February

13, 2019 sanction Order as follows:

| | Hours | Billing Rate | Total |
|---|---|---|---|
| Steven M. Levitan | 2.1 | $656 | $1,377.60 |
| Aaron S. Oakley | 47 | $630.65 | $29,640.55 |
| Roy H. Wepner | 0.5 | $656 | $328.00 |
| Costs and Expenses | | | $2,110.09 |
| **Total** | | | **$33,456.84** |

## III.    CONCLUSION

Defendants are directed pay plaintiffs $33,456.84 in attorneys' fees, costs, and expenses

as a sanction for the improper supplemental expert report of Ambreen Salters. It is **SO**

**ORDERED**.

Dated:  October 10, 2019

Hon. Leda Dunn Wettre
United States Magistrate Judge